==========================================

# EXHIBIT QQQ

# INDEX / SEPARATOR PAGE

==========================================

# *** START OF EXHIBIT QQQ ***

# TITLE:

# ADDENDUM TO PSYCHIATRIC ADVANCED DIRECTIVE (HCA-SPECIFIC)

# (Next Page: Formal White Cover Sheet)

```
____ FILED        ____ RECEIVED
____ ENTERED      ____ SERVED ON
                  COUNSEL/PARTIES OF RECORD

        AUG 1 9 2025

   CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY: _____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC; MountainView Hospital; and Southern Hills Hospital & Medical Center,** Defendants.

Case No.: 2:25-cv-01408-JAD-MDC

# EXHIBIT QQQ

**Addendum to Psychiatric Advance Directive (HCA-Specific)**

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# Addendum to Psychiatric Advance Directive (HCA-Specific)

Patient Information:
Name: Jade Riley Burch
Date of Birth: July 31, 1978
Address: 222 Karen Ave Unit 1207, Las Vegas, NV 89109
Reference Document: Psychiatric Advance Directive dated June 6, 2025

ADDITIONAL MEDICAL DIRECTIVES AND PROHIBITIONS

I, Jade Riley Burch, being of sound mind, hereby amend my existing Psychiatric Advance Directive with the following additional binding medical directives:

## 1. ABSOLUTE MEDICATION PROHIBITIONS:

- NO ATIVAN (Lorazepam) in any form or dosage.
- NO BENZODIAZEPINES of any type without documented psychiatric emergency as defined below.
- NO "B52" chemical restraint cocktails (Haldol + Benadryl + Ativan combinations).
- NO combination of benzodiazepines with opioids, consistent with FDA black box warnings regarding respiratory depression.

## 2. MANDATORY MEDICAL POWER OF ATTORNEY NOTIFICATION:

My designated Medical Power of Attorney, **Porscha Ryan**, MUST be contacted immediately before administration of ANY sedating medications, psychiatric medications, or chemical restraints. Her contact information must be obtained from my medical records or by asking me directly. No medication may be administered until this notification occurs.

## 3. PSYCHIATRIC EMERGENCY DOCUMENTATION REQUIREMENT:

Any psychiatric medication or chemical restraint may ONLY be administered if ALL of the following conditions are met:

- A documented psychiatric emergency exists, defined strictly as an imminent, substantial risk of serious physical harm to self or others that cannot be mitigated by non-pharmacologic means.
- Risk of imminent harm must be clearly documented in the medical record with contemporaneous entries.
- A licensed psychiatrist or qualified mental health professional has personally evaluated the situation.

- Alternative interventions have been attempted or are not feasible, with documentation of why they failed.
- My MPOA has been notified and allowed to participate in the decision.
- Under no circumstances do staff convenience, patient noncompliance, verbal agitation, or refusal of treatment qualify as an emergency.

### 4. SEIZURE DISORDER ACCOMMODATION:

I have a documented seizure disorder. Benzodiazepines, particularly Ativan, can cause paradoxical seizure activity in susceptible patients. Any seizure-related treatment must comply with these prohibitions and accommodations.

### 4A. DISGUISED CHEMICAL RESTRAINT PROHIBITION:

No prohibited medication, including benzodiazepines, antipsychotics, or sedatives, may be administered under the guise of seizure treatment, pain relief, sleep aid, anxiety management, or any non-psychiatric pretext without MPOA approval and full contemporaneous documentation. Any attempt to reclassify a prohibited medication as medical rather than psychiatric treatment without strict compliance with Section 3 will be treated as a direct violation of this directive.

### 5. ENFORCEMENT AUTHORITY OF MPOA:

My MPOA, Porscha Ryan, has **full legal authority** to enforce these directives and may refuse any medication or treatment that violates these explicit prohibitions. Her refusal or withdrawal of consent is legally binding on all providers and overrides any contrary decision by treating staff, administrators, or physicians.

### 6. HOSPITAL EXCLUSION:

Due to pending federal litigation and demonstrated danger, I prohibit admission, transfer, or treatment at any **HCA Healthcare facility**. No referral, diversion, or redirection may be made to these facilities under any circumstances. If transfer is unavoidable due to life-threatening emergency, my MPOA must be notified immediately and must approve the facility selection.

### 7. CONDITIONAL SAFETY REQUIREMENTS IF TRANSFER OCCURS:

If I must be transported to an HCA Healthcare facility despite these prohibitions, the following conditions are mandatory to protect my safety:

- My MPOA must be physically present or immediately reachable by phone and must approve all medical decisions.
- I must not be left unattended or isolated; a patient advocate, family member, or MPOA representative must remain with me at all times.
- No psychiatric medications, sedatives, or restraints of any type may be administered without strict compliance with Sections 1–3 of this directive.

- Hospital security and staff must be informed in writing that I am a protected party under federal litigation involving their facility, and any violation of these directives will constitute evidence of retaliation and misconduct.
- All encounters, interventions, and medication administrations must be video recorded with footage preserved, and my MPOA must be given immediate access.

### 8. PHYSICAL RESTRAINT REQUIREMENT:

Physical restraints of any type (including but not limited to wrist, ankle, waist, bed, or chair restraints) may ONLY be applied if I have provided my written signature of consent at the time of use. I also expressly reserve the right to **request restraints or containment at any time for my own safety, including when an alternate personality (alter) presents and I believe containment is necessary**. Such requests must be honored if documented with my signature. The only exception permitting restraints without my signed consent is a verifiable, immediate emergency meeting the criteria in Section 3, with full contemporaneous documentation. Staff convenience, verbal agitation, refusal of treatment, or noncompliance do not qualify as emergencies.

### 8A. NO SECLUSION CLAUSE:

Seclusion, isolation rooms, or solitary confinement may not be used under any circumstances, except upon my signed written request or under the same strict emergency criteria in Section 3, with full documentation and MPOA approval.

### 9. PROVIDER ACKNOWLEDGMENT:

All attending staff must review this directive and sign the acknowledgment section placed in the front of my chart. Their signature confirms understanding that these directives are binding and enforceable.

### 10. COPIES & POSTING REQUIREMENT:

A copy of this directive must be placed in the front of my physical chart, uploaded into the EHR, and read aloud at intake. Providers may not claim ignorance of its existence or terms.

### 11. PATIENT ADVOCATE AUTHORITY:

In addition to my MPOA, I authorize a designated patient advocate to remain with me at all times in the event of transfer, with authority to document, record, and object to unsafe practices. This advocate's presence is mandatory for patient safety.

### 11A. UNRESTRICTED MPOA ACCESS:

My MPOA shall have unrestricted access to me at all times, including in locked ward or secured environments. Hospitals and staff may not deny or delay MPOA access, regardless of unit

security policies. Any attempt to restrict such access will be treated as a violation of this directive and my federal and state patient rights.

## 12. RETALIATION PROHIBITION:

No retaliation, intimidation, or adverse treatment may be taken against me due to my federal litigation, complaints, or assertion of rights. Any such retaliation will be treated as a violation of federal civil rights and whistleblower protections.

## 13. MEDICAL RECORDS INTEGRITY:

All charting must be contemporaneous, accurate, and truthful. Falsification, omission, or back-dating of records is strictly prohibited. My MPOA must be given immediate access to review the chart during hospitalization. Any violation will be treated as deliberate misconduct and evidence tampering.

## 14. TERMINATION AND REVOCATION:

This directive and amendment may only be revoked, altered, or terminated by me personally with my written signature, or by my MPOA acting in her legal capacity. No hospital staff, administrator, or physician may alter or disregard this directive.

## 15. SCOPE OF APPLICATION:

These directives apply in all healthcare settings, including but not limited to emergency rooms, inpatient units, outpatient clinics, psychiatric facilities, and EMS/transport providers.

## 15A. EMS AND TRANSPORT LIMITATIONS:

All EMS and transport providers are bound by these directives. No sedatives, benzodiazepines, opioids, or restraints may be administered during transport except under the same strict emergency criteria in Section 3, with MPOA notification.

## 16. RIGHT TO IMMEDIATE DISCHARGE REQUEST:

If I am clinically stable and not under a lawful involuntary hold, my MPOA may demand my immediate discharge from any facility. Hospitals must comply without delay or obstruction.

## 16A. INVOLUNTARY HOLD PROTECTION:

If any involuntary psychiatric hold (including but not limited to Nevada Legal 2000) is attempted, my MPOA must be immediately informed, present at all hearings, and authorized to challenge the basis of the hold. Hospitals may not conceal or delay this notification. In addition, during any period of involuntary hold or inpatient commitment, I require continuous 1:1 staffing, meaning a dedicated staff member must remain with me at all times to ensure safety, prevent

abuse, and allow immediate MPOA contact as needed. If a facility cannot provide continuous 1:1 staffing, I must be transferred immediately to a facility that can accommodate this requirement, with MPOA approval of the receiving facility.

### 16B. RIGHT TO INDEPENDENT MEDICAL EVALUATION:

My MPOA has the authority to request an immediate independent medical or psychiatric evaluation by an outside physician of her choosing if there is any disagreement regarding my diagnosis, condition, or treatment plan. Hospitals must allow and facilitate this evaluation without obstruction or delay.

### 17. FINANCIAL LIABILITY WARNING:

Violations of this directive may subject providers and institutions to severe liability under federal and state law, including but not limited to:

- False Claims Act penalties and treble damages for billing violations.
- EMTALA sanctions for unlawful transfer, refusal of care, or patient dumping.
- Civil rights damages under 42 U.S.C. § 1983 and ACA § 1557 for discrimination, retaliation, or denial of rights.
- State and federal malpractice liability for negligence, battery, or wrongful death.
- Personal tort liability for individual staff members who violate these directives, including assault, battery, and intentional infliction of emotional distress.
- Potential criminal prosecution for abuse, neglect, falsification of records, obstruction of justice, or destruction of evidence.

All violations will be documented and may be reported immediately by my MPOA to CMS, HHS-OCR, HHS-OIG, Nevada DHHS, state licensing boards, law enforcement, and federal court. Financial liability attaches not only to the institution but to individual providers who knowingly disregard this directive.

### 18. SURVEILLANCE AND EVIDENCE PRESERVATION:

All hospital, EMS, or security video and audio recordings involving my care must be preserved without deletion or alteration. My MPOA and advocate must be granted access to review these recordings on request. Any deletion, tampering, or withholding will be treated as evidence destruction and obstruction.

### 19. COMMUNICATION RIGHTS:

I must be allowed unrestricted communication with my MPOA and legal counsel by phone, video, or in person, even in locked or secured units. Denial or restriction of communication is prohibited and constitutes retaliation and rights violation.

### 20. PAIN MANAGEMENT CLAUSE:

I am entitled to medically appropriate pain management. Acceptable medications include non-opioid and non-benzodiazepine treatments, unless my MPOA provides express consent after being fully informed. Denial of legitimate pain care will be treated as a violation of my patient rights.

## 20A. OPIOID USE LIMITATION (MORPHINE & DILAUDID):

Morphine or hydromorphone (Dilaudid) may be used for legitimate acute pain management when medically necessary, including postoperative and surgical pain. However, dosage, frequency, and duration must be reviewed and approved by my MPOA. These medications are strictly prohibited from being used as a form of chemical restraint, sedation, or behavioral control. Denial of these medications for legitimate surgical or acute pain management will be treated as a violation of this directive. Any misuse will be treated as a direct violation of this directive.

## 21. HORMONE THERAPY CONTINUITY:

My gender-affirming hormone therapy must not be interrupted, delayed, or discontinued. Continuity of hormone therapy is a protected component of my medical treatment and identity. Any denial or interruption will be treated as unlawful discrimination under ACA § 1557.

## 22. STAFF REVIEW AT SHIFT CHANGE:

This directive must be reviewed and re-acknowledged by incoming staff at every shift change. A signed acknowledgment must remain in the chart at all times to prevent lapses in compliance.

## 23. NUTRITION & HYDRATION RIGHTS:

I must be provided adequate food and hydration at all times. Withholding nutrition or fluids as punishment, behavior management, or staff convenience is strictly prohibited.

## 23A. NUTRITIONAL SUPPORT CLAUSE:

If I am not voluntarily eating or drinking and my nutrition or hydration is at risk, I authorize the use of a nasogastric tube, feeding tube, or nasal cannula strictly for the purpose of providing nutrition and hydration. Such interventions require my written signature of consent if I am coherent and able to advocate for myself, or MPOA approval if I am not. I also expressly reserve the right to proactively request such nutritional support at any time if I believe it is necessary for my health, and such a request must be honored with my signed consent. If I have gone without adequate nutrition or hydration for 24 hours, staff must offer and discuss nutritional support with me and/or my MPOA without delay. Full contemporaneous documentation is required in all cases. These interventions may not be used for sedation, punishment, restraint, or behavioral control under any circumstances.

## 23B. SLEEP PROTECTION:

I must be provided reasonable opportunity for uninterrupted sleep. Staff may not use deliberate sleep deprivation, unnecessary night checks, or noise/light exposure as a management tactic.

## 23C. PERSONAL PROPERTY RIGHTS:

My personal property, including clothing, identification, phone, religious/cultural items, and assistive devices, must be respected and safeguarded. Confiscation, destruction, or loss of property is prohibited unless necessary for immediate safety, with MPOA consent and documentation.

## 23D. RIGHT TO RECORD:

I, my MPOA, and my patient advocate have the right to audio or video record all encounters, care interactions, and proceedings related to my treatment. Hospitals and staff may not interfere with, restrict, or retaliate against such recording. Recordings shall be treated as protected evidence of care.

## 23E. RIGHT TO SECOND OPINION BEFORE SURGERY:

Unless a true emergency exists requiring immediate surgical intervention to prevent death or permanent disability, no invasive procedure or surgery may be performed without first allowing my MPOA to obtain and approve a second independent medical opinion. Hospitals must facilitate and not obstruct this right.

## 24. ENFORCEMENT AND ESCALATION:

If these directives are violated, I authorize my MPOA to immediately contact hospital risk management, the Nevada Department of Health & Human Services, CMS, HHS-OCR, and HHS-OIG to initiate investigation. Noncompliance will be treated as both civil and criminal misconduct, including but not limited to malpractice, unlawful battery, false imprisonment, retaliation, and discrimination.

## 25. LEGAL VALIDITY:

These directives are enforceable under:

- 42 CFR § 482.13 (Patient Rights)
- EMTALA, 42 U.S.C. § 1395dd
- Affordable Care Act § 1557, 42 U.S.C. § 18116 (Anti-discrimination based on sex and disability)
- Nevada Revised Statutes Chapter 449 (Patient Rights in Nevada Facilities)

## 25A. SUPREMACY CLAUSE:

These directives take precedence over any contrary hospital policies, provider discretion, administrative protocols, or non-judicial orders. No staff member, physician, or administrator

may override these directives on the basis of institutional policy, resource allocation, or professional judgment. Only a valid, lawfully issued judicial order may supersede this directive, and such order must be immediately provided in writing to my MPOA.

## 26. ANNUAL RENEWAL CLAUSE:

This directive remains in effect until expressly revoked. However, to prevent claims of staleness or outdated authority, it shall be reaffirmed annually by my signature or my MPOA's signature on my behalf. Lack of renewal does not void the directive, but an updated reaffirmation reinforces its binding authority and removes any ambiguity about its continuing force.

This amendment supplements and modifies my existing Psychiatric Advance Directive dated June 6, 2025. In case of conflict between documents, this amendment takes precedence for the specific medications, hospital exclusions, restraint limitations, and situations addressed herein.

PATIENT SIGNATURE SECTION

Patient Signature: _____   Date: 8-19-25
Jade Riley Burch

NOTARY ACKNOWLEDGMENT

State of Nevada
County of Clark

On this 19 day of August, 2025, before me personally appeared Jade Riley Burch, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature: Marcia Durso
Notary Public Print Name: Marcia Durso
My Commission Expires: 01-22-2027
[NOTARY SEAL]



MARCIA DURSO
Notary Public, State of Nevada
Appointment No. 19-3728-01
My Appt. Expires Jan 22, 2027

================================================

# END SEPARATOR PAGE

================================================

# *** END OF EXHIBIT ***