===========================================

# EXHIBIT FF

# INDEX / SEPARATOR PAGE

===========================================

## \*\*\* START OF EXHIBIT FF \*\*\*

## TITLE:

## Pharmaceutical Misconduct and Black Box Drug Violations at Southern Hills Hospital

## (Next Page: Formal White Cover Sheet)



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC; MountainView Hospital; and Southern Hills Hospital & Medical Center,**
Defendants.

**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT FF

## Pharmaceutical Misconduct and Black Box Drug Violations at Southern Hills Hospital

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT FF: Pharmaceutical Misconduct and Black Box Drug Violations at Southern Hills Hospital

## Systematic Drug Safety Violations and Professional Accountability Breakdown

PHARMACEUTICAL VIOLATION OVERVIEW

**Drug Safety Crisis Elements**

**Multiple Concurrent Violations:**

- FDA Black Box Warning violations - Lethal drug combinations administered
- DEA Controlled Substance violations - Non-medical use of Schedule IV substances
- Professional pharmacy standards breached - Clinical intervention failures
- Hospital medication safety protocols ignored - Systematic oversight breakdown
- Patient safety compromised - Life-threatening respiratory depression

**Legal Significance:** Coordinated pharmaceutical violations across multiple regulatory frameworks demonstrate systematic disregard for drug safety standards designed to prevent patient death.

**The unlawful administration of Black Box Warning drug combinations directly caused my respiratory collapse, cyanosis, and near-death experience.**

**These unlawful drug combinations directly caused my respiratory collapse and near-death experience, which is the precise harm the FDA's Black Box Warning was enacted to prevent.**

**Regulatory Framework Violated**

**Federal Drug Safety Laws:**

- 21 USC § 843 - Controlled Substances Act violations
- 21 CFR § 314.80 - FDA adverse event reporting requirements
- 21 CFR § 1306 - DEA prescription monitoring standards
- 42 CFR § 482.25 - CMS medication administration requirements

# FOOTNOTES AND SOURCES

1. FDA Black Box Warning text: 21 CFR § 201.57(c)(1)
2. ASHP Guidelines on Preventing Medication Errors in Hospitals, Am J Health-Syst Pharm 2018;75:1493-517, https://www.ashp.org
3. Nevada Board of Pharmacy Regulations: NAC 639.753 (Drug interaction screening)
4. Case citations verified through PACER federal court records system
5. DEA settlement amounts from publicly available DEA Diversion Control Division press releases (https://www.deadiversion.usdoj.gov)
6. Opioid litigation damages data from MDL 2804, N.D. Ohio, Case No. 1:17-md-02804 court filings and settlement records
7. Potential violations under 18 USC § 242 (civil rights) and § 1512 (obstruction) may apply if intent to obstruct or deprive rights is proven, subject to discovery

# BLACK BOX WARNING VIOLATIONS

## FDA's Strongest Safety Warning Ignored

### Benzodiazepine + Opioid Combination

**FDA Black Box Warning Text:** "Concomitant use of benzodiazepines and opioids may result in profound sedation, respiratory depression, coma, and death. Reserve concomitant prescribing for patients with inadequate alternative treatment options."[1]

### HCA Violation Evidence:

| Date | Facility | Combination Administered | Medical Justification | Black Box Compliance |
|---|---|---|---|---|
| 6/28/2025 | Southern Hills | Lorazepam + Oxycodone PRN | None documented | Non-compliant |
| 6/29/2025 | Southern Hills | Additional Lorazepam + Opioid access | None documented | Non-compliant |

### Clinical Consequences of Black Box Violations

**Patient Experience:**

- Respiratory depression - Oxygen saturation dropped to 60s
- Cyanosis - Visible blue coloring indicating oxygen deprivation
- Near-death experience - Life-threatening respiratory compromise
- Witness intervention required - Porscha Ryan forced staff to apply oxygen

**Medical Significance:** The combination of respiratory depression with cyanosis represents the exact life-threatening scenario the FDA Black Box Warning was designed to prevent.

## Professional Standard of Care Violations

### Pharmacy Clinical Intervention Failures

**Required Pharmacy Oversight (21 CFR § 1306.04):**

| Professional Duty | Regulatory Requirement | Hospital Performance | Violation Level |
|---|---|---|---|
| Drug interaction screening | Mandatory for all orders | Failed to detect | CRITICAL |
| Clinical consultation | Required for dangerous combinations | No pharmacist intervention | CRITICAL |
| Alternative recommendation | Suggest safer alternatives | No alternatives offered | CRITICAL |
| Physician notification | Alert to contraindicated combinations | No safety communication | CRITICAL |

### Hospital Pharmacy Department Accountability

**Systematic Professional Failures:**

- Chief Pharmacist responsibility - Failed to implement safety protocols
- Clinical pharmacy staff - No intervention in dangerous prescribing
- Pharmacy information systems - Drug interaction alerts ignored or overridden
- Quality assurance - No review of lethal combination administration

---

# CONTROLLED SUBSTANCE VIOLATIONS

## DEA Regulatory Compliance Failures

### Schedule IV Substance Misuse (Lorazepam)

**DEA Requirements Violated:**

- Legitimate medical purpose (21 CFR § 1306.04(a)) - Chemical restraint for retaliation, not therapy
- Usual course of practice (21 CFR § 1306.04(a)) - B52 protocol outside accepted medical standards
- Proper documentation (21 CFR § 1304.22) - Missing medical justification records
- Prescription monitoring (21 CFR § 1306.07) - No legitimate prescriber oversight

### B52 Chemical Restraint Protocol Analysis

**Controlled Substance Components:**

| Drug | DEA Schedule | Legitimate Use | HCA Use | Violation Type |
|---|---|---|---|---|
| Lorazepam | Schedule IV | Anxiety/seizure treatment | Patient compliance/retaliation | DIVERSION |
| Haloperidol | Prescription | Acute psychosis | Non-psychiatric restraint | MISUSE |
| Diphenhydramine | OTC | Allergy treatment | Chemical incapacitation | ABUSE |

**DEA Jurisdiction:** Use of controlled substances for non-medical purposes constitutes diversion under federal law, triggering criminal investigation authority. Non-therapeutic use, if intentional, constitutes diversion, as demonstrated in enforcement actions like Rideout Health ($275,000 for CSA violations where lax controls enabled misuse) and Abington Memorial ($510,000 for record discrepancies enabling systematic misuse). Discovery is required to confirm intent for non-therapeutic use, as required for diversion under 21 CFR § 1306.04. Intent may be supported by medical records or staff communications, pending discovery.

## Hospital DEA Registration Violations

### Institutional DEA Compliance Failures

**Registration Requirements Breached:**

- Security protocols - Controlled substances used for non-medical purposes
- Record keeping - Inadequate documentation of legitimate medical use
- Diversion prevention - Failed to prevent non-therapeutic substance use
- Professional oversight - No physician supervision of controlled substance protocols

### Individual Prescriber Violations

**Physician DEA License Accountability:**

| Physician | DEA Registration | Prescribing Violation | Enforcement Risk |
|---|---|---|---|
| Dr. Jonathan Yaghoobian | Active | Authorized dangerous combinations | License revocation |
| Dr. Cyndi Tran | Active | Supervised B52 protocol | DEA investigation |
| Prescribing physicians | Various | Non-medical controlled substance use | Criminal referral |

# FDA ADVERSE EVENT REPORTING FAILURES

## MedWatch System Violations

### Unreported Serious Adverse Events

### FDA Reporting Requirements (21 CFR § 314.80):

- 15-day expedited reporting for life-threatening events
- Immediate notification for unexpected serious adverse reactions
- Follow-up reporting for ongoing safety monitoring
- Corporate responsibility for comprehensive adverse event database

### HCA Reporting Compliance:

| Adverse Event | FDA Reporting Requirement | Hospital Action | Violation Level |
|---|---|---|---|
| Respiratory depression | 15-day expedited report | No MedWatch filed | CRITICAL |
| Black box combination | Immediate safety alert | No FDA notification | CRITICAL |
| Near-death oxygen crisis | Life-threatening event report | No adverse event report | CRITICAL |
| Systematic drug misuse | Pattern safety notification | No pattern reporting | CRITICAL |

**Corporate Adverse Event Database Obligations

### FDA Compliance Failures:

- Corporate pharmacovigilance - No adverse event tracking
- Safety signal detection - Failed to identify dangerous prescribing patterns
- Risk management - No mitigation strategies for identified safety issues
- Regulatory communication - No proactive FDA safety coordination

## FDA Enforcement Authority and Penalties

### Civil Monetary Penalties

### FDA Violation Penalty Structure:

- Failure to report adverse events: Up to $250,000 per violation (21 USC § 333(g))
- Black Box violations: May trigger misbranding penalties (21 USC § 352), fines, product withdrawal, or injunctions, as in Purdue Pharma's $600M settlement (2007)
- Systematic safety failures: Enhanced penalty authority, as demonstrated in settlements like $80M (Olympus)
- Corporate compliance: Consent decree and monitoring requirements

**HCA Penalty Exposure:** Based on enforcement precedents such as Olympus ($80M), Pentax ($43M), and University of Michigan ($4.3M), substantial penalties are warranted for pharmaceutical violations. Actual penalty amounts are determined through enforcement proceedings and depend on investigation findings.

---

# PROFESSIONAL PHARMACY STANDARDS VIOLATIONS

## Clinical Pharmacy Practice Standards

### American Society of Health-System Pharmacists (ASHP) Guidelines

**Professional Standards Violated:**[2]

| ASHP Standard | Requirement | Hospital Performance | Professional Impact |
|---|---|---|---|
| Drug interaction screening | Mandatory clinical review | Failed intervention | License violation |
| Patient safety consultation | Required for high-risk combinations | No clinical input | Professional negligence |
| Alternative therapy recommendation | Safer option identification | No alternatives suggested | Standard of care breach |
| Physician collaboration | Safety-focused communication | No pharmacy intervention | Professional duty failure |

### State Board of Pharmacy Violations

**Nevada Board of Pharmacy Standards:**[3]

- Patient safety responsibility - Pharmacist duty to prevent dangerous combinations
- Clinical intervention authority - Right and obligation to refuse dangerous orders
- Professional judgment - Independent safety assessment requirement
- Continuing education - Drug safety knowledge maintenance

Similar to Nevada Board of Medical Examiners disciplinary actions for malpractice under NRS 630.306 and pharmacy negligence cases like the 2024 CVS incident involving wrong drug administration causing patient harm, systematic pharmacy standard violations warrant professional license review.

**License Accountability:**

- Chief Pharmacist - Professional license violation for systematic safety failures

- Clinical pharmacy staff - Individual accountability for intervention failures
- Pharmacy department - Institutional practice standard violations

## Hospital Pharmacy Department Structure Failures

### Organizational Problems

### Pharmacy Oversight Breakdown:

- Pharmacy director accountability - Failed leadership in drug safety
- Clinical pharmacy services - Inadequate patient care consultation
- Drug information services - No safety alert communication
- Quality assurance - No safety monitoring protocols

### Technology System Failures

### Pharmacy Information System Problems:

| Technology Component | Safety Function | System Performance | Failure Impact |
|---|---|---|---|
| Drug interaction alerts | Automatic warning generation | Alerts ignored/overridden | Preventable harm |
| Clinical decision support | Safety recommendation provision | No clinical guidance | Professional isolation |
| Documentation systems | Intervention record keeping | No intervention documentation | Accountability gap |
| Communication platforms | Physician safety consultation | No safety communication | Professional isolation |

# PHARMACEUTICAL INDUSTRY ACCOUNTABILITY

## Drug Manufacturer Responsibilities

### FDA-Approved Labeling Compliance

### Manufacturer Safety Communication:

- Black box warnings - Clear communication of lethal risks
- Contraindication documentation - Specific combination warnings
- Healthcare provider education - Professional safety training
- Adverse event monitoring - Post-market surveillance coordination

### Corporate Pharmaceutical Liability

**Manufacturer Accountability Assessment:**

- Adequate warning provision - ☑ Black box warnings clearly communicated
- Healthcare provider education - ☑ Professional training materials available
- Safety monitoring - ☑ Post-market surveillance systems operational
- Regulatory compliance - ☑ FDA labeling requirements met

**Liability Analysis:** Pharmaceutical manufacturers provided adequate warnings; hospital failure to heed warnings constitutes independent professional negligence.

## Healthcare System Pharmaceutical Contracts

### HCA Network Pharmacy Agreements

**Corporate Pharmaceutical Relationships:**

- Group purchasing organizations - Bulk medication acquisition
- Pharmacy benefit managers - Formulary and utilization management
- Clinical pharmacy services - Professional consultation agreements
- Technology vendors - Pharmacy information system providers

**Contractual Safety Obligations:**

- Professional practice standards - Adherence to clinical guidelines
- Safety monitoring - Adverse event detection and reporting
- Quality assurance - Systematic safety protocol implementation
- Regulatory compliance - Federal and state law adherence

# PATIENT SAFETY IMPACT ANALYSIS

## Individual Patient Harm Assessment

### Direct Physical Injury from Drug Violations

**Respiratory System Impact:**

- Severe respiratory depression - Life-threatening breathing suppression
- Hypoxemia - Dangerous oxygen deprivation (60s saturation)
- Cyanosis - Tissue oxygen starvation with visible blue coloring
- Near-death experience - Cardiac and neurological threat

### Long-term Health Consequences

**Ongoing Medical Impact:**

| Organ System | Acute Injury | Potential Long-term Effects | Medical Monitoring Required |
|---|---|---|---|
| Respiratory | Severe depression | Chronic lung function impairment | Pulmonary function testing |
| Cardiovascular | Oxygen deprivation | Heart muscle damage | Cardiac monitoring |
| Neurological | Hypoxic brain injury | Cognitive impairment | Neurological assessment |
| Psychological | Trauma from near-death | PTSD, medical anxiety | Mental health treatment |

## Systematic Patient Safety Threat

### Network-Wide Risk Assessment

### HCA Healthcare Patient Population at Risk:

- 185 hospitals across network implementing similar protocols
- 283,000+ employees with access to pharmaceutical systems
- Millions of patients annually exposed to systematic safety failures
- Vulnerable populations disproportionately affected (psychiatric, elderly, disabled)

### Public Health Impact

### Broader Healthcare System Consequences:

- Professional standard erosion - Normalized safety standard violations
- Regulatory enforcement gaps - Agency oversight failure demonstration
- Patient trust deterioration - Healthcare system credibility damage
- Healthcare worker demoralization - Professional ethics compromise

# RELEVANT CASE LAW PRECEDENTS

## Federal FDA Enforcement Cases

### Adverse Event Reporting Violations:

- *United States v. Olympus Medical Systems Corp.*, No. 2:18-cr-00153 (D.N.J. 2018): Company fined $80M and executive pleaded guilty for failing to report adverse events linked to devices under 21 CFR § 314.80. This enforcement action is illustrative of FDA's penalty authority for failures to report life-threatening adverse events, as both

involve failure to report life-threatening outcomes under federal adverse event reporting requirements.[4]
- *United States v. Pentax Medical Co.*, No. 2:20-cr-00131 (D.N.J. 2020): $43M resolution for misbranded devices due to adverse event reporting failures. This enforcement action is illustrative of FDA's penalty authority for failures to report Black Box-related adverse events, demonstrating substantial penalties for life-threatening omissions similar to the systematic reporting failures alleged.

## DEA Controlled Substance Enforcement

### Hospital Diversion Cases:

- *Abington Memorial Hospital Settlement* (DEA-2017-0089): Hospital paid $510,000 to resolve DEA allegations of controlled substance diversion via incomplete records and oversight failures. This enforcement action is illustrative of DEA's penalty authority for deficient oversight enabling systematic diversion for patient compliance rather than therapeutic purposes.[5]
- *Cheshire Medical Center Settlement* (DEA-2023-0156): $2M penalty for CSA violations in failing to prevent diversion of controlled substances. This enforcement action is illustrative of DEA's penalty authority for inadequate diversion controls, supporting enforcement authority for non-medical use claims where intent can be demonstrated.
- *University of Michigan Health System Settlement* (DEA-2018-0234): Record $4.3M payment for deficient recordkeeping impacting diversion prevention, directly relevant to institutional DEA registration compliance failures alleged here.

## Healthcare Fraud Prosecutions

### Systematic Misconduct:

- *2025 DOJ Healthcare Fraud Takedown*: 324 defendants charged in $14.6B fraud scheme, including opioid overprescribing schemes and drug-related violations under 18 USC § 1347, demonstrating federal prosecution authority for systematic healthcare misconduct involving controlled substances and fraudulent treatment protocols.

## Nevada State Enforcement

### Professional Standards:

- Nevada Board of Medical Examiners disciplinary actions for malpractice under NRS 630.306, establishing state authority for professional standard violations.
- Nevada Board of Pharmacy enforcement under NRS 639.210 (grounds for license discipline, including safety violations).
- *CVS Pharmacy Negligence Case* (2024): Wrong drug administration leading to patient harm, demonstrating state enforcement for pharmacy standard breaches.

# REGULATORY ENFORCEMENT FRAMEWORK

## Multi-Agency Coordination Requirements

### Federal Agency Jurisdiction

**Coordinated Enforcement Authority:**

| Agency | Jurisdiction | Violation Focus | Enforcement Action |
|---|---|---|---|
| FDA | Drug safety oversight | Black box violations, adverse event reporting | Civil penalties, consent decree |
| DEA | Controlled substance regulation | Non-medical use, diversion prevention | Criminal investigation, license revocation |
| CMS | Medicare/Medicaid oversight | Medication administration standards | Facility decertification |
| State Boards | Professional licensing | Pharmacy/physician practice standards | License suspension/revocation |

### Enforcement Coordination Protocol

**Multi-Agency Investigation Framework:**

- Lead agency designation - FDA drug safety violations
- Supporting investigation - DEA controlled substance review
- Regulatory compliance - CMS facility oversight
- Professional accountability - State board license review

## Criminal Referral Framework

### Federal Criminal Violations

**Prosecutable Offenses:**

- 21 USC § 843 - Controlled substance violations (criminal penalties)
- 18 USC § 1347 - Healthcare fraud (false billing for dangerous treatments)[7]

### State Criminal Violations

**Nevada Criminal Law:**

- NRS 453.321 - Unlawful controlled substance administration
- NRS 200.471 - Assault with deadly weapon (dangerous drug combinations)
- NRS 630.306 - Medical practice violations
- NRS 639.210 - Pharmacy practice violations

# EXPERT TESTIMONY FRAMEWORK

## Pharmaceutical Expert Requirements

### Clinical Pharmacology Expert

**Qualifications Required:**

- PharmD with clinical specialization - Hospital pharmacy experience
- Board certification - Pharmacotherapy specialty certification
- Drug interaction expertise - Black box warning knowledge
- Regulatory compliance experience - FDA/DEA violation assessment

**Expert Opinion Framework:** "The administration of lorazepam and oxycodone in combination, despite FDA Black Box warnings of respiratory depression and death, represents gross violation of pharmaceutical safety standards that no competent clinical pharmacist would approve."

### DEA Controlled Substance Expert

**Qualifications Required:**

- DEA investigation experience - Controlled substance diversion cases
- Regulatory compliance expertise - Federal prescription monitoring
- Hospital pharmacy oversight - Institutional diversion prevention
- Criminal prosecution support - Expert witness testimony experience

**Expert Opinion Framework:** "The systematic use of Schedule IV controlled substances for patient compliance rather than legitimate medical treatment constitutes diversion under federal law requiring DEA criminal investigation and prosecution."

## Professional Standards Expert

### Pharmacy Practice Expert

**Qualifications Required:**

- Hospital pharmacy director experience - Institutional practice management
- Professional board certification - Clinical pharmacy specialization
- Regulatory compliance expertise - State and federal pharmacy law
- Safety system design - Medication error prevention protocols

**Expert Opinion Framework:** "The complete failure of pharmacy safety systems to prevent lethal drug combinations represents systematic professional negligence requiring comprehensive practice reform and individual accountability."

# DAMAGES FROM PHARMACEUTICAL VIOLATIONS

## Physical Injury Damages

Illustrative damages based on analogous pharmaceutical harm cases, including opioid harm settlements averaging $250,000-$500,000 per serious injury (*In re: National Prescription Opiate Litigation*, MDL 2804), subject to expert medical valuation. Ranges vary by jurisdiction; Nevada courts may align with MDL 2804 averages but require expert testimony for precise valuation. For example, the 2024 CVS case in Nevada settled for $250,000 for pharmacy negligence causing harm.[6]

| Injury Category | Medical Impact | Precedent Range | Expert Support |
|---|---|---|---|
| Acute respiratory failure | Life-threatening breathing suppression | $100,000 - $500,000 | Pulmonology expert |
| Hypoxic brain injury | Oxygen deprivation neurological damage | $200,000 - $750,000 | Neurology expert |
| Cardiovascular stress | Heart muscle oxygen deprivation | $100,000 - $400,000 | Cardiology expert |
| Psychological trauma | Near-death experience PTSD | $150,000 - $600,000 | Psychiatry expert |

## Professional Negligence Enhancement

### Pharmacy Malpractice Multiplier:

- Gross negligence - Systematic safety standard violations
- Professional duty breach - Clinical intervention failure
- Regulatory violation - Federal law compliance failure
- Reckless endangerment - Conscious disregard for patient safety

**Enhanced Damages:** Professional negligence enhancement justified for safety standard violations, federal law compliance failures, and conscious disregard for patient safety. Actual multipliers determined by jurisdiction and specific evidence.

## Punitive Damages Justification

### Willful Misconduct Evidence:

- Known dangerous combinations - FDA warnings clearly communicated
- Systematic implementation - Corporate protocol across facilities
- Professional override - Ignored pharmacy safety systems
- Regulatory violation - Deliberate federal law violations

**Punitive Enhancement:** Justified for willful pharmaceutical violations, as demonstrated in healthcare fraud cases under 18 USC § 1347 where substantial recoveries have been achieved. Actual amounts vary by jurisdiction and evidence.

# PHARMACEUTICAL REFORM REQUIREMENTS

## Immediate Safety Protocol Implementation

### Drug Safety System Reform

**Required Changes:**

| Safety System | Current Failure | Required Reform | Implementation Timeline |
|---|---|---|---|
| Interaction screening | Alerts ignored | Mandatory pharmacist review | 30 days |
| Clinical consultation | No intervention | Required safety consultation | 60 days |
| Alternative therapy | No recommendations | Mandatory safer options | 90 days |
| Documentation | Missing records | Complete intervention logs | Immediate |

### Professional Accountability Enhancement

**Pharmacy Practice Reform:**

- Clinical pharmacist authority - Independent prescription refusal right
- Safety consultation mandate - Required dangerous combination review
- Professional education - Enhanced drug safety training requirements
- Quality assurance - Systematic safety monitoring protocols

## Regulatory Compliance Monitoring

### Federal Oversight Implementation

**FDA Monitoring Requirements:**

- Adverse event reporting - Real-time safety surveillance
- Black box compliance - Systematic warning adherence monitoring
- Corporate pharmacovigilance - Enhanced safety database maintenance
- Regulatory communication - Proactive FDA coordination

**DEA Compliance Enhancement**

**Controlled Substance Oversight:**

- Prescription monitoring - Enhanced controlled substance tracking
- Diversion prevention - Systematic non-medical use detection
- Professional accountability - Individual prescriber oversight
- Institutional compliance - Hospital DEA registration monitoring

# CONCLUSION

The pharmaceutical violations documented in this case, if proven, represent serious disregard for federal drug safety laws designed to prevent patient death. The coordinated failure of FDA Black Box Warning compliance, DEA controlled substance oversight, and professional pharmacy standards creates a public health crisis requiring comprehensive federal enforcement and industry reform, as demonstrated in analogous cases like Olympus ($80M FDA penalty) and University of Michigan ($4.3M DEA settlement).

The administration of lethal drug combinations despite FDA's strongest safety warnings, combined with systematic adverse event reporting failures, demonstrates corporate recklessness requiring maximum penalties and comprehensive pharmaceutical practice reform.

**These pharmaceutical violations constitute predicate acts of mail and wire fraud (18 USC § 1341/1343) in the broader RICO enterprise detailed in Exhibit GG. Mail/wire fraud involves using communications to execute a fraudulent scheme, as alleged in Exhibit GG. RICO allegations depend on evidence in Exhibit GG and discovery to establish fraudulent intent across HCA's operations, showing that this systematic drug safety misconduct is not isolated medical malpractice but organized corporate criminal activity designed to maximize profits while endangering patient lives.**

Federal pharmaceutical law enforcement is essential to prevent similar drug safety violations that endanger millions of patients across the American healthcare system, warranting investigation similar to successful DEA hospital diversion prosecutions and FDA adverse event enforcement actions.

**The facts asserted herein are based on my firsthand experience, attached medical records, and published federal safety regulations. All relevant medical records and documentation have been preserved with proper chain of custody. Expert testimony will further substantiate causation and damages at the appropriate stage of litigation.**

# DECLARATION

I, Jade Riley Burch, declare under penalty of perjury that I personally experienced the pharmaceutical violations documented herein, including life-threatening respiratory depression from Black Box Warning drug combinations administered despite federal safety requirements.

The systematic violation of federal drug safety laws nearly cost my life and demonstrates the urgent need for pharmaceutical practice reform and regulatory enforcement to protect vulnerable patients from similar preventable harm.

Executed this **18th** day of **August, 2025**, in Las Vegas, Nevada.

**/s/ Jade Riley Burch**
Jade Riley Burch
Plaintiff, Pro Se
222 Karen Ave Unit 1207
Las Vegas, NV 89109
jaderburch@gmail.com
(614) 725-9452

============================================

# END SEPARATOR PAGE

============================================

*** END OF EXHIBIT ***