==================================================

# EXHIBIT U

# INDEX / SEPARATOR PAGE

==================================================

### *** START OF EXHIBIT U ***

### TITLE: RETALIATION TIMELINE (HCA HEALTHCARE)

### (Next Page: Formal White Cover Sheet)

___ FILED     ___ RECEIVED
___ ENTERED   ___ SERVED ON
           COUNSEL/PARTIES OF RECORD

AUG 19 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

Jade Riley Burch,
Plaintiff,

v.

HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;
MountainView Hospital; and Southern Hills Hospital & Medical Center,
Defendants.
Case No.: 2:25-cv-01408-JAD-MDC

# EXHIBIT U
# RETALIATION TIMELINE (HCA HEALTHCARE)

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT U - RETALIATION TIMELINE (HCA HEALTHCARE)

**Prepared by:** Jade Riley Burch, Pro Se Plaintiff
**Date:** August 11, 2025
**Case:** Jade Riley Burch v. HCA Healthcare, Inc., et al., Case No. 2:2025cv01408

---

## KEY EVENTS AND RETALIATION TIMELINE

### April 16–17, 2025 – Major Surgery

- Plaintiff underwent a 7+ hour surgical procedure at Sunrise Hospital
- The day after surgery, Plaintiff experienced hemoptysis and preserved evidence
- Medical Significance: Hemoptysis in post-surgical patients is a critical indicator of possible pulmonary embolism (PE) requiring immediate diagnostic testing (CT angiogram or D-dimer)

### April 17–22, 2025 – Sunrise Hospital (Missed PE Diagnosis)

- Despite Plaintiff's severe symptoms, including hemoptysis, Sunrise staff performed only a chest X-ray, insufficient to rule out PE
- Plaintiff repeatedly indicated that a PE was present but was dismissed and misdiagnosed with pneumonia
- Sunrise discharged Plaintiff without proper evaluation or treatment, allowing a life-threatening PE to progress untreated
- Risk Classification: This incident likely triggered internal "behavioral/litigation risk" classifications as Plaintiff questioned care quality and retained physical evidence

### May 1, 2025 – Summerlin Hospital (Confirmed PE)

- Summerlin Hospital diagnosed the pulmonary embolism that Sunrise had failed to detect
- Plaintiff was in critical condition due to weeks of untreated PE
- Corporate Liability: This confirmed medical negligence and exposed HCA to substantial malpractice liability

### May 29, 2025 – Sunrise Hospital (B52 Incident)

- Plaintiff returned to Sunrise with seizures and neurological symptoms
- B52 cocktail (Haldol + Benadryl + Ativan) was administered despite contraindication for seizure patients
- Plaintiff experienced hostile treatment and punitive chemical sedation, indicating possible retaliation for April PE complaints
- Note: Plaintiff's Psychiatric Advance Directive (PAD) was not yet legally active (became effective June 6, 2025)

## June 6, 2025 – Psychiatric Advance Directive (PAD) Activation

- Plaintiff's notarized PAD became legally binding
- Explicit Prohibition: Chemical restraints or excessive sedation without psychiatric emergency justification
- Federal Protection: PAD creates enforceable patient rights under EMTALA and disability law

## June 22, 2025 – Pre-Litigation Demand Email Sent

- 4:34 PM: Formal pre-litigation demand letter emailed to HCA corporate Risk Management (Cinthya Cook) and Sunrise Patient Advocate
- Corporate Knowledge: First official legal notification of intent to sue over PE misdiagnosis and subsequent harm
- Electronic Evidence: Email metadata provides documented proof of corporate awareness

## June 26, 2025 – Media Escalation Threat

- 8:40 PM: Plaintiff issued escalation email warning of public exposure of medical negligence
- Corporate Response Trigger: Media threat likely escalated Plaintiff's risk-flag status within HCA's internal systems
- Timeline Significance: Establishes 48-hour window to subsequent systematic interventions

## June 28, 2025 – Southern Hills Hospital (Systematic Harmful Intervention Protocol)

Within 48 hours of media threat, Southern Hills deployed coordinated interventions:

**Physical Restraint Interventions:**

- 24/7 waist restraints applied without physician orders or federal documentation requirements
- Complete absence of restraint monitoring logs required by 42 CFR § 482.13(e)
- Patient mobility restricted without medical justification

### Chemical Intervention Protocol:

- Excessive Ativan administration causing 32 seizures in 48 hours through paradoxical effects
- Drug-induced motor function impairment requiring assistance with basic activities
- Patient coordination severely compromised, requiring modified food consistency

### Medical Abandonment During Emergencies:

- Oxygen saturation dropped to life-threatening levels (60s) with severe cyanosis dismissed as "normal"
- Emergency response delays of 5-7 minutes during seizure events
- Life-threatening symptoms systematically minimized by staff

### Legal Rights Violations:

- Medical POA (Porscha Ryan) systematically excluded from treatment decisions despite federal patient rights
- Active PAD repeatedly violated without psychiatric emergency justification
- Medical records systematically omitted intervention documentation and monitoring logs

### Documentation Suppression:

- Restraint orders acknowledged by staff but absent from medical records
- Federal documentation requirements systematically violated
- Pattern suggests coordinated evidence suppression

### July 1–5, 2025 – Settlement Demand Follow-Ups

- Plaintiff sent multiple follow-up settlement communications to HCA corporate and legal counsel
- Continued corporate engagement regarding systematic violations

- Corporate awareness of ongoing federal litigation preparation

## July 9, 2025 – Corporate Exposure Notification

- 5:43 PM: Plaintiff notified Investor Relations, corporate legal, and external counsel (Hall Prangle law firm) of systematic violation evidence
- Senior executives (Harlow Sumerford, Frank Morgan) formally notified of enterprise-level violations
- Corporate Impact: Senior executive awareness of liability exposure and potential regulatory consequences

---

## PATTERN ANALYSIS

### Escalation Sequence

- Progressive intensification: Medical negligence → chemical restraint → systematic harmful interventions
- Corporate notification correlation: Direct relationship between legal threats and intervention intensity
- 48-hour precision timing: Suggests coordinated enterprise response protocol
- Professional medical expertise: Patient Safety Officer credentials allegedly misapplied for harmful interventions
- Timeline evidence: Creates substantial challenges for corporate defense strategies

### Key Legal Findings

### Corporate Knowledge Established:

- Electronic evidence of Risk Management Director receipt of litigation threats
- 48-hour response window demonstrates coordinated capability
- Senior executive involvement documented through corporate communications

### Federal Violations Documented:

- Civil rights conspiracy (42 U.S.C. § 1985) - retaliation for exercising constitutional rights

- Healthcare fraud (18 U.S.C. § 1347) - systematic record falsification
- Obstruction of justice (18 U.S.C. § 1512) - coordinated evidence suppression
- EMTALA violations (42 U.S.C. § 1395dd) - medical abandonment and stabilization failures

**Professional Standards Violations:**

- Patient Safety Officer implementing patient harm protocols
- Advanced medical credentials misapplied contrary to professional obligations
- Systematic violation of nursing and healthcare administration ethics

---

## CHRONOLOGICAL OBSERVATIONS

**Retaliation Pattern Development:**

- Initial incident (April PE complaints) established Plaintiff as "high-risk patient"
- Medical confirmation of negligence (May 1) escalated corporate liability concerns
- First overt retaliation (May 29 B52 incident) marked beginning of systematic response
- Legal notification (June 22-26) triggered immediate coordinated intervention deployment
- Corporate exposure (July 9) elevated to senior executive involvement

**48-Hour Corporate Response:** The precision timing between June 26 media threat and June 28 systematic interventions demonstrates coordinated enterprise capability for rapid deployment of harmful intervention protocols across multiple facilities.

---

**Prepared Under Penalty of Perjury**

*[signature]*

Jade Riley Burch, Pro Se Plaintiff
Date: 11th August 2025 | 222 Karen Ave Unit 1207, Las Vegas, NV 89109
(614) 725-9452 | jaderburch@gmail.com

==========================================

# END SEPARATOR PAGE

==========================================

*** END OF EXHIBIT ***