===========================================

# EXHIBIT R

# INDEX / SEPARATOR PAGE

===========================================

# *** START OF EXHIBIT R ***

# TITLE: ENTERPRISE RISK FLAG RETALIATION & COORDINATED HARM PROTOCOL

# (Next Page: Formal White Cover Sheet)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

Jade Riley Burch,
Plaintiff,

v.

HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;
MountainView Hospital; and Southern Hills Hospital & Medical Center,
Defendants.
Case No.: 2:25-cv-01408-JAD-MDC

# EXHIBIT R
# Enterprise Risk Flag Retaliation & Coordinated Harm Protocol

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT R - ENTERPRISE RISK FLAG RETALIATION & COORDINATED HARM PROTOCOL

*(Systematic Post-Complaint Medical Abuse Following Legal Threat Communications)*

**HCA Healthcare, Inc. – Risk Flag Retaliation Evidence**
**Prepared by:** Jade Riley Burch, Pro Se Plaintiff
**Date:** August 10th 2025

## EXECUTIVE SUMMARY

Evidence demonstrates that HCA Healthcare, Inc. implemented a retaliatory risk management protocol following Plaintiff's pre-litigation communications. This protocol deprived the Plaintiff of safe, standard medical care and subjected her to coercive, harmful measures that constitute a coordinated defensive medicine strategy designed to mitigate corporate liability by silencing and discrediting a patient-complainant.

This exhibit documents: • The timeline of corporate notifications and subsequent retaliatory treatment • Enterprise-level risk flagging practices likely propagated across HCA's network • Unjustified use of chemical and physical restraints resulting in life-threatening conditions • Systematic record falsification suggesting coordinated evidence suppression • Witness corroboration of abnormal staff behavior, secretive discussions, and failure to follow federal patient rights laws

The facts establish a deliberate strategy of harm posing as care — orchestrated at the enterprise level to silence, discredit, and incapacitate a known litigation threat.

## RISK FLAG RETALIATION TIMELINE

**June 22, 2025:** Formal pre-litigation email sent to HCA Corporate Risk Management (Cinthya Cook, MSN/MHA, BSBA, RN, CPPS), notifying of Plaintiff's intent to sue Sunrise Hospital for a missed PE diagnosis.

**June 26, 2025:** Follow-up email threatens media exposure and references systemic failures.

**June 28, 2025:** At Southern Hills Hospital:

- 24/7 waist restraints used with no medical justification or physician order
- Ativan + Oxycodone combo administered despite no recorded pain complaints
- Over 32 seizures in 48 hours triggered by overmedication, with documented 5–7 minute delays in emergency response
- Plaintiff's Medical POA was intentionally bypassed; staff held "hallway" conversations to avoid legal oversight

## FALSE PRETENSE OF MEDICAL CARE

Southern Hills' conduct created the appearance of medical treatment while executing a risk-control strategy designed to incapacitate the Plaintiff:

**Medical Management Irregularities:** • Unnecessary medications were administered solely for sedation, not symptom relief • Fictitious diagnoses such as "Traumatic Brain Injury (TBI)" were listed, despite a CT scan showing no intracranial abnormality • Medical records omitted all restraint orders, continuous monitoring logs, and seizure episodes, violating 42 CFR § 482.13(e) (Patient Rights) and CMS State Operations Manual – Appendix A – Tag A-0175 to A-0214 (Restraint/Seclusion) • Staff statements like "Doctor requested to keep me in restraints 24/7" contrasted with the total absence of physician orders in the chart, demonstrating intentional record falsification

## WITNESS TESTIMONY

**Porscha Ryan – Medical POA & PAD Agent**

Porscha Ryan's designation as Medical POA was notarized and on file with the hospital prior to admission, establishing her legal authority to monitor care and make healthcare decisions. Additionally, a bright red binder clearly labeled "PSYCHIATRIC ADVANCE DIRECTIVE" was prominently displayed at the bedside. The binder contained a highly visible warning page stating:

**"CONFIDENTIAL - PSYCHIATRIC DIRECTIVE - DO NOT ADMIT TO LOCKED PSYCHIATRIC UNIT"**

The warning explicitly stated:

- "Patient has a VALID Psychiatric Advance Directive (PAD)"
- "Governed under Nevada law NRS 449A.600-449A.645"
- "NO forced sedation  NO isolation"
- "NO locked ward admission without medical coordination"
- "Contact Psychiatric Agent IMMEDIATELY: Porscha Ryan - 702-787-1871"

- "UNAUTHORIZED PSYCHIATRIC ADMISSION OR MEDICATION MAY CONSTITUTE MEDICAL NEGLIGENCE OR LEGAL VIOLATION"

This prominent display made Porscha's legal authority and the patient's specific treatment limitations unmistakable to all hospital staff, yet they proceeded with the exact prohibited interventions.

**Critical Observations:** • Witnessed staff ignoring life-threatening oxygen desaturation (60s) and cyanosis ("Your lips were like purple and blue") • Heard staff dismiss these symptoms as "normal," which aligns with a systematic approach to minimize documented medical emergencies • Documented multiple seizures, delayed nursing responses, and hostile treatment toward the Plaintiff • Audio evidence: "Since when is that normal?" (direct challenge to staff response to critical symptoms)

## PATTERN OF ENTERPRISE CONDUCT

**Risk Management Flagging:** Emails to Cinthya Cook appear to have triggered a network-wide alert, marking Plaintiff as a litigation threat across all HCA facilities

**Defensive Medicine Protocols:** Evidence suggests a prewritten corporate protocol for managing patients who pose litigation risks, involving sedation, false diagnoses, and deliberate obstruction of POA authority

**Corporate Coordination:** The 48-hour timeline from Plaintiff's emails to the deployment of restraints and chemical interventions strongly indicates corporate direction rather than isolated facility actions

## LEGAL FRAMEWORK & FEDERAL VIOLATIONS

**42 U.S.C. § 1985 – Civil Rights Conspiracy**
HCA knowingly retaliated against Plaintiff for exercising her constitutional right to access the courts, coordinating medical abuse to silence litigation.

**18 U.S.C. § 1512 – Obstruction of Justice**
Records were falsified or omitted in a pattern indicating an intent to suppress critical evidence and impede legal proceedings.

**18 U.S.C. § 1962 – RICO Enterprise**
A criminal enterprise operated under color of healthcare, engaging in interstate fraud, patient abuse, and evidence concealment to neutralize litigation threats.

**42 CFR § 482.13(e) – Restraints & Seclusion**
Documentation of physical and chemical restraints is missing, a direct violation requiring citation by CMS inspectors.

**EMTALA Violations:** Denial of emergency medical screening and stabilization due to litigation threat flagging

**Battery & False Imprisonment:** Physical restraints without consent or legal justification

**Healthcare Fraud:** 18 U.S.C. § 1347 – Billing for physician services not rendered and false documentation of medical encounters

## REGULATORY VIOLATIONS

**Federal Patient Rights Standards:** • 42 CFR § 482.13(e): Failure to maintain required restraint documentation • 42 CFR § 482.12: Governing body responsibilities violated through systematic harmful protocols • 42 CFR § 482.24: Medical record services compromised through systematic omissions

**CMS Conditions of Participation:** Systematic violations of provider agreement obligations regarding patient safety and documentation requirements

**Professional Licensing Violations:** Conduct described may constitute violations of state medical and nursing practice acts, including abuse of sedation protocols, falsification of records, and unethical use of restraints

## CONCLUSION

The evidence demonstrates that HCA Healthcare's risk management apparatus deployed an enterprise-wide harmful intervention protocol under the guise of medical care, targeting Plaintiff as a litigation threat. This conduct endangered Plaintiff's life through systematic harmful interventions, violated multiple federal patient rights statutes, and created coordinated evidence suppression designed to obstruct justice and eliminate litigation threats through systematic withholding of standard care protocols.

The 48-hour precision timing, combined with systematic documentation suppression and witness testimony of life-threatening symptom dismissal, establishes a pattern of coordinated corporate retaliation that transcends individual facility actions and demonstrates enterprise-wide criminal conspiracy.

## RESULTING HARM

Plaintiff suffered 32 drug-induced seizures, memory impairment, oxygen desaturation injuries, prolonged physical trauma, and psychiatric destabilization directly resulting from these interventions. These harms were not incidental to medical care but were the foreseeable and intended consequences of the systematic harmful intervention protocol deployed in retaliation for exercising constitutional rights.

---

**Respectfully Submitted,**

/s/ Jade Riley Burch
**Jade Riley Burch**
Pro Se Plaintiff
222 Karen Ave Unit 1207
Las Vegas, NV 89109
jaderburch@gmail.com |

(614) 725-9452

**Executed on August 10th, 2025**
**Las Vegas, Nevada**

==================================

# END SEPARATOR PAGE

==================================

*** END OF EXHIBIT ***