==========================================

# EXHIBIT O

# INDEX / SEPARATOR PAGE

==========================================

## *** START OF EXHIBIT O ***

## TITLE:

## ENTERPRISE RETALIATION PROTOCOL
## & CIVIL RIGHTS CONSPIRACY EVIDENCE

**(Next Page: Formal White Cover Sheet)**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC; MountainView Hospital; and Southern Hills Hospital & Medical Center,** Defendants.

**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT O

## ENTERPRISE RETALIATION PROTOCOL & CIVIL RIGHTS CONSPIRACY EVIDENCE

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT O - ENTERPRISE RETALIATION PROTOCOL & CIVIL RIGHTS CONSPIRACY EVIDENCE

**Plaintiff:** Jade Riley Burch
**Facility:** HCA Healthcare Enterprise (Multiple Facilities)
**Dates of Incident:** June 22 - July 9, 2025

## PRELIMINARY STATEMENT

This case involves corporate retaliation at its worst. HCA Healthcare operates a coordinated system targeting patients who dare to threaten litigation. The evidence shows a deliberate enterprise protocol designed to punish patients who exercise their constitutional right to petition federal courts.

The evidence clearly demonstrates a centrally coordinated system operated by **Cinthya Cook, MSN/MHA, RN, CPPS, Director of Risk Management/Patient Safety Officer**. Cook used her advanced medical credentials to implement dangerous intervention protocols against Plaintiff. The irony is staggering: a "Patient Safety Officer" weaponizing medical care.

## THE SMOKING GUN

When Jade Riley Burch sent litigation threat communications to HCA's corporate leadership, the corporation deployed retaliation within **48 hours**. Not a coincidence. Not a mistake. **Retaliation.**

Plaintiff was subjected to unauthorized physical restraints, dangerous chemical interventions, and deliberate obstruction of her Medical Power of Attorney rights. The digital communication trail establishes direct corporate knowledge and immediate coordinated response.

## THE EMAIL EVIDENCE - CORPORATE CONSPIRACY IN BLACK AND WHITE

Here's what happened, step by step:

### June 22, 2025, 4:34 PM

**TO:** Cinthya.Cook@hcahealthcare.com
**SUBJECT:** "Formal Pre-Litigation Demand -- Missed PE Diagnosis"

Plaintiff sent her initial legal threat directly to Cinthya Cook, HCA's Risk Management Director. This communication established direct corporate knowledge of pending federal litigation. Cook knew what was coming.

### June 26, 2025, 8:40 PM

**TO:** Cinthya.Cook@hcahealthcare.com
**SUBJECT:** "Sunrise Hospital's Missed Diagnosis to Become Public -- Final Opportunity"

Plaintiff escalated with a media exposure threat. This created urgent corporate liability concerns requiring immediate response. The corporate machinery was now in motion.

### June 28, 2025 - THE CORPORATE RESPONSE

Exactly **48 hours** after the final communication, Plaintiff was admitted to Southern Hills Hospital. What happened next was no accident. The facility deployed intervention protocols including:

• Unauthorized physical restraints • Chemical sedation using high-risk drug combinations • Deliberate obstruction of Medical Power of Attorney rights

The rapid deployment timeline proves pre-existing enterprise infrastructure capable of coordinating retaliation across multiple facilities within 48 hours of receiving litigation threats.

### July 9, 2025 - ENTERPRISE NOTIFICATION

**TO:** investorrelations@hcahealthcare.com, legal@hcahealthcare.com

Corporate executives received comprehensive documentation of the violations, establishing enterprise-wide knowledge of the coordinated retaliation protocols.

## CINTHYA COOK - THE ARCHITECT OF ABUSE

Cook's professional credentials created the perfect storm for patient abuse:

**Professional Credentials:** • **MSN/MHA** - Master's in Nursing/Healthcare Administration • **RN, CPPS** - Registered Nurse, Certified Patient Safety Professional • **Director Risk Management/Patient Safety Officer** - Dual enterprise authority

Cook's dual authority over both medical protocols and liability management created a structural conflict of interest. She converted patient safety expertise into instruments of corporate defense. This is unconscionable.

**Evidence of Cook's Coordination:**

Cook received direct litigation threats. She possessed enterprise authority to deploy facility protocols. She utilized her advanced nursing knowledge to design dangerous drug combinations targeting a seizure disorder patient. Her position as Patient Safety Officer provided the medical expertise necessary to implement intervention protocols while maintaining the appearance of legitimate medical care.

To be clear: Cook's role represents a fundamental departure from medical ethics. She utilized advanced healthcare credentials not for healing, but for suppression of patients who exercise constitutional rights in service of corporate liability management.

## THE RETALIATION PROTOCOL - MEDICAL ABUSE BY DESIGN

The retaliation protocol deployed against Plaintiff demonstrates sophisticated medical knowledge applied for punishment rather than treatment:

### Unauthorized Physical Restraints

Immediate application of 24/7 waist restraints without medical justification, physician orders, or patient consent. Staff acknowledged restraint orders to witnesses while failing to document any such orders in medical records. This isn't sloppy recordkeeping - it's deliberate concealment.

### Dangerous Chemical Interventions

Simultaneous administration of Lorazepam and Oxycodone despite medical records documenting "Has not tried any pain meds for headache." The combination of these medications creates known risks of respiratory depression, particularly dangerous for seizure disorder patients. Cook knew this.

### Medical Abandonment During Crisis

When Plaintiff's oxygen saturation dropped to dangerous levels (60s) with visible cyanosis, staff dismissed life-threatening symptoms as "normal" rather than providing appropriate medical intervention. This conduct shocks the conscience.

### Cognitive Suppression

Excessive Ativan administration resulted in **32 documented seizures over 48 hours** and profound memory disruption. The dosages and timing suggest deliberate cognitive impairment designed to prevent future testimony about the treatment.

The precision and coordination of these interventions demonstrates medical expertise deployed with clinical precision for non-therapeutic purposes.

# WITNESS TESTIMONY - THE UNIMPEACHABLE OBSERVER

Porscha Ryan's role as court-appointed Medical Power of Attorney provided unique legal standing that compromised Cook's intervention protocols. Ryan's designation as Medical POA was notarized and on file with the hospital prior to admission.

Ryan possessed federal legal authority to monitor care and make healthcare decisions. Her status as a federally protected healthcare proxy means her observations carry the weight of official legal testimony. Her presence invalidated any subsequent claims of medical misunderstanding or accidental treatment errors.

**Critical Witness Documentation:**

1. No physician conducted meaningful bedside evaluations despite detailed consultation notes
2. Staff openly discussed restraint orders that do not exist in medical records
3. Life-threatening vital signs were dismissed as "normal"
4. Deliberate obstruction of Medical POA authority as retaliation

Ryan's legal standing and real-time documentation converted what was intended as covert abuse into documented federal violations with an unimpeachable witness whose authority could not be challenged or eliminated.

**The facts are undisputed: Ryan saw everything and documented it in real time.**

# RECORD FALSIFICATION - CONSCIOUSNESS OF WRONGDOING

The pattern of missing documentation establishes criminal intent, not administrative oversight.

**Federally Required Documentation Completely Absent**

Under 42 C.F.R. § 482.13(e) and CMS State Operations Manual – Appendix A – Tag A-0175 to A-0214 (Restraint/Seclusion), hospitals must maintain detailed documentation for all restraint use. The following required records are completely absent:

• Physician orders for restraint application • Medical justification for restraint necessity • 15-minute monitoring logs required by federal regulation • 2-hour restraint assessments mandated by CMS • Patient consent or emergency authorization

Staff confirmations of restraint orders combined with complete absence of documentation establishes evidence suppression coordinated by someone with detailed knowledge of regulatory requirements.

The selective documentation pattern - maintaining routine medical records while eliminating evidence of controversial interventions - demonstrates concealment, not administrative error.

# FEDERAL VIOLATIONS AND CRIMINAL LIABILITY

## Civil Rights Conspiracy (42 U.S.C. § 1983 & § 1985)

**42 U.S.C. § 1983 – Deprivation of rights under color of law:** Hospital staff acting under institutional authority deprived Plaintiff of constitutional rights through coordinated medical retaliation.

**42 U.S.C. § 1985(3) – Conspiracy to retaliate against court access:** Enterprise conspiracy to punish constitutional rights exercise. The email evidence establishes corporate knowledge. The 48-hour timeline proves coordinated response capability. Cook's medical expertise coordination demonstrates organized criminal activity.

## RICO Violations (18 U.S.C. § 1962)

HCA operates as a criminal enterprise with Cook coordinating the conspiracy. The pattern affects interstate commerce through their multi-state hospital system. Predicate acts include civil rights violations, healthcare fraud, and obstruction of justice.

## Healthcare Fraud (18 U.S.C. § 1347)

Billing for physician services never rendered. False documentation of medical encounters contradicted by witness testimony. Misrepresentation of care quality while providing abuse.

## Obstruction of Justice (18 U.S.C. § 1512)

Coordinated record falsification to conceal federal violations. Enterprise-wide document suppression implemented through Cook's Risk Management authority.

# ONGOING ENTERPRISE THREAT

Cook's retaliation system remains operational across HCA's 186 hospitals. Plaintiff cannot safely access emergency medical care at any HCA facility due to active corporate flagging systems. The enterprise protocol threatens constitutional rights for any patient who attempts to exercise legal remedies against HCA.

Cook's continued employment as Risk Management Director demonstrates institutional approval of patient abuse protocols. HCA's failure to terminate Cook or dismantle the retaliation infrastructure constitutes ongoing criminal enterprise activity.

# DAMAGES AND RELIEF REQUESTED

**Compensatory Damages** for civil rights violations, physical harm, and trauma caused by abuse coordinated by medical professionals.

**Punitive Damages** to deter enterprise conspiracy and professional credential abuse. The nature of the violations and medical expertise involved demand maximum deterrent effect.

**RICO Treble Damages** under federal racketeering statutes for criminal enterprise activity.

**Injunctive Relief** requiring immediate dismantling of retaliation protocols and termination of responsible corporate personnel.

**Regulatory Referrals** to Department of Justice, Centers for Medicare & Medicaid Services, and Nevada Board of Nursing for appropriate criminal and professional sanctions.

# CONCLUSION

The evidence establishes that HCA Healthcare operates protocols to retaliate against patients who exercise constitutional rights. Cinthya Cook utilized advanced medical credentials to coordinate enterprise-wide patient abuse while maintaining the appearance of legitimate medical care.

The destruction of required documentation demonstrates consciousness of wrongdoing, not administrative oversight.

Plaintiff's Medical Power of Attorney documented violations in real-time, converting abuse into legally actionable evidence with an unimpeachable witness. Cook's sophisticated medical knowledge, when applied for punishment rather than treatment, represents a fundamental betrayal of healthcare ethics and federal patient protection laws.

**This Court must recognize that HCA Healthcare's enterprise-wide retaliation protocols not only violated Plaintiff's rights but continue to pose an imminent threat to public health and constitutional protections nationwide.**

---

# SUPPLEMENT TO EXHIBIT N – ENTERPRISE RETALIATION ESCALATION ANALYSIS

**Plaintiff:** Jade Riley Burch
**Subject:** Life-Threatening Medical Abandonment with Intent to Harm – Withheld Oxygen Protocol
**Date:** July 28, 2025

---

### JUDICIAL SUPPLEMENT – LIFE-THREATENING MEDICAL ABANDONMENT AS ENTERPRISE RETALIATION

This supplement is submitted in further support of Exhibit N, demonstrating that HCA Healthcare facilities, acting in coordinated retaliation under enterprise protocol, implemented a medical abandonment protocol that constituted life-threatening neglect with intent to harm through deliberate omission of life-saving care — abruptly reversed only upon confirmation of Plaintiff's preexisting oxygen use and legal liability exposure.

## I. CRITICAL EVENT TIMELINE: LETHAL WITHHOLDING OF CARE

• **June 28, 2025:** Plaintiff admitted to Southern Hills Hospital after issuing formal litigation notices. • Plaintiff enters respiratory distress – O2 saturations documented in the 60s, cyanosis observed, altered mental status. No emergency intervention is initiated. • Porscha Ryan, Medical Power of Attorney (POA), is present, observing distress and lack of staff engagement. • Staff inquire: "Does she use oxygen at home?" • POA confirms: Plaintiff is prescribed supplemental oxygen due to seizures and hypoxic episodes. • **IMMEDIATE CHANGE:** Staff provide oxygen, and the pattern of abuse ceases abruptly. No further cognitive suppression or sedation observed.

This sequence forms the cornerstone of the Plaintiff's theory of life-threatening medical abandonment: **life-saving intervention was deliberately withheld until staff confirmed that Plaintiff's survival would create documented liability for the facility.** These findings are supported by **Exhibit D (Southern Hills Medical Records)**, which omit required documentation of oxygen intervention despite documented hypoxic crisis.

## II. ELEMENTS OF LIFE-THREATENING MEDICAL ABANDONMENT WITH INTENT TO HARM

Under federal civil rights law and medical malpractice precedent, life-threatening medical abandonment with intent to harm may be established where:

1. There is deliberate indifference to serious medical need;
2. Standard medical protocols are intentionally withheld despite obvious distress;
3. The pattern demonstrates retaliatory rather than therapeutic purpose.

Here, those elements are clearly satisfied:

- **Deliberate Indifference:** Plaintiff had just issued litigation threats. HCA had demonstrated motive to retaliate against her as a legal threat through coordinated enterprise protocol.

- **Intentional Protocol Violation:** Hospital staff withheld life-sustaining oxygen despite visible cyanosis and critical hypoxia, violating standard emergency response protocols that require immediate intervention for respiratory distress.

- **Retaliatory Pattern:** The only reason intervention occurred was Porscha Ryan's confirmation of prescribed oxygen use — establishing that once legal liability was confirmed, standard care was immediately provided.

This satisfies the standard for deliberate indifference with retaliatory intent, a recognized doctrine in civil rights and medical abandonment law.

## III. CONSCIOUSNESS OF GUILT: BEHAVIORAL SHIFT AFTER LIABILITY TRIGGER

If the staff's conduct had been an oversight, correction would have occurred in real-time — when vitals crashed, not after legal exposure was identified.

- Oxygen was not administered when Plaintiff's O2 dropped to life-threatening levels in the 60s. • As Medical POA, Porscha Ryan had legal duty to monitor care and document violations - her real-time observations constitute privileged medical advocacy testimony. • Only when Ryan confirmed home oxygen use did staff provide standard respiratory intervention. • Ryan's legal intervention prevented escalation of life-threatening neglect and documented the facility's consciousness of wrongdoing. • At that moment, all retaliatory behaviors ceased - demonstrating the conduct was deliberate, not medical oversight.

This abrupt behavioral shift, witnessed and documented by a federally protected Medical Power of Attorney, demonstrates consciousness of wrongdoing and establishes that defendants were willing to risk Plaintiff's life as part of coordinated retaliation.

## IV. SYSTEMIC LIABILITY – ORGANIZED ABUSE INFRASTRUCTURE

Southern Hills Hospital is not an isolated actor. This incident occurred within the broader timeline of HCA enterprise coordination:

- Plaintiff issued legal threats directly to HCA Risk Management. • Plaintiff was admitted within 48 hours to an HCA facility where abuse escalated. • Retaliatory patterns occurred across three HCA hospitals (Sunrise, MountainView, Southern Hills) within weeks.

This pattern reflects an enterprise protocol to neutralize legal threats through medically sophisticated means, including sedation, systematic record falsification to conceal violations, and — in this case — life-threatening abandonment during medical crisis.

## V. LEGAL CONCLUSIONS AND ENHANCED CLAIMS

The totality of evidence supports a credible theory that Plaintiff was subjected to a coordinated medical retaliation protocol that escalated to life-threatening abandonment with intent to harm:

- Systematic withholding of standard respiratory care amid life-threatening hypoxia; • Deliberate delay in life-saving intervention until liability risk was confirmed by Medical POA; • Immediate behavioral reversal demonstrating strategic concealment rather than care failure; • Systematic record falsification to conceal life-threatening neglect, making Medical POA testimony more credible and necessary.

The fact that defendants failed to document critical interventions in violation of federal regulations demonstrates intent to conceal wrongdoing. Porscha Ryan's status as Medical Power of Attorney provides her testimony with enhanced legal credibility, as she had both the legal duty and authority to monitor care and document violations.

This conduct supports enhanced legal claims including:

- **Life-Threatening Medical Abandonment** (State Medical Malpractice); • **Deprivation of Rights Under Color of Law** (42 U.S.C. §1983); • **Civil RICO - Pattern of Racketeering Activity** (18 U.S.C. §1962); • **Healthcare Fraud and Systematic Record Falsification** (18 U.S.C. §1347, §1512).

**Respectfully Submitted,**

*/s/ Jade Riley Burch*

Jade Riley Burch
222 Karen Ave Unit 1207
Las Vegas, NV 89109
Email: jaderburch@gmail.com
Phone: 614-725-9452

**Date:** AUGUST 18, 2025

========================================

# END SEPARATOR PAGE

========================================

*** END OF EXHIBIT ***