======================================

# EXHIBIT FFF

# INDEX / SEPARATOR PAGE

======================================


## *** START OF EXHIBIT FFF ***


## TITLE: NATIONAL CLASS ACTION BLUEPRINT


## (Next Page: Formal White Cover Sheet)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;**
**MountainView Hospital; and Southern Hills Hospital & Medical Center,**
Defendants.

**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT FFF

## NATIONAL CLASS ACTION BLUEPRINT

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT FFF: NATIONAL CLASS ACTION BLUEPRINT

## HCA Healthcare Enterprise-Wide Pattern Documentation

**Prepared by:** Jade Riley Burch
**Date:** August 18, 2025
**Case:** Jade Riley Burch v. HCA Healthcare, Inc., et al.

---

## EXECUTIVE SUMMARY

This blueprint demonstrates how systematic violations documented at HCA Nevada facilities represent enterprise-wide patterns replicable across HCA's 191-hospital network through coordinated class action litigation. The evidence framework developed in Nevada provides the template for nationwide discovery, liability theories, and damages calculations that will expose HCA to conservative estimates of $500M-$2B+ in class action exposure based on similar healthcare enterprise litigation.

**Settlement Impact:** Resolution of Plaintiff's individual case prevents implementation of this blueprint, while litigation ensures its nationwide deployment using HCA's own evidence as the foundation for enterprise-wide liability across 191 hospitals.

---

## SECTION I: ENTERPRISE-WIDE VULNERABILITY MAPPING

### HCA Network Infrastructure Analysis

| Component | Details | Class Action Relevance |
|---|---|---|
| Hospital Count | 191 hospitals across 20 states* | Massive potential plaintiff pool |
| Employee Base | 316,000+ colleagues* | Uniform training/policy implementation |
| Annual Revenue | $70.603 billion (2024)* | Deep pockets for damages |
| Federal Funding | ~$31.065 billion Medicare/Medicaid annually (approx. 44% of total revenue)* | Federal program violation exposure |

| Component | Details | Class Action Relevance |
|---|---|---|
| EHR System | Centralized electronic health records | Uniform documentation patterns |
| Corporate Structure | Publicly traded (NYSE: HCA) | SEC disclosure obligations |

*Figures as of Q2 2025; subject to change per HCA filings.*

## Systematic Violation Categories

**Category 1: Chemical Restraint Abuse • Nevada Evidence:** B52 protocol violations at Sunrise, Southern Hills • **Enterprise Risk:** Standardized restraint protocols across network • **Class Potential:** All psychiatric/emergency admissions (estimated 1M+ annually based on industry averages) • **Damages Per Victim:** $50,000-$200,000 (constitutional violations)

**Category 2: Advance Directive Violations • Nevada Evidence:** PAD violations, agent exclusion at Southern Hills • **Enterprise Risk:** Corporate policies overriding patient rights • **Class Potential:** All patients with advance directives (estimated 500,000+ annually based on industry averages) • **Damages Per Victim:** $25,000-$150,000 (civil rights violations)

**Category 3: Documentation Fraud • Nevada Evidence:** Missing restraint orders, falsified nursing logs • **Enterprise Risk:** Network-wide EHR manipulation protocols • **Class Potential:** All patients with billing discrepancies (estimated 5M+ annually based on industry averages) • **Damages Per Victim:** $10,000-$75,000 (healthcare fraud)

**Category 4: Emergency Department Discrimination • Nevada Evidence:** PE misdiagnosis based on psychiatric history • **Enterprise Risk:** Systematic bias in emergency care protocols • **Class Potential:** All psychiatric patients in emergency settings (estimated 2M+ annually based on industry averages) • **Damages Per Victim:** $75,000-$500,000 (EMTALA violations)

**Category 5: Retaliation Protocols • Nevada Evidence:** 48-hour retaliation timeline, enterprise coordination • **Enterprise Risk:** Corporate "difficult patient" management systems • **Class Potential:** All patients who filed complaints (estimated 100,000+ annually based on industry averages) • **Damages Per Victim:** $100,000-$1M+ (whistleblower retaliation)

---

# SECTION II: REPLICATION METHODOLOGY

## Evidence Collection Framework

### Medical Records Acquisition

**TEMPLATE REQUEST LETTER:** "Pursuant to HIPAA § 164.524, I request complete and unredacted copies of:

- All nursing notes and physician orders
- Restraint and sedation documentation
- Incident reports and risk management communications
- Billing records and procedure codes
- Electronic health record audit trails"

**Documentation Analysis Protocol**

1. **Missing Records Identification:** Compare required vs. actual documentation
2. **Billing Discrepancy Analysis:** Match procedures billed vs. medical necessity
3. **Timeline Correlation:** Identify retaliation patterns post-complaint
4. **Policy Violation Documentation:** Compare care provided vs. stated protocols

## Witness Identification Strategy

• **Patient Advocates:** Family members excluded from decision-making • **Healthcare Workers:** Whistleblowing staff with conscience concerns • **Former Employees:** Terminated workers with inside knowledge • **Expert Witnesses:** Independent medical professionals

**Live Witness Proof Already Established** • **Exhibit E:** Porscha Ryan multi-facility witness statement (Southern Hills, MountainView) • **Exhibit Y:** Porscha Ryan detailed Southern Hills testimony (June 28-29, 2025) • **Exhibit H:** Melissa Ryan & Porscha Ryan MountainView declarations • **Exhibit DD:** Comprehensive witness declaration framework • **Additional Witnesses:** Framework established for systematic victim identification

## Legal Claims Architecture

**Federal Civil Rights Foundation** • **42 U.S.C. § 1983:** Deprivation of rights under color of law (subject to proving state action; see *West v. Atkins*, 487 U.S. 42, 54 (1988)) • **42 U.S.C. § 1985(3):** Conspiracy against rights (requires class-based animus; see *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) • **42 U.S.C. § 12182:** ADA Title III discrimination (focuses on access; see *Silva v. Baptist Health*, 856 F.3d 824, 834 (11th Cir. 2017)) • **42 U.S.C. § 18116:** ACA § 1557 discrimination (see *Doe v. CVS Pharmacy*, 982 F.3d 1204 (9th Cir. 2020)) • **29 U.S.C. § 794:** Section 504 discrimination (see *Olmstead v. L.C.*, 527 U.S. 581 (1999))

**RICO Enterprise Theory** • **18 U.S.C. § 1962(c):** Operation of enterprise through racketeering (subject to proving enterprise conduct; see *Reves v. Ernst & Young*, 507 U.S. 170 (1993)) • **18 U.S.C. § 1962(d):** Conspiracy to commit racketeering (no overt act needed; see *Salinas v. United States*, 522 U.S. 52 (1997)) • **Predicate Acts:** Healthcare fraud, civil rights violations, obstruction

**Healthcare Regulatory Violations • 42 U.S.C. § 1395dd:** EMTALA violations (see *Baber v. Hospital Corp. of America*, 977 F.2d 872 (4th Cir. 1992)) • **42 CFR § 482.13:** Patient rights violations • **21 U.S.C. § 843:** Controlled substance misuse • **18 U.S.C. § 1347:** Healthcare fraud

**Class Certification Framework • Fed. R. Civ. P. 23(a)-(b):** Class Action Requirements

- **(a)(1) Numerosity:** 500,000+ affected patients across 185 hospitals
- **(a)(2) Commonality:** Enterprise-wide policies and systematic violations
- **(a)(3) Typicality:** Nevada template representative of network patterns
- **(a)(4) Adequate Representation:** Experienced counsel and comprehensive evidence
- **(b)(2) Injunctive Relief:** Corporate policy reforms and compliance monitoring
- **(b)(3) Damages Class:** Individual damages with common enterprise liability

---

# SECTION III: MULTI-JURISDICTION FILING STRATEGY

## Priority Target Jurisdictions

### Tier 1: High-Impact Venues

| Jurisdiction | HCA Facilities | Strategic Advantage | Lead Case Potential |
|---|---|---|---|
| Tennessee (Middle District) | 18 hospitals | Corporate headquarters venue | ☑ High - enterprise discovery |
| Florida (Middle District) | 50 hospitals | Largest facility concentration | ☑ High - pattern demonstration |
| Texas (Southern District) | 54 hospitals | Pro-plaintiff jury pool | ☑ High - damages potential |
| Virginia (Eastern District) | 14 hospitals | Federal contracting exposure | ☑ Medium - regulatory pressure |

*Counts per HCA 2025 Impact Report, Definitive Healthcare (Dec 2024), Becker's (Feb 2025), ScrapeHero (May 2025); estimates may vary.*

**Tier 2: Supporting Venues • Nevada (District of Nevada):** Template case established • **California (Central District):** High-value damages jurisdiction • **Georgia (Northern District):** Significant HCA presence • **Louisiana (Eastern District):** Favorable discovery rules

## Filing Coordination Strategy

**Wave 1: Foundation Cases (Months 1-3)** • **Tennessee:** Corporate headquarters discovery • **Florida:** Largest facility pattern demonstration • **Texas:** High-damages lead case • **Nevada:** Template case (already filed)

**Wave 2: Amplification Cases (Months 4-6)** • **Virginia:** Federal contracting implications • **California:** High-value West Coast market • **Georgia:** Southeast regional pattern • **Louisiana:** Additional discovery jurisdiction

**Wave 3: Consolidation Phase (Months 7-12)** • **MDL motion** for coordinated discovery (cf. *In re: National Prescription Opiate Litigation,* MDL No. 2804; *In re: Welding Fume Prods. Liability Litig.,* N.D. Ohio) • **Bellwether trial** selection • **Settlement master** appointment • **Class certification** briefing

---

# SECTION IV: VICTIM IDENTIFICATION PROTOCOLS

## Target Patient Populations

### High-Priority Categories

1. **Psychiatric Patients (2M+ annually across network based on industry averages)**
   - Emergency department psychiatric holds
   - Chemical restraint administration
   - Advance directive violations
   - Discriminatory discharge patterns
2. **Patients with Advance Directives (500,000+ annually based on industry averages)**
   - PAD violations
   - Agent exclusion incidents
   - End-of-life care disputes
   - Guardian/family conflicts
3. **Complaint Filers (100,000+ annually based on industry averages)**
   - Patient advocacy cases
   - Risk management escalations
   - Regulatory complaints
   - Media attention cases
4. **Emergency Department Frequent Users (1M+ annually based on industry averages)**
   - Homeless population discrimination
   - Substance abuse stigmatization
   - Chronic pain management disputes
   - Mental health crisis interventions

## Outreach Methodology

**Organization Partnerships** • **National Alliance on Mental Illness (NAMI):** Patient advocacy network • **Disability Rights Advocates:** Legal advocacy organizations • **Patient Safety**

**Organizations:** Healthcare quality watchdogs • **State Medical Boards:** Complaint databases • **Insurance Commissioners:** Billing dispute records

**Digital Outreach Strategy**

**SOCIAL MEDIA CAMPAIGN:** "Did HCA Healthcare violate your rights? If you experienced:

- Chemical restraints without consent
- Advance directive violations
- Discrimination in emergency care
- Retaliation for complaints

You may be entitled to compensation. Contact: [secure portal]"

**Legal Community Engagement** • **Medical Malpractice Bar Associations:** Attorney referral networks • **Trial Lawyer Organizations:** Class action specialists • **Healthcare Law Conferences:** Expert witness recruitment • **Law School Clinics:** Student advocacy programs

---

# SECTION V: EXPERT WITNESS FRAMEWORK

## Required Expert Categories

**Healthcare Administration Experts** • **Qualifications:** Former hospital administrators, healthcare consultants • **Testimony Focus:** Corporate policy implementation, training standards • **Rate Range:** $500-$1,000 per hour • **Availability:** 12+ experts pre-screened nationwide

**Emergency Medicine Specialists** • **Qualifications:** Board-certified emergency physicians • **Testimony Focus:** EMTALA compliance, standard of care violations • **Rate Range:** $750-$1,500 per hour • **Availability:** 8+ experts in target jurisdictions

**Psychiatry/Chemical Restraint Experts** • **Qualifications:** Board-certified psychiatrists, restraint specialists • **Testimony Focus:** Chemical restraint protocols, consent requirements • **Rate Range:** $600-$1,200 per hour • **Availability:** 15+ experts with hospital experience

**Healthcare Law/Compliance Experts** • **Qualifications:** Former CMS officials, healthcare attorneys • **Testimony Focus:** Federal regulatory compliance, patient rights • **Rate Range:** $800-$1,800 per hour • **Availability:** 6+ experts with government experience

**Economic Damages Specialists** • **Qualifications:** Healthcare economists, damages calculation experts • **Testimony Focus:** Individual and class-wide damages models • **Rate Range:** $400-$1,000 per hour • **Availability:** 10+ experts with class action experience

## Expert Witness Coordination

**Testimony Standardization** • **Core Opinion Framework:** Developed across all cases • **Document Review Protocol:** Consistent analysis methodology • **Deposition Preparation:** Standardized question sets • **Trial Testimony Coordination:** Consistent expert presentations

**Cost Management Strategy** • **Shared Expert Costs:** Allocation across multiple cases • **Efficiency Protocols:** Streamlined review processes • **Technology Utilization:** Virtual testimony capabilities • **Fee Negotiation:** Volume discounts for multiple cases

---

# SECTION VI: DISCOVERY COORDINATION

## Enterprise-Wide Discovery Strategy

### Corporate Level Discovery

**PRIORITY DOCUMENT CATEGORIES:**

1. **Corporate Policies & Procedures**
   - Patient rights protocols
   - Chemical restraint guidelines
   - Advance directive policies
   - Complaint handling procedures
2. **Training Materials & Records**
   - Employee training curricula
   - Competency assessments
   - Policy update communications
   - Compliance monitoring reports
3. **Risk Management Communications**
   - Incident reports
   - Legal threat assessments
   - Settlement decision matrices
   - Regulatory response protocols
4. **Financial Records**
   - Billing system documentation
   - Revenue cycle management
   - Insurance reimbursement data
   - Fraudulent billing analyses

**Facility-Level Discovery** • **Nursing Documentation:** Restraint logs, medication administration • **Physician Orders:** Treatment authorizations, discharge decisions • **Security Records:** Patient containment procedures • **IT Systems:** Electronic health record modifications

## Electronic Discovery Management

• **Centralized Document Platform:** Secure cloud-based repository • **Metadata Preservation:** Technical forensic analysis • **Search Protocol Coordination:** Consistent search terms across cases • **Privilege Log Management:** Attorney-client protection strategies

## Information Sharing Framework

**Attorney Coordination Agreements**

**COOPERATION PROTOCOL:**

- Shared discovery costs
- Document exchange procedures
- Expert witness coordination
- Settlement negotiation alignment
- Trial strategy coordination

**Confidentiality Management** • **Protective Orders:** Standard across all jurisdictions • **Confidential Information Handling:** Secure transmission protocols • **Public Filing Strategies:** Coordinated media management • **Settlement Communication:** Unified negotiation approach

---

# SECTION VII: SETTLEMENT LEVERAGE MULTIPLICATION

## Individual vs. Class Action Economics

**Current Individual Case** • **Settlement Demand:** $3,000,000 • **Defense Costs:** $5-10 million • **Trial Risk:** $15-25 million judgment • **Reputation Impact:** Limited to Nevada litigation

**Class Action Escalation** • **Total Exposure:** $6B-$40B+ across network (based on similar healthcare enterprise litigation) • **Defense Costs:** $50-200 million • **Trial Risk:** $6B+ aggregate judgment potential • **Reputation Impact:** National media coverage, Congressional oversight

## Corporate Decision Matrix

| Scenario | Cost | Risk Level | Reputation Impact | Timeline |
|---|---|---|---|---|
| Settle Individual Case | $3M | Low | Minimal | 30 days |
| Fight Individual Case | $10M+ | Medium | Moderate | 2-3 years |
| Face Class Action | $6B-$40B+ | Extreme | Severe | 5-7 years |

## Class Action Attorney Economics

**Economic Incentives for Major Firms • Contingency Fee Structure:** 30-40% of recovery • **Potential Fee Recovery:** $1.8B-$16B+ (30-40% of class settlement range) • **Cost Investment:** $5-15M per major firm • **ROI Potential:** 3000-10000%+ return on investment

**Attorney Recruitment Strategy**

**BIGLAW TARGETING:**

**Tier 1 Firms:**

- Quinn Emanuel Urquhart & Sullivan
- Williams & Connolly
- Keker, Van Nest & Peters
- Boies Schiller Flexner

**Class Action Specialists:**

- Lieff Cabraser Heimann & Bernstein
- Hagens Berman Sobol Shapiro
- Motley Rice LLC
- Simmons Hanly Conroy

---

# SECTION VIII: IMPLEMENTATION TIMELINE

## Phase 1: Foundation (Months 1-6)

**Nevada Template Completion** • Individual case resolution or trial • Discovery completion and evidence preservation • Expert witness report finalization • Media strategy implementation

**Attorney Recruitment** • Major firm presentations • Contingency agreement negotiations • Case development funding • Team coordination establishment

## Phase 2: Launch (Months 7-12)

**Multi-Jurisdiction Filing** • Coordinated complaint filing across 4-6 jurisdictions • Class certification motion preparation • MDL petition submission • Media campaign launch

**Discovery Coordination** • Enterprise-wide document requests • Deposition scheduling coordination • Expert witness engagement • Protective order negotiations

## Phase 3: Amplification (Months 13-24)

**Class Certification** • Briefing and hearing coordination • Appeal preparation if necessary • Settlement master appointment • Bellwether trial selection

**Settlement Negotiations** • Corporate-level discussions • Damages model presentations • Resolution framework development • Individual claim processing

## Phase 4: Resolution (Months 25-36)

**Global Settlement** • Class settlement agreement • Court approval process • Claims administration setup • Distribution protocol implementation

**Corporate Reform** • Policy modification requirements • Compliance monitoring establishment • Training program implementation • Regulatory oversight coordination

---

# SECTION IX: DAMAGES CALCULATION METHODOLOGY

## Individual Damages Framework

**Constitutional Violations** • **Due Process Violations:** $25,000-$100,000 per incident • **Equal Protection Violations:** $15,000-$75,000 per incident • **Cruel and Unusual Punishment:** $50,000-$250,000 per incident

**Healthcare Violations** • **EMTALA Violations:** $50,000-$500,000 per incident • **Standard of Care Violations:** $25,000-$1,000,000 per incident • **Advance Directive Violations:** $10,000-$100,000 per incident

**Economic Damages** • **Medical Expenses:** Actual costs plus corrective treatment • **Lost Income:** Disability periods and earning capacity impact • **Future Medical Costs:** Ongoing treatment requirements

**Punitive Damages (Illustrative multipliers based on jury verdict ranges)** • **Individual Cases:** 3-10x compensatory damages • **Class Action:** Reduced multiplier but broader application

## Class-Wide Damages Modeling

**Conservative Estimate (based on similar healthcare enterprise litigation)** • **Affected Patients:** 2 million annually • **Average Damages:** $1,000 per patient • **Total Annual Exposure:** $2 billion • **Multi-Year Liability:** $6-8 billion

**Aggressive Estimate (based on similar healthcare enterprise litigation)** • **Affected Patients:** 5 million annually • **Average Damages:** $2,000 per patient • **Total Annual Exposure:** $10 billion • **Multi-Year Liability:** $30-40 billion

**RICO Enhancement • Treble Damages Multiplier:** 3x base damages • **Conservative RICO Total:** $18-24 billion • **Aggressive RICO Total:** $90-120 billion

*RICO estimates illustrative, based on opioid MDL ($26B) and tobacco RICO ($206B phased); actuals depend on class size/proof.*

---

# SECTION X: REGULATORY AND CRIMINAL IMPLICATIONS

## Federal Agency Coordination

**Department of Justice • Criminal Healthcare Fraud:** 18 U.S.C. § 1347 • **Civil Rights Violations:** 18 U.S.C. § 242 • **RICO Conspiracy:** 18 U.S.C. § 1962

**Centers for Medicare & Medicaid Services • Provider Agreement Violations:** 42 CFR § 482.13 • **Billing Fraud:** False Claims Act liability • **Program Exclusion:** Facility decertification risk

**Health and Human Services - Office of Inspector General • Civil Monetary Penalties:** Up to $100,000 per violation • **Corporate Integrity Agreements:** 5-year compliance monitoring • **Provider Exclusion:** Individual practitioner sanctions

**Drug Enforcement Administration • Controlled Substance Violations:** 21 U.S.C. § 843 • **Registration Sanctions:** Facility DEA license revocation • **Criminal Prosecution:** Individual provider liability

## Congressional Oversight Framework

**House Energy and Commerce Committee • Healthcare Oversight Jurisdiction:** Patient safety and quality • **Hearing Authority:** CEO sworn testimony requirement • **Legislative Response:** New patient protection regulations

**Senate Health, Education, Labor and Pensions Committee • Healthcare Policy Jurisdiction:** Federal program oversight • **Investigation Authority:** Document subpoena power • **Regulatory Recommendations:** CMS policy modifications

**Hearing Preparation Materials • Executive Testimony Frameworks:** CEO accountability questions • **Document Production Requirements:** Corporate policy disclosure • **Reform Recommendations:** Legislative solution proposals

---

# SECTION XI: MEDIA AND PUBLIC RELATIONS STRATEGY

## Media Engagement Framework

**Healthcare Trade Publications • Modern Healthcare:** National healthcare industry coverage • **STAT:** Breaking healthcare news and investigation • **Becker's Hospital Review:** Hospital administration focus • **Healthcare Dive:** Policy and regulatory analysis

**Mainstream Media Targets • Wall Street Journal:** Corporate accountability angle • **Washington Post:** Federal program fraud investigation • **CNN Health:** Patient safety and advocacy focus • **60 Minutes:** Investigative documentary potential

**Digital Media Strategy • Social Media Campaigns:** Patient advocacy messaging • **Documentary Production:** Class action victim stories • **Podcast Appearances:** Healthcare law and policy discussions • **Blog Content:** Legal analysis and case developments

## Public Relations Coordination

## Message Development

**KEY MESSAGING THEMES:**

- Patient safety and protection
- Corporate accountability
- Healthcare system reform
- Federal program integrity
- Whistleblower protection

**Crisis Communication Management • Rapid Response Protocol:** Same-day media statements • **Coordinated Messaging:** Consistent across all jurisdictions • **Expert Commentary:** Legal and medical expert availability • **Victim Protection:** Privacy and safety considerations

---

# SECTION XII: SETTLEMENT PREVENTION VS. LITIGATION IMPLEMENTATION

## HCA's Settlement Window Analysis

**Current Opportunity (Individual Case Resolution) • Cost:** $3 million settlement • **Benefit:** Complete blueprint prevention • **Timeline:** 30 days to resolution • **Risk Elimination:** 100% class action prevention

**Litigation Consequences (Class Action Implementation)** • **Cost:** $6B-$40B+ class action exposure (based on similar healthcare enterprise litigation) • **Timeline:** 3-7 years of federal litigation • **Reputation Impact:** Permanent public record damage • **Regulatory Consequences:** Federal agency investigations

## Blueprint Activation Triggers

### Immediate Implementation (Upon Individual Case Litigation)

1. **Attorney Recruitment:** Major firm presentations within 48 hours
2. **Media Campaign:** Healthcare industry alert within 1 week
3. **Victim Outreach:** National advocacy organization coordination
4. **Filing Preparation:** Multi-jurisdiction complaint drafting

### Accelerated Timeline (Upon PACER Filing)

1. **Discovery Sharing:** Nevada evidence template distribution
2. **Expert Coordination:** Witness availability across jurisdictions
3. **Regulatory Referrals:** Federal agency complaint packages
4. **Congressional Notification:** Committee staff briefings

---

# CONCLUSION: SETTLEMENT VS. SIGNIFICANT ENTERPRISE-WIDE LIABILITY

This blueprint demonstrates that HCA faces a binary choice with quantifiable consequences:

## Settlement Path: $3 Million Investment

• Immediate resolution of individual case • Complete prevention of class action template distribution • Reputation protection through confidential resolution • Risk elimination across 191-hospital enterprise

## Litigation Path: $6B-$40B+ Exposure (based on similar healthcare enterprise litigation)

• Inevitable class action implementation across 20 states • Federal agency investigations with criminal prosecution risk • Congressional oversight with CEO sworn testimony • Permanent reputation damage through public litigation record

**Economic Analysis:** Spending $3 million to prevent $6B-$40B+ exposure represents a 99.95-99.99% cost avoidance through early resolution.

**Strategic Recommendation:** Any reasonable board of directors, bound by **fiduciary duty to shareholders**, would select settlement over nationwide litigation when presented with this cost-benefit analysis and blueprint implementation certainty involving 191 hospitals and conservative estimates based on similar healthcare enterprise litigation.

---

# DECLARATION

I, Jade Riley Burch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that this blueprint represents a comprehensive framework for nationwide class action litigation against HCA Healthcare, Inc., based upon systematic violations documented in Nevada facilities and replicable across the enterprise network.

This blueprint will be implemented immediately upon litigation of the individual case, utilizing HCA's own evidence and discovery as the foundation for enterprise-wide liability and damages.

Executed this 18th day of August, 2025, in Las Vegas, Nevada.

/s/ Jade Riley Burch

**Jade Riley Burch**
Pro Se Plaintiff
222 Karen Ave, Unit 1207
Las Vegas, NV 89109
Email: jaderburch@gmail.com
Phone: (614) 725-9452

---

========================================

# END SEPARATOR PAGE

========================================

## *** END OF EXHIBIT ***