=========================================

# EXHIBIT J

# INDEX / SEPARATOR PAGE

=========================================

## *** START OF EXHIBIT J ***

## TITLE: FEDERAL PATIENT RIGHTS FRAMEWORK – EMTALA, ADA, ACA

## (Next Page: Formal White Cover Sheet)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;**
**MountainView Hospital; and Southern Hills Hospital & Medical Center,**
Defendants.
**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT J
## Federal Patient Rights Framework – EMTALA, ADA, ACA

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

# EXHIBIT J

## Federal Regulatory Standards

This exhibit contains the relevant federal laws and regulatory standards governing hospital obligations, patient rights, and civil rights protections cited throughout this Complaint. These standards establish mandatory compliance requirements for all Medicare-participating hospitals and form the legal foundation for the alleged violations.

---

## I. PATIENT RIGHTS AND RESTRAINT STANDARDS

### 42 CFR § 482.13(e) - Patient Rights Regarding Restraint and Seclusion

**Regulatory Text:**

"All patients have the right to be free from restraint and seclusion, of any form, imposed as a means of coercion, discipline, convenience, or retaliation by staff."

**Key Requirements:** • Restraints may only be used when less restrictive alternatives are ineffective • Must be ordered by a licensed practitioner responsible for patient care • Time-limited orders with mandatory reassessment every 4 hours • Continuous monitoring during restraint use • Documentation in medical record with justification • Patient/family notification of rights

**Violations Alleged:** • Physical restraints used as retaliation for legal threats (Southern Hills, June 28-29, 2025) • Missing physician orders for restraint application • No documentation of less restrictive alternatives attempted • Failure to inform patient of restraint rights

**Penalties:** • Civil monetary penalties up to $50,000 per day for immediate jeopardy deficiencies (42 CFR §488.408) • Penalties may vary based on violation scope and duration, with immediate jeopardy triggering higher daily fines • Immediate jeopardy findings may result in facility decertification • Loss of Medicare/Medicaid participation

---

## II. EMERGENCY MEDICAL TREATMENT REQUIREMENTS

### 42 U.S.C. § 1395dd - Emergency Medical Treatment and Labor Act (EMTALA)

**Regulation:** 42 C.F.R. § 489.24

**Statutory Text:**

"If any individual comes to the emergency department and a request is made for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination... to determine whether or not an emergency medical condition exists."

EMTALA requires that hospitals provide an appropriate medical screening examination to determine if an emergency medical condition exists, and if so, to stabilize the patient or appropriately transfer them. It prohibits the discharge of patients with unresolved emergency conditions. Failure to conduct neurological evaluations, discharge in postictal state, and refusal to honor psychiatric directives implicate these provisions.

**Key Requirements:** • Appropriate medical screening examination for all patients • Non-discriminatory screening regardless of patient characteristics • Stabilization of emergency medical conditions before discharge • No delay in treatment based on insurance status or ability to pay • Proper transfer procedures when stabilization cannot be achieved

**Violations Alleged:** • Failed appropriate medical screening for pulmonary embolism (Sunrise Hospital, April 17-22, 2025) • Psychiatric history bias affecting emergency medical evaluation • Discharge with unstabilized emergency medical condition • Discriminatory treatment based on mental health status • Failure to conduct neurological evaluations • Discharge in postictal state • Refusal to honor psychiatric directives

**Penalties:** • Civil fines up to $132,622 per violation for hospitals with 100 or more beds (2025 inflation-adjusted rate) • Physician penalties up to $66,311 for hospitals with fewer than 100 beds • Possible Medicare exclusion for systematic violations • State licensure board referrals • *Note: Penalties are subject to annual inflation adjustments published in the Federal Register*

---

## III. CIVIL RIGHTS AND NONDISCRIMINATION

### 42 U.S.C. § 18116 - Affordable Care Act Section 1557

**Statutory Text:**

"An individual shall not, on the ground prohibited under... section 504 of the Rehabilitation Act of 1973... be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

This section prohibits discrimination on the basis of race, color, national origin, sex (including gender identity), age, or disability under any health program or activity receiving federal financial assistance. HCA's failure to accommodate the Plaintiff's disability and the dismissal of her gender identity as clinically irrelevant constitute violations of this provision.

**Key Requirements:** • Prohibition of disability discrimination in federally funded healthcare • Equal access to emergency medical services • Provision of auxiliary aids and effective

communication • Compliance with psychiatric advance directives • Reasonable accommodations for patients with disabilities • Protection against sex and gender identity discrimination

**Violations Alleged:** • Disability discrimination based on psychiatric conditions • Denial of equal emergency medical services • Failure to honor psychiatric advance directive provisions • Exclusion of designated healthcare agent from decision-making • Dismissal of gender identity as clinically irrelevant • Failure to accommodate disability needs

**Penalties:** • Federal funding suspension or termination • Office for Civil Rights investigations and corrective action plans • Civil lawsuits under Section 504 and ADA • Consent decrees requiring federal court supervision

## IV. ADDITIONAL FEDERAL STANDARDS

### Americans with Disabilities Act (42 U.S.C. § 12182)

**Requirement:** Equal access to public accommodations, including hospitals

This statute prohibits disability discrimination by places of public accommodation, including hospitals. It requires effective communication and equal access to healthcare services. HCA's refusal to recognize and follow the Plaintiff's psychiatric advance directive and repeated discharge without accommodation of seizure disorder and neurological impairment violate Title III standards.

**Violation:** Psychiatric disability discrimination affecting medical care quality; refusal to recognize psychiatric advance directive; discharge without accommodation of seizure disorder and neurological impairment

### Rehabilitation Act Section 504 (29 U.S.C. § 794)

**Requirement:** Nondiscrimination in federally funded programs

Section 504 bars discrimination against individuals with disabilities under any program receiving federal funding. HCA's failure to provide necessary neurological stabilization or accommodate psychiatric directives may also constitute violations of this statute, as HCA facilities receive Medicare and Medicaid funds.

**Violation:** "Solely by reason of disability" exclusion from appropriate medical care; failure to provide necessary neurological stabilization

### Civil Rights Act Section 1983 (42 U.S.C. § 1983)

**Requirement:** Protection from constitutional deprivation under color of law **Violation:** Due process violations through forced treatment despite advance directives

## V. ADDITIONAL REGULATORY STANDARDS

**CMS Conditions of Participation (CoPs)**

**Regulation:** 42 C.F.R. § 482.1 et seq.

These regulations govern hospital operations, including safe discharge, medication management, and coordination of care. Violations include discharge with abnormal vital signs, subtherapeutic medication levels, and sedation without monitoring. CMS § 482.25(b) governs drug administration; § 482.43 mandates discharge planning protocols.

**Specific Violations:** • Discharge with abnormal vital signs • Subtherapeutic medication levels • Sedation without proper monitoring • Inadequate discharge planning protocols

**Joint Commission Accreditation Standards**

**Standards:** LD.04.01.01, PC.04.01.01, NPSG.15.01.01

These standards require hospitals to ensure leadership accountability and appropriate discharge planning. LD.04.01.01 mandates system-level oversight to protect patient safety. PC.04.01.01 governs the hospital's process for appropriate discharge or transfer, including planning for continuing care needs of high-risk or cognitively impaired patients. NPSG.15.01.01 (Element of Performance 7) requires written policies for counseling and follow-up care at discharge for patients identified as at risk for suicide. Violations are evident in discharges of the Plaintiff while sedated and neurologically unstable.

**Specific Violations:** • Discharge while sedated and neurologically unstable • Lack of system-level oversight for patient safety • Inadequate discharge planning for high-risk or cognitively impaired patients • Failure to provide appropriate follow-up care for at-risk patients

**Nevada State Law - Patient Rights**

**Statute:** NRS 449.730 (patient rights to informed consent and communication) and NRS 449.101 (psychiatric advance directives)

These statutes codify patient rights in Nevada, including the right to informed consent, safe discharge, and appropriate communication. HCA's refusal to involve Plaintiff's designated agent (despite a valid PAD) and discharge while drugged may violate these laws as well.

**Specific Violations:** • Refusal to involve designated agent despite valid PAD • Discharge while drugged • Violation of informed consent requirements

## VI. ENFORCEMENT MECHANISMS AND AGENCIES

### Centers for Medicare & Medicaid Services (CMS)

**Authority:** Conditions of Participation enforcement **Actions:** Immediate jeopardy findings, facility decertification, payment recoupment **Timeline:** Emergency surveys within 10 days of complaint

### Office for Civil Rights (OCR) - Department of Health & Human Services

**Authority:** Civil rights enforcement in healthcare **Actions:** Investigations, corrective action plans, funding termination **Timeline:** 180-day investigation period with possible extensions

### Department of Justice - Civil Rights Division

**Authority:** Pattern or practice investigations under 34 U.S.C. § 12601 (formerly 42 U.S.C. § 14141, recodified in 2017) **Actions:** Consent decrees, structural reform litigation, criminal prosecution **Timeline:** Multi-year investigations with ongoing court supervision

---

## VII. PENALTY FRAMEWORK SUMMARY

| Violation Type | Updated Penalty Range | Enforcing Agency | Legal Authority | Notes |
|---|---|---|---|---|
| Patient Rights (Restraints) | Up to $50,000 per day for immediate jeopardy deficiencies | CMS | 42 CFR §488.408 | Per day accumulation for CoP violations, potentially higher for immediate jeopardy |
| EMTALA Violations | Up to $132,622 per violation (100+ beds) or $66,311 (<100 beds) | CMS | 42 U.S.C. §1395dd | 2025 inflation-adjusted rates |
| Civil Rights Discrimination | Funding loss + investigations | OCR/DOJ | 42 U.S.C. §18116 | |
| Constitutional Violations | Unlimited civil damages | Federal Courts | 42 U.S.C. §1983 | |

### Total Potential Exposure

**Regulatory Penalties:** $600,000 - $2,500,000*
**Civil Rights Damages:** $5,000,000 - $15,000,000
**Criminal Exposure:** Healthcare fraud, civil rights violations
**Operational Risk:** Loss of Medicare/Medicaid participation ($31B annually for HCA)

*All civil monetary penalty amounts are subject to annual inflation adjustments by the relevant federal agencies (e.g., CMS, HHS) and should be verified against the latest Federal Register notices.*

## VIII. LEGAL PRECEDENT SUPPORT

### Key Cases Establishing Standards

• **Baber v. Hospital Corp. of America**, 977 F.2d 872 (4th Cir. 1992) - EMTALA stabilization duty • **West v. Atkins**, 487 U.S. 42 (1988) - State action through Medicare participation • **Griffin v. Breckenridge**, 403 U.S. 88 (1971) - Class-based civil rights conspiracy

### Recent Enforcement Examples

• **Wellpath Correctional Healthcare** (2022) - $2.45M settlement for inadequate care leading to detainee death in Macomb County, Michigan • **Wellpath** (2025) - $15.5M creditor settlement in bankruptcy proceedings for systemic inadequate correctional healthcare • **Tuomey Healthcare** (2015) - $237M penalty (reduced to $72.4M) • **UHS Behavioral Health** (2020) - $122M False Claims Act settlement

## IX. APPLICATION TO HCA HEALTHCARE

### Enterprise Scope

• **191 hospitals** across 20 states and the United Kingdom • **$70.6 billion** annual revenue • **$31 billion** annual federal funding through Medicare/Medicaid • **271,000 employees** subject to federal compliance requirements

### Systematic Violations Pattern

• **Multiple facilities** - Sunrise Hospital, Southern Hills Hospital • **Timeline span** - March through July 2025 • **Coordinated conduct** - Enterprise-wide policies affecting patient rights • **Federal funding nexus** - Medicare/Medicaid participation creates liability

### Risk Assessment

• **Immediate jeopardy** findings threaten facility operations • **Program exclusion** would eliminate federal funding • **Criminal exposure** through healthcare fraud and civil rights violations • **Civil liability** under multiple federal statutes with treble damages

**CONCLUSION**

These federal regulatory standards establish comprehensive legal obligations for hospital operations, patient rights protection, and civil rights compliance. The systematic violations documented across HCA facilities constitute severe breaches of federal law with significant financial, operational, and criminal consequences.

**Multi-Agency Enforcement Authority:** CMS, OCR, DOJ, and FBI have concurrent jurisdiction over these violations, enabling coordinated federal response.

**Enterprise Liability:** HCA's status as a Medicare/Medicaid participant creates federal jurisdiction and liability across all 191 facilities.

**Precedent for Enforcement:** Recent cases demonstrate federal agencies' willingness to impose multi-million dollar penalties and operational restrictions for systematic healthcare violations.

This exhibit is submitted in support of Plaintiff's claims under EMTALA, the Americans with Disabilities Act, the Affordable Care Act § 1557, the Rehabilitation Act, and applicable federal and state standards. It demonstrates that the Defendants' conduct was not only medically unethical but also legally impermissible under controlling statutory and regulatory authority.

As supported by Exhibits B (medical records), D (witness statements), L (legal documentation), X (POA declarations), LL (timeline evidence), TT (spoliation documentation), F (federal guidelines); immediate federal enforcement action is warranted to protect patients and maintain regulatory compliance across HCA's healthcare network.

---

**DECLARATION**

I, Jade Riley Burch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing regulatory standards and their application to HCA Healthcare facilities accurately reflect the federal legal requirements and documented violations.

Executed this 11th day of August, 2025, in Las Vegas, Nevada.

**Jade Riley Burch**
Plaintiff, Pro Se
222 Karen Ave Unit 1207
Las Vegas, NV 89109
jaderburch@gmail.com
(614) 725-9452

==========================================

# END SEPARATOR PAGE

==========================================

## *** END OF EXHIBIT ***