========================================

# EXHIBIT P

# INDEX / SEPARATOR PAGE

========================================

## *** START OF EXHIBIT P ***

## TITLE: CORPORATE RETALIATION STATEMENT  (HCA HEALTHCARE)

## (Next Page: Formal White Cover Sheet)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;**
**MountainView Hospital; and Southern Hills Hospital & Medical Center,**
Defendants.
**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT P
# Corporate Retaliation Statement (HCA Healthcare)

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

## EXHIBIT P - CORPORATE RETALIATION STATEMENT

**Enterprise Coordination of Patient Retaliation Protocols**

**Prepared by:** Jade Riley Burch
**Date:** August 11, 2025
**Re:** HCA Healthcare's Systematic Retaliation Enterprise
**Subject:** Corporate Conspiracy Under Direction of Risk Management Officer

---

## I. STATEMENT OF FACTS

This exhibit documents evidence suggesting coordinated corporate retaliation by HCA
Healthcare against a patient who exercised constitutional rights to petition federal courts.
The evidence is consistent with systematic deployment of medically harmful
interventions coordinated by Cinthya Cook, Director of Risk Management/Patient Safety
Officer, utilizing advanced medical credentials to implement dangerous protocols against
Plaintiff.

## II. CORPORATE COORDINATION STRUCTURE

### A. Cinthya Cook's Enterprise Authority and Credentials

Cinthya Cook holds the position of Director of Risk Management and Patient Safety
Officer at HCA Healthcare, with the following professional credentials:

- Master of Science in Nursing (MSN)
- Master of Healthcare Administration (MHA)
- Bachelor of Science in Business Administration (BSBA)
- Registered Nurse (RN)
- Certified Professional in Patient Safety (CPPS)

Cook's dual authority over medical protocols and corporate liability management created
the infrastructure necessary to coordinate systematic patient retaliation while maintaining
the appearance of legitimate medical care.

## III. TIMELINE OF CORPORATE RETALIATION

### A. Corporate Notification Phase

**June 22, 2025, 4:34 PM:** Plaintiff transmitted formal litigation demand to Cook's
corporate email: Cinthya.Cook@hcahealthcare.com

**Subject:** "Formal Pre-Litigation Demand -- Missed PE Diagnosis"
This established direct corporate knowledge of pending federal litigation.

**June 26, 2025, 8:40 PM:** Plaintiff escalated with media exposure threat to the same corporate recipient.
**Subject:** "Sunrise Hospital's Missed Diagnosis to Become Public -- Final Opportunity"
This created urgent corporate liability concerns requiring immediate response.

## B. Systematic Retaliation Deployment

**June 28, 2025:** Within 48 hours of final communication, Plaintiff was admitted to Southern Hills Hospital where systematic intervention protocols were deployed, including:

- Unauthorized physical restraints without physician orders *(See Exhibit D - Medical Records)*
- Chemical sedation using high-risk drug combinations *(See Exhibit D - Medical Records)*
- Systematic obstruction of Medical Power of Attorney rights *(See Exhibit [X] - POA Declaration)*
- Complete absence of federally required documentation *(See Exhibit X - Documentation Fraud Analysis)*

While correlation does not prove causation, the unusual timing and systematic nature of violations occurring precisely 48 hours after litigation threats create a strong inference of coordinated retaliation. The rapid deployment timeline suggests pre-existing enterprise infrastructure capable of coordinating systematic retaliation across multiple facilities within 48 hours of receiving litigation threats.

## IV. MEDICAL EXPERTISE WEAPONIZATION

## A. Systematic Intervention Protocol

Upon information and belief, Cook's advanced medical knowledge was applied to design interventions targeting Plaintiff's specific medical vulnerabilities:

**Unauthorized Physical Restraints:** Application of 24/7 waist restraints without medical justification, physician orders, or patient consent. Staff acknowledged restraint orders to witnesses while systematically failing to document such orders in medical records. *(See Exhibit D - Medical Records; Exhibit [X] - POA Declaration)*

**Dangerous Chemical Interventions:** Simultaneous administration of Lorazepam and Oxycodone despite medical records documenting "Has not tried any pain meds for

headache." *(See Exhibit D - Medical Records)* This combination creates known risks of respiratory depression, particularly dangerous for seizure disorder patients—a deliberate targeting of Plaintiff's documented medical vulnerabilities.

**Medical Abandonment During Crisis:** When Plaintiff's oxygen saturation dropped to 60s (severe hypoxia indicating life-threatening oxygen levels), staff dismissed life-threatening symptoms as "normal" rather than providing appropriate medical intervention. *(See Exhibit [X] - Patient Declaration; Exhibit [X] - POA Declaration)*

**Cognitive Suppression:** Excessive Ativan administration resulted in 32 documented seizures over 48 hours and profound memory disruption, preventing formation of coherent testimony regarding treatment received. *(See Exhibit D - Medical Records)*

**Deviation from Standard Protocols:** The systematic nature of these interventions, occurring simultaneously and in direct contradiction to established medical protocols, suggests coordinated implementation rather than individual medical errors.

## B. Psychiatric Advance Directive Violations

Despite a prominently displayed bright red binder clearly labeled "PSYCHIATRIC ADVANCE DIRECTIVE" at the bedside, hospital staff proceeded with the exact prohibited interventions. The binder contained explicit warnings stating:

- "NO forced sedation ⬤ NO isolation"
- "UNAUTHORIZED PSYCHIATRIC ADMISSION OR MEDICATION MAY CONSTITUTE MEDICAL NEGLIGENCE OR LEGAL VIOLATION"
- "Contact Psychiatric Agent IMMEDIATELY: Porscha Ryan - 702-787-1871"

This prominent display made both Porscha's legal authority and the patient's specific treatment limitations unmistakable to all hospital staff, yet they proceeded with the exact prohibited interventions in direct violation of Nevada state law NRS 449A.600-449A.645.[1]

---

[1] NRS §449A.636 mandates compliance with psychiatric advance directives; Source: https://www.leg.state.nv.us/NRS/NRS-449A.html

## V. WITNESS DOCUMENTATION

## A. Medical Power of Attorney Legal Standing

Porscha Ryan served as court-appointed Medical Power of Attorney, providing unique legal standing that documented the systematic violations in real-time: *(See Exhibit [X] - POA Declaration; Exhibit AA - Cook's Regulatory Expertise Documentation)*

**Critical Witness Documentation:** *(See Exhibit [X] - POA Declaration)*

- No physician conducted meaningful bedside evaluations despite detailed consultation notes
- Staff openly discussed restraint orders that do not exist in medical records
- Life-threatening vital signs were systematically dismissed as "normal"
- Systematic obstruction of Medical POA authority despite clear legal notification

Ryan's legal standing converted systematic violations into documented federal crimes with an unimpeachable witness whose authority could not be challenged.

## VI. SYSTEMATIC RECORD FALSIFICATION

### A. Federal Documentation Requirements Violated

Under 42 C.F.R. § 482.13(e), hospitals must maintain detailed documentation for all restraint use. The following federally required records are completely absent:

- Physician orders for restraint application
- Medical justification for restraint necessity
- 15-minute monitoring logs required by federal regulation
- 2-hour restraint assessments mandated by CMS
- Patient consent or emergency authorization

**Spoliation of Evidence:** Staff confirmations of restraint orders combined with complete absence of documentation suggests systematic evidence suppression coordinated by personnel with detailed knowledge of regulatory requirements. The deliberate failure to create required documentation, rather than loss of existing records, constitutes spoliation through non-creation. *(See Exhibit X - Documentation Fraud Analysis)*

**Alternative Explanations Considered:** This pattern cannot be attributed to individual oversight or administrative error because:

1. Multiple staff members confirmed restraint orders to witnesses
2. The absence spans all federally required documentation categories
3. The timing coincides precisely with litigation threats
4. Standard documentation protocols were followed for non-controversial interventions

## VII. FEDERAL VIOLATIONS DOCUMENTED

## A. Civil Rights Conspiracy (42 U.S.C. § 1985)

**Predicate Act 1:** Enterprise conspiracy to punish constitutional rights exercise. Email evidence establishes corporate knowledge. *(See Exhibit [A] - Email Communications)* The 48-hour timeline supports inference of coordinated response capability.

## B. RICO Violations (18 U.S.C. § 1962)

**Pattern of Racketeering Activity:** HCA operates as criminal enterprise with Cook coordinating the conspiracy. Pattern affects interstate commerce through multi-state hospital system (186 facilities across 20 states).

**Predicate Acts Include:**[2]

1. Civil rights violations (42 U.S.C. § 1985) - June 28-29, 2025
2. Healthcare fraud (18 U.S.C. § 1347) - Ongoing billing for phantom services *(See Exhibit X - Documentation Fraud Analysis)*
3. Obstruction of justice (18 U.S.C. § 1512) - Systematic record suppression

**Enterprise Elements:**

- **Association-in-fact:** HCA corporate structure with Cook's Risk Management authority
- **Interstate Commerce:** Multi-state hospital operations affecting interstate commerce
- **Pattern:** Multiple predicate acts within enterprise operations

---

[2] 18 U.S.C. §1961 defines racketeering predicates; Source: https://www.law.cornell.edu/uscode/text/18/1961

## C. Healthcare Fraud (18 U.S.C. § 1347)

**Predicate Act 2:** Systematic billing for physician services never rendered. False documentation of medical encounters contradicted by witness testimony. *(See Exhibit X - Documentation Fraud Analysis; Exhibit D - Medical Records)*

## D. Obstruction of Justice (18 U.S.C. § 1512)

**Predicate Act 3:** Coordinated record falsification to conceal federal violations. Enterprise-wide document suppression implemented through Cook's Risk Management authority, including systematic failure to create federally required restraint documentation.

## E. Professional License Violations

**Nevada Nursing Practice Act Violations:** Cook's RN license subject to disciplinary action for:

- Breach of fiduciary duty to patient
- Violation of nursing ethics and patient advocacy obligations
- Use of medical credentials to harm rather than heal patients

## VIII. QUANTIFIED DAMAGES AND ONGOING HARM

### A. Specific Economic Impact

| Damage Type | Date/Incident | Estimated Amount | Evidence Source |
|---|---|---|---|
| Medical Expenses | June 28-29, 2025 | [To be determined] | Billing Records (Exhibit D) |
| Ongoing Treatment | June 2025-Present | [To be determined] | Medical Records & Bills |
| Lost Capacity | June 2025-Present | [To be determined] | Employment Records |
| Future Medical | Ongoing | [To be determined] | Expert Medical Analysis |

**Direct Medical Expenses:** $[Amount to be calculated upon production of billing records] in unreimbursed medical expenses resulting directly from retaliatory interventions and delayed appropriate care.

**Ongoing Treatment Costs:** $[Amount to be determined] for continued medical treatment necessitated by systematic medical abandonment and harmful interventions.

**Lost Capacity:** Inability to work and reduced earning capacity due to physical and psychological trauma from systematic retaliation.

**Future Medical Expenses:** Ongoing costs for treatment of iatrogenic injuries and psychological trauma caused by deliberate medical harm.

### B. Ongoing Enterprise Threat

Cook's retaliation system remains operational across HCA's 186 hospitals. Plaintiff cannot safely access emergency medical care at any HCA facility due to active corporate flagging systems. The enterprise protocol threatens constitutional rights for any patient who attempts to exercise legal remedies against HCA.

Cook's continued employment as Risk Management Director demonstrates institutional approval of systematic patient retaliation protocols. HCA's failure to terminate Cook or dismantle the retaliation infrastructure constitutes ongoing criminal enterprise activity.

## IX. RELIEF REQUESTED

**Compensatory Damages** for civil rights violations, physical harm, and trauma caused by systematic retaliation coordinated by medical professionals.

**Punitive Damages** to deter enterprise conspiracy and professional credential abuse.

**RICO Treble Damages** under federal racketeering statutes for criminal enterprise activity.

**Injunctive Relief** requiring immediate dismantling of systematic retaliation protocols and termination of responsible corporate personnel.

**Regulatory Referrals** to Department of Justice, Centers for Medicare & Medicaid Services, and Nevada Board of Nursing for appropriate criminal and professional sanctions.

## X. CONCLUSION

The evidence supports a strong inference that HCA Healthcare operates systematic protocols to retaliate against patients who exercise constitutional rights. Upon information and belief, Cinthya Cook utilized advanced medical credentials to coordinate enterprise-wide patient retaliation while maintaining the appearance of legitimate medical care. The systematic destruction of required documentation suggests consciousness of wrongdoing rather than administrative oversight.

**Why This Cannot Be Explained as Coincidence or Medical Error:**

1. **Coordinated Timing & Scope:** Systematic violations occurred precisely 48 hours after litigation threats, spanning multiple departments with simultaneous protocol violations
2. **Deliberate Documentation Suppression:** Staff confirmations of undocumented orders combined with selective documentation (routine care documented while controversial interventions systematically undocumented) proves intentional evidence destruction
3. **Medical Targeting:** Interventions specifically targeted Plaintiff's documented medical vulnerabilities rather than following standard care protocols

The systematic nature of the violations, combined with enterprise-wide coordination and ongoing operational capability, requires immediate judicial intervention to protect constitutional rights and prevent future systematic retaliation against vulnerable patients.

Respectfully submitted,

Jade Riley Burch
222 Karen Ave, Unit 1207
Las Vegas, NV 89109
614-725-9452
jaderburch@gmail.com

---

**VERIFICATION UNDER PENALTY OF PERJURY**

I, Jade Riley Burch, declare under penalty of perjury under the laws of the United States
that I have read the foregoing Corporate Retaliation Statement and that the facts stated
therein are true and correct based upon my personal knowledge, information, and belief.

Executed this 11th day of August, 2025, in Las Vegas, Nevada.

---

Jade Riley Burch

## EXHIBIT P - CORPORATE RETALIATION STATEMENT

**Enterprise Coordination of Patient Retaliation Protocols**

**Prepared by:** Jade Riley Burch
**Date:** August 11, 2025
**Re:** HCA Healthcare's Systematic Retaliation Enterprise
**Subject:** Corporate Conspiracy Under Direction of Risk Management Officer

---

## I. STATEMENT OF FACTS

This exhibit documents evidence suggesting coordinated corporate retaliation by HCA
Healthcare against a patient who exercised constitutional rights to petition federal courts.
The evidence is consistent with systematic deployment of medically harmful
interventions coordinated by Cinthya Cook, Director of Risk Management/Patient Safety
Officer, utilizing advanced medical credentials to implement dangerous protocols against
Plaintiff.

## II. CORPORATE COORDINATION STRUCTURE

### A. Cinthya Cook's Enterprise Authority and Credentials

Cinthya Cook holds the position of Director of Risk Management and Patient Safety
Officer at HCA Healthcare, with the following professional credentials:

- Master of Science in Nursing (MSN)
- Master of Healthcare Administration (MHA)
- Bachelor of Science in Business Administration (BSBA)
- Registered Nurse (RN)
- Certified Professional in Patient Safety (CPPS)

Cook's dual authority over medical protocols and corporate liability management created
the infrastructure necessary to coordinate systematic patient retaliation while maintaining
the appearance of legitimate medical care.

## III. TIMELINE OF CORPORATE RETALIATION

### A. Corporate Notification Phase

**June 22, 2025, 4:34 PM:** Plaintiff transmitted formal litigation demand to Cook's
corporate email: Cinthya.Cook@hcahealthcare.com

**Subject:** "Formal Pre-Litigation Demand -- Missed PE Diagnosis"
This established direct corporate knowledge of pending federal litigation.

**June 26, 2025, 8:40 PM:** Plaintiff escalated with media exposure threat to the same corporate recipient.
**Subject:** "Sunrise Hospital's Missed Diagnosis to Become Public -- Final Opportunity"
This created urgent corporate liability concerns requiring immediate response.

**B. Systematic Retaliation Deployment**

**June 28, 2025:** Within 48 hours of final communication, Plaintiff was admitted to Southern Hills Hospital where systematic intervention protocols were deployed, including:

- Unauthorized physical restraints without physician orders *(See Exhibit D - Medical Records)*
- Chemical sedation using high-risk drug combinations *(See Exhibit D - Medical Records)*
- Systematic obstruction of Medical Power of Attorney rights *(See Exhibit [X] - POA Declaration)*
- Complete absence of federally required documentation *(See Exhibit X - Documentation Fraud Analysis)*

While correlation does not prove causation, the unusual timing and systematic nature of violations occurring precisely 48 hours after litigation threats create a strong inference of coordinated retaliation. The rapid deployment timeline suggests pre-existing enterprise infrastructure capable of coordinating systematic retaliation across multiple facilities within 48 hours of receiving litigation threats.

## IV. MEDICAL EXPERTISE WEAPONIZATION

**A. Systematic Intervention Protocol**

Upon information and belief, Cook's advanced medical knowledge was applied to design interventions targeting Plaintiff's specific medical vulnerabilities:

**Unauthorized Physical Restraints:** Application of 24/7 waist restraints without medical justification, physician orders, or patient consent. Staff acknowledged restraint orders to witnesses while systematically failing to document such orders in medical records. *(See Exhibit D - Medical Records; Exhibit [X] - POA Declaration)*

**Dangerous Chemical Interventions:** Simultaneous administration of Lorazepam and Oxycodone despite medical records documenting "Has not tried any pain meds for

headache." *(See Exhibit D - Medical Records)* This combination creates known risks of respiratory depression, particularly dangerous for seizure disorder patients—a deliberate targeting of Plaintiff's documented medical vulnerabilities.

**Medical Abandonment During Crisis:** When Plaintiff's oxygen saturation dropped to 60s (severe hypoxia indicating life-threatening oxygen levels), staff dismissed life-threatening symptoms as "normal" rather than providing appropriate medical intervention. *(See Exhibit [X] - Patient Declaration; Exhibit [X] - POA Declaration)*

**Cognitive Suppression:** Excessive Ativan administration resulted in 32 documented seizures over 48 hours and profound memory disruption, preventing formation of coherent testimony regarding treatment received. *(See Exhibit D - Medical Records)*

**Deviation from Standard Protocols:** The systematic nature of these interventions, occurring simultaneously and in direct contradiction to established medical protocols, suggests coordinated implementation rather than individual medical errors.

## B. Psychiatric Advance Directive Violations

Despite a prominently displayed bright red binder clearly labeled "PSYCHIATRIC ADVANCE DIRECTIVE" at the bedside, hospital staff proceeded with the exact prohibited interventions. The binder contained explicit warnings stating:

- "NO forced sedation ⊖ NO isolation"
- "UNAUTHORIZED PSYCHIATRIC ADMISSION OR MEDICATION MAY CONSTITUTE MEDICAL NEGLIGENCE OR LEGAL VIOLATION"
- "Contact Psychiatric Agent IMMEDIATELY: Porscha Ryan - 702-787-1871"

This prominent display made both Porscha's legal authority and the patient's specific treatment limitations unmistakable to all hospital staff, yet they proceeded with the exact prohibited interventions in direct violation of Nevada state law NRS 449A.600-449A.645.[1]

---

[1] NRS §449A.636 mandates compliance with psychiatric advance directives; Source: https://www.leg.state.nv.us/NRS/NRS-449A.html

## V. WITNESS DOCUMENTATION

## A. Medical Power of Attorney Legal Standing

Porscha Ryan served as court-appointed Medical Power of Attorney, providing unique legal standing that documented the systematic violations in real-time: *(See Exhibit [X] - POA Declaration; Exhibit AA - Cook's Regulatory Expertise Documentation)*

**Critical Witness Documentation:** *(See Exhibit [X] - POA Declaration)*

- No physician conducted meaningful bedside evaluations despite detailed consultation notes
- Staff openly discussed restraint orders that do not exist in medical records
- Life-threatening vital signs were systematically dismissed as "normal"
- Systematic obstruction of Medical POA authority despite clear legal notification

Ryan's legal standing converted systematic violations into documented federal crimes with an unimpeachable witness whose authority could not be challenged.

## VI. SYSTEMATIC RECORD FALSIFICATION

### A. Federal Documentation Requirements Violated

### A. Federal Documentation Requirements Violated

Under 42 C.F.R. § 482.13(e), hospitals must maintain detailed documentation for all restraint use. The following federally required records are completely absent:

- Physician orders for restraint application
- Medical justification for restraint necessity
- 15-minute monitoring logs required by federal regulation
- 2-hour restraint assessments mandated by CMS
- Patient consent or emergency authorization

**Spoliation of Evidence:** Staff confirmations of restraint orders combined with complete absence of documentation suggests systematic evidence suppression coordinated by personnel with detailed knowledge of regulatory requirements. The deliberate failure to create required documentation, rather than loss of existing records, constitutes spoliation through non-creation. *(See Exhibit X - Documentation Fraud Analysis)*

**Alternative Explanations Considered:** This pattern cannot be attributed to individual oversight or administrative error because:

1. Multiple staff members confirmed restraint orders to witnesses
2. The absence spans all federally required documentation categories
3. The timing coincides precisely with litigation threats
4. Standard documentation protocols were followed for non-controversial interventions

## VII. FEDERAL VIOLATIONS DOCUMENTED

### A. Civil Rights Conspiracy (42 U.S.C. § 1985)

**Predicate Act 1:** Enterprise conspiracy to punish constitutional rights exercise. Email evidence establishes corporate knowledge. *(See Exhibit [A] - Email Communications)* The 48-hour timeline supports inference of coordinated response capability.

### B. RICO Violations (18 U.S.C. § 1962)

**Pattern of Racketeering Activity:** HCA operates as criminal enterprise with Cook coordinating the conspiracy. Pattern affects interstate commerce through multi-state hospital system (186 facilities across 20 states).

**Predicate Acts Include:**[2]

1. Civil rights violations (42 U.S.C. § 1985) - June 28-29, 2025
2. Healthcare fraud (18 U.S.C. § 1347) - Ongoing billing for phantom services *(See Exhibit X - Documentation Fraud Analysis)*
3. Obstruction of justice (18 U.S.C. § 1512) - Systematic record suppression

**Enterprise Elements:**

- **Association-in-fact:** HCA corporate structure with Cook's Risk Management authority
- **Interstate Commerce:** Multi-state hospital operations affecting interstate commerce
- **Pattern:** Multiple predicate acts within enterprise operations

---

[2] 18 U.S.C. §1961 defines racketeering predicates; Source: https://www.law.cornell.edu/uscode/text/18/1961

### C. Healthcare Fraud (18 U.S.C. § 1347)

**Predicate Act 2:** Systematic billing for physician services never rendered. False documentation of medical encounters contradicted by witness testimony. *(See Exhibit X - Documentation Fraud Analysis; Exhibit D - Medical Records)*

### D. Obstruction of Justice (18 U.S.C. § 1512)

**Predicate Act 3:** Coordinated record falsification to conceal federal violations. Enterprise-wide document suppression implemented through Cook's Risk Management

authority, including systematic failure to create federally required restraint documentation.

### E. Professional License Violations

**Nevada Nursing Practice Act Violations:** Cook's RN license subject to disciplinary action for:

- Breach of fiduciary duty to patient
- Violation of nursing ethics and patient advocacy obligations
- Use of medical credentials to harm rather than heal patients

## VIII. QUANTIFIED DAMAGES AND ONGOING HARM

## VIII. QUANTIFIED DAMAGES AND ONGOING HARM

### A. Specific Economic Impact

| Damage Type | Date/Incident | Estimated Amount | Evidence Source |
|---|---|---|---|
| Medical Expenses | June 28-29, 2025 | [To be determined] | Billing Records (Exhibit D) |
| Ongoing Treatment | June 2025-Present | [To be determined] | Medical Records & Bills |
| Lost Capacity | June 2025-Present | [To be determined] | Employment Records |
| Future Medical | Ongoing | [To be determined] | Expert Medical Analysis |

**Direct Medical Expenses:** $[Amount to be calculated upon production of billing records] in unreimbursed medical expenses resulting directly from retaliatory interventions and delayed appropriate care.

**Ongoing Treatment Costs:** $[Amount to be determined] for continued medical treatment necessitated by systematic medical abandonment and harmful interventions.

**Lost Capacity:** Inability to work and reduced earning capacity due to physical and psychological trauma from systematic retaliation.

**Future Medical Expenses:** Ongoing costs for treatment of iatrogenic injuries and psychological trauma caused by deliberate medical harm.

### B. Ongoing Enterprise Threat

Cook's retaliation system remains operational across HCA's 186 hospitals. Plaintiff cannot safely access emergency medical care at any HCA facility due to active corporate flagging systems. The enterprise protocol threatens constitutional rights for any patient who attempts to exercise legal remedies against HCA.

Cook's continued employment as Risk Management Director demonstrates institutional approval of systematic patient retaliation protocols. HCA's failure to terminate Cook or dismantle the retaliation infrastructure constitutes ongoing criminal enterprise activity.

## IX. RELIEF REQUESTED

**Compensatory Damages** for civil rights violations, physical harm, and trauma caused by systematic retaliation coordinated by medical professionals.

**Punitive Damages** to deter enterprise conspiracy and professional credential abuse.

**RICO Treble Damages** under federal racketeering statutes for criminal enterprise activity.

**Injunctive Relief** requiring immediate dismantling of systematic retaliation protocols and termination of responsible corporate personnel.

**Regulatory Referrals** to Department of Justice, Centers for Medicare & Medicaid Services, and Nevada Board of Nursing for appropriate criminal and professional sanctions.

## X. CONCLUSION

The evidence supports a strong inference that HCA Healthcare operates systematic protocols to retaliate against patients who exercise constitutional rights. Upon information and belief, Cinthya Cook utilized advanced medical credentials to coordinate enterprise-wide patient retaliation while maintaining the appearance of legitimate medical care. The systematic destruction of required documentation suggests consciousness of wrongdoing rather than administrative oversight.

**Why This Cannot Be Explained as Coincidence or Medical Error:**

1. **Coordinated Timing & Scope:** Systematic violations occurred precisely 48 hours after litigation threats, spanning multiple departments with simultaneous protocol violations
2. **Deliberate Documentation Suppression:** Staff confirmations of undocumented orders combined with selective documentation (routine care documented while controversial interventions systematically undocumented) proves intentional evidence destruction
3. **Medical Targeting:** Interventions specifically targeted Plaintiff's documented medical vulnerabilities rather than following standard care protocols

The systematic nature of the violations, combined with enterprise-wide coordination and ongoing operational capability, requires immediate judicial intervention to protect constitutional rights and prevent future systematic retaliation against vulnerable patients.

**Respectfully submitted,**

Jade Riley Burch
222 Karen Ave, Unit 1207
Las Vegas, NV 89109
614-725-9452
jaderburch@gmail.com

**VERIFICATION UNDER PENALTY OF PERJURY**

I, Jade Riley Burch, declare under penalty of perjury under the laws of the United States that I have read the foregoing Corporate Retaliation Statement and that the facts stated therein are true and correct based upon my personal knowledge, information, and belief.

Executed this 11th day of August, 2025, in Las Vegas, Nevada.

Jade Riley Burch

========================================

# END SEPARATOR PAGE

========================================

## *** END OF EXHIBIT ***