==========================================

# EXHIBIT PPP

# INDEX / SEPARATOR PAGE

==========================================

## *** START OF EXHIBIT PPP ***

## TITLE:

## EVIDENCE OF MISREPRENSENTATION – MICHAEL A. ORBER JUNE 30TH 2025 CONDUCT

## (Next Page: Formal White Cover Sheet)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

**Jade Riley Burch,**
Plaintiff,

v.

**HCA Healthcare, Inc.; Sunrise Hospital & Medical Center, LLC;**
**MountainView Hospital; and Southern Hills Hospital & Medical Center,**
Defendants.

**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT PPP

**Orber's Misrepresentation & Evidence of Enterprise Coordination –**
**Michael A. Orber's June 30, 2025 Conduct**

Respectfully Submitted

Jade Riley Burch (Pro Se) | 222 Karen Ave Unit 1207 | Las Vegas, NV 89109

614-725-9452 | jaderburch@gmail.com

Prepared primarily by Plaintiff, with limited assistance from an AI tool, pursuant to Judge Couvillier's Standing Order.

**EXHIBIT PPP**

**Orber's Misrepresentation & Evidence of Enterprise Coordination – Michael A. Orber's June 30, 2025 Conduct**

**1. Executive Summary**

**Within 24 hours of Plaintiff's retaliatory discharge, Orber initiated contact — a timeline that cannot be explained by coincidence.** On June 30, 2025—less than 24 hours after Plaintiff's discharge from Southern Hills Hospital *(see Exhibit D, p. 36)*—Michael A. Orber, of Michael A. Orber & Associates, Inc., initiated an interstate phone call from California to Nevada to Plaintiff. Orber repeatedly used legal-representative terminology, including "my client" to refer to Sunrise Hospital (HCA-owned), creating the impression of licensed counsel while concealing that his **real client** was Health Care Indemnity, Inc., not HCA Healthcare or Sunrise Hospital. Plaintiff, vulnerable and disoriented post-discharge, reasonably believed he was defense counsel and engaged with him on that basis, despite his later clarification as an insurance adjuster *(see July 1, 2025 email)*. Orber requested a blanket authorization, which Plaintiff declined, providing a limited one, followed by emails on July 1 and July 3 requesting records and delaying response to control evidence *(emails attached as Exhibit RRR)*.

**2. Key Facts**

**Enterprise Coordination Timeline: 48-hour litigation threat → 24-hour retaliatory discharge → immediate insurer contact**

• **Identity & Affiliation:** Orber is with an insurance adjustment firm (Michael A. Orber & Associates, Inc.) based in California, not a law firm, as clarified in his July 1, 2025 email. His **real client** was Health Care Indemnity, Inc., not HCA Healthcare or Sunrise Hospital as he implied.

• **Timing:** Interstate call on June 30, 2025, post-discharge *(Exhibit D)*, followed by emails on July 1 and July 3, 2025, with emails continuing despite Plaintiff's limited authorization.

• **Language Used:** Multiple "my client" references on June 30 regarding Sunrise Hospital (HCA-owned), initial deception later contradicted by insurance role *(July 1 email)*. He **never disclosed** his true client relationship, **misleading Plaintiff into believing he was defense counsel**.

• **Verbal Conduct:** During multiple phone conversations, Orber spoke in a manner consistent with defense counsel — authoritative tone, dictation software, and lawyer-style phrasing. At no point did he clarify he was an insurance adjuster. His authoritative, lawyer-like phrasing reinforced Plaintiff's belief he was speaking with HCA's legal representative.

• **Purpose of Call:** To discuss claims, solicit blanket authorization, and assess liability, initially focused on Sunrise, expanding to Summerlin, with follow-up emails requesting Summerlin/Sunrise records *(July 1, 3)*.

• **Plaintiff's Limitation:** Narrowed authorization on July 1, suspecting overreach, despite Orber's 2-4 week delay claim *(July 3)*.

• **Enterprise Coordination:** His outreach was **not independent**, but the product of HCA's risk escalation pipeline. Scout for HCA risk management (e.g., Cinthya Cook) post-June 26, 2025 threat email *(Exhibit T)*, with emails demonstrating a multi-facility strategy post-threat.

• **Vulnerability Timing:** Call strategically placed within 24 hours of hospital discharge when Plaintiff was physically and emotionally vulnerable.

### 3. Legal and Strategic Significance

**Potential Misrepresentation:** Orber's June 30 "my client" usage regarding Sunrise Hospital (HCA-owned), despite his July 1 insurance role clarification, suggesting deliberate deception to exploit vulnerability, constitutes:

• **Wire Fraud:** This conduct presents sufficient facts to establish a plausible claim under 18 U.S.C. § 1343 (Wire Fraud) through deceptive interstate communication from California to Nevada with intent to mislead, as inferred from his initial tone and follow-up delay *(July 3)*.

• **Unlawful Practice of Law (Nevada SCR 79):** Implying counsel status without a license, per June 30 conduct.

• **Deceptive Trade Practices (NRS § 598.0915):** Misleading consumer interaction to obtain records.

**RICO Predicate:** This conduct presents a predicate act under 18 U.S.C. § 1961 when viewed in connection with Exhibit PP (RICO Enterprise Structure & Predicate Acts), referenced here for predicate act continuity, which documents the

broader pattern of coordinated misrepresentation and obstruction across multiple HCA facilities.

**Spoliation & Discovery:** Orber's July 3 delay email evidences an early attempt to control and stall evidence production, supporting Plaintiff's motion for expedited discovery (ECF No. 13).

**Retaliation Context:** Fits Exhibit LL as post-June 26 outreach to mitigate liability, Sunrise-focused retaliation evolving network-wide, with emails extending the process.

### 3.1. Reasonable Reliance Analysis

**Objective Standard:** A reasonable person receiving a call from someone using "my client" terminology would assume legal representation, particularly given:

• Professional tone and legal phraseology consistent with attorney conduct
• Strategic timing (day after hospital discharge when patients seek legal guidance)
• No reasonable disclosure of insurance adjuster role during June 30 call
• Lack of disclosure amplified by post-discharge state
• Sophisticated approach suggesting legal training or experience

**Induced Action:** Orber's misrepresentation directly caused Plaintiff to:

• Engage in substantive legal discussion under false pretenses
• Provide medical authorization believing HCA already had counsel contact
• Compromise litigation position through premature evidence disclosure

### 3.2. Specific Harms and Damages

• **Evidentiary Compromise:** Premature evidence gathering under deceptive circumstances
• **Strategic Disadvantage:** Early case assessment by opposing interests while Plaintiff believed in good faith engagement
• **Medical Privacy Violation:** Medical privacy was compromised by an authorization obtained through misrepresentation, a harm independent of any litigation strategy disadvantage
• **Emotional Distress:** Plaintiff experienced emotional distress from deceptive engagement at a time of medical vulnerability, compounding the retaliatory harm

### 3.3. Primary Regulatory Violations

• **Unauthorized Practice of Law (Nevada SCR 79):** Implying counsel status without a license, per June 30 conduct.

• **Deceptive Trade Practices (NRS § 598.0915):** Misleading consumer interaction to obtain records.

• **Wire Fraud (18 U.S.C. § 1343):** Presents a plausible claim under 18 U.S.C. § 1343 for deceptive interstate communication intended to mislead.

**Additional Violations:** California Business and Professions Code § 6125 (unauthorized practice across state lines); California Unfair Competition Law (Bus. & Prof. Code § 17200); Federal Trade Commission Act § 5; HIPAA Violations (45 CFR § 164.508).

**4. Related Exhibits**

• **Exhibit D** – Southern Hills Hospital Records (June 28–29, 2025)
• **Exhibit LL** – Retaliation Timeline
• **Exhibit PP** – RICO Enterprise Structure & Predicate Acts
• **Exhibit II** – Federal Violations Matrix
• **Exhibit NNN** – Seizure Logs (Post-HCA Encounters)
• **Exhibit OOO** – Damages Calculation
• **Exhibit T** – June 26, 2025 Threat Email
• **Exhibit RRR** – Orber's July 1-3, 2025 Emails
• **Exhibit C** – Summerlin PE Confirmation

**5. Declaration**

I, Jade Riley Burch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 18th day of August, 2025, in Las Vegas, Nevada.

/s/ Jade Riley Burch
**Pro Se Plaintiff**
222 Karen Ave Unit 1207
Las Vegas, NV 89109
Phone: (614) 725-9452
Email: jaderburch@gmail.com

========================================

# END SEPARATOR PAGE

========================================

## *** END OF EXHIBIT ***