MICHAEL E. PRANGLE, ESQ.
Nevada Bar No. 8619
ZACHARY J. THOMPSON, ESQ.
Nevada Bar No. 11001
HALL PRANGLE LLC
1140 N. Town Center Dr., Ste. 350
Las Vegas, NV  89144
(702) 889-6400 – Office
(702) 384-6025 – Facsimile
Email: efile@hallprangle.com
*Attorneys for Defendants*
*Sunrise Hospital &Medical Center, LLC;*
*MountainView Hospital; and Southern Hills Hospital & Medical Center*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JADE RILEY BURCH,<br><br>             Plaintiff,<br><br>vs.<br><br>HCA HEALTHCARE, INC.; SUNRISE HOSPITAL & MEDICAL CENTER, LLC; MOUNTAINVIEW HOSPITAL; and SOUTHERN HILLS HOSPITAL & MEDICAL CENTER,<br><br>             Defendants. | CASE NO.:  2:25-cv-01408-JAD-MDC<br><br>**DEFENDANTS SUNRISE HOSPITAL & MEDICAL CENTER LLC, MOUNTAINVIEW HOSPITAL, AND SOUTHERN HILLS HOSPITAL REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

COME NOW Defendants, Sunrise Hospital Medical Center, MountainView Hospital, and Southern Hills Hospital & Medical Center (hereinafter "Hospital Defendants"), by and through undersigned counsel, HALL PRANGLE LLC, and hereby submit this Reply Brief in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 10th Day of October, 2025.

HALL PRANGLE LLC

By:   */s/ Michael E. Prangle*
          MICHAEL E. PRANGLE, ESQ.
          Nevada Bar No. 8619
          ZACHARY J. THOMPSON, ESQ.
          Nevada Bar No. 11001
          1140 N. Town Center Dr., Ste. 350
          Las Vegas, NV  89144
          *Attorneys for Defendants Sunrise Hospital &Medical Center, LLC; MountainView Hospital; and Southern Hills Hospital & Medical Center*

HALL PRANGLE LLC
1140 NORTH TOWN CENTER DRIVE, STE. 350
LAS VEGAS, NEVADA 89144
TELEPHONE: 702-889-6400   FACSIMILE: 702-384-6025

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

Plaintiff's response brief (ECF No. 55) confirms dismissal is appropriate pursuant to Fed. R. Civ. P 12(b)(6) as to the Hospital Defendants. At bottom, plaintiff's response is replete with argument about her subjective disagreement with the medical care at the Hospital Defendants. That is a state law claim for professional negligence under Nevada's medical malpractice statutory scheme. *See* NRS 41A.071. Plaintiff implicitly recognizes as much, beginning her response by arguing that NRS 41A.071 does not apply to her federal and state law intentional tort claims. *See* ECF No. 55 at 4. This is a strawman argument: Defendants do not make that argument. Rather, Defendants argue that plaintiff's factual allegations in the operative complaint fail to plausibly state any federal or state law intentional tort claim. Rather, plaintiff is attempting to repackage a medical malpractice lawsuit into something that it is not. The Court should dismiss all claims under Fed. R. Civ. P. 12(b)(6) with prejudice; alternatively, it should dismiss all of the federal claims with prejudice and dismiss the state law claims without prejudice and relinquish subject-matter jurisdiction.

## I. NO EMTALA CLAIM HAS BEEN PLAUSIBLY ALLEGED AGAINST ANY HOSPITAL DEFENDANT.

Plaintiff's response brief does not provide any plausible basis for this Court to reject Defendants' arguments that she fails to state a plausible EMTALA claim.

*Sunrise Hospital.* In her response brief, plaintiff relies upon *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 995 (9th Cir. 2001), arguing that "[a]dmission may satisfy stabilization absent subterfuge, *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1168 (9th Cir. 2002), but it does not cure a deficient pre-admission screening." *See* ECF No. 55 at 5. But those legal precedents support Defendants, not plaintiff, that she fails to state an EMTALA claim against them. The Ninth Circuit in *Baker* explained that:

> More fundamentally, plaintiff's argument overlooks the central purpose of EMTALA, which is to forbid hospitals from providing different emergency care to patients on the basis of the patients' ability to pay. *See Jackson,* 246 F.3d at 1254. In keeping with the purpose of the statute, we have held that a screening is "appropriate" within the meaning of EMTALA if it:
>
> provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.'

*Baker,* 260 F.3d at 995 (citing *Jackson v. East Bay Hosp.,* 246 F.3d 1248, 1254 (9th Cir. 2001) in turn quoting *Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1257 (9th Cir. 2001)).

Here, plaintiff alleges and argues in her response brief nothing more than an alleged misdiagnosis of pneumonia instead of a pulmonary embolism at Sunrise Hospital. *See* ECF No. 55 at 5 ("Here, plaintiff challenges pre-admission screening (Sunrise's failure to apply PE pathway"); *see also id.* (alleging "symptoms of acute chest pain, shortness of breath, tachycardia, abnormal chest x-ray recent surgery" as the basis for her belief she was suffering from a PE and not pneumonia). While plaintiff labels this conduct as not "reasonably calculated to identify emergency medical conditions," ECF No. 9 at 16, the Ninth Circuit has repeated that "[t]o restate our ruling in *Jackson,* we hold that a hospital does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition. An individual who receives substandard medical care may pursue medical malpractice remedies under state law." *Bryant,* 289 F.3d at 1166 (cleaned up). As in *Bryant*, plaintiff's theory as pled in the operative complaint is that Sunrise Hospital ED personnel "failed to order appropriate diagnostic tests…." for suspected PE in the Emergency Department, *see* ECF No. 9 at pg. 8, and that she was *admitted to Sunrise Hospital* for multiple days, and then allegedly misdiagnosed her with pneumonia. *See id.* This is a definitive example of alleged medical malpractice under *Baker, Bryant,* and its progeny.[1] Plaintiff's assertions to the

---

[1] Plaintiff points out that one of Defendants' citations is a 2024 unpublished 9th Circuit decision, but 9th Cir. Fed. R. App. P. 32.1 permits such a citation if the case was decided after January 1,

contrary fails to state an EMTALA claim.

*MountainView*. Similarly, plaintiff's response brief is legally deficient in attempting to defend her EMTALA claim against MountainView. She argues that she presented for acute chest pain in the ED on March 22, 2025, but then again that she was "admitted for evaluation but, while inpatient, experienced multiple seizures and was repeatedly administered heavy doses of Ativan. *See* ECF No. 55 at pg. 6. She goes on to state that she was "prematurely" discharged two days later, on March 24, 2025. *See id.* She argues that she had to take an Uber home because staff insisted she vacated her room and she was "heavily sedated." Simply put, EMTALA does not apply to these allegations and argument wherein she was accepted in the ED, treated in the ED, and then admitted to the hospital for work-up. *Bryant*, 289 F.3d at 1168 ("EMTALA's stabilization requirement ends when an individual is admitted for inpatient care."). Plaintiff indisputably alleges in her own operative complaint that she was admitted to the hospital for several days (June 28-29, 2025), and provided medical care. *See* ECF No. 55 at pg.7. Here subjective disagreement with the appropriateness of her discharge from the hospital (not the ED) sounds in alleged professional negligence, not EMTALA. She points to no legal authority to support her position in her brief and failed to distinguish the authority cited above that was cited in Defendants' Opening Motion.

*Southern Hills*. Plaintiff argues in her response brief that between June 28-29, 2025, that she presented to Southern Hills Hospital because her oxygen saturations were life-threatening because they were in the 60's, that she was admitted to the hospital, but that in her opinion she was not medically "stabilized" after being discharged after being admitted to the hospital. *See* ECF No. 55 at pg. 7. Again, this conduct even if true is outside the scope of EMTALA: "That a hospital's

---

2007. *See id*. (stating that a court "may not prohibit or restrict the citation of federal judicial opinions … designated as "unpublished" … and "issued on or after January 1, 2007"); *see Dalavai v. The Regents*, 2024 WL 3842100, at *1 (9th Cir. Aug. 16, 2024), *cert. denied*, 145 S. Ct. 1309 (2025) ("Our precedent is clear that EMTALA liability normally ends when [an emergency room patient] is admitted for inpatient care.") (cleaned up).

duty to stabilize only arises in the context of a *transfer* is confirmed by the statute's definition of the term "stabilize." *Money v. Banner Health*, No. 3:11-CV-00800-LRH, 2012 WL 1190858, at *10 (D. Nev. Apr. 9, 2012) (quoting 42 U.S.C. § 1395dd(e)(3)(A)). Specifically, "[t]he term 'to stabilize' means ... to provide such medical treatment of the condition as may be necessary to assure ... that no material deterioration of the condition is likely to result from or occur *during the transfer of the individual from a facility.*" *Id.* (quoting § 1395dd(e)(3)(A). "As a result, the term 'stabilize' in the context of an EMTALA claim does not apply to individuals unless they are being transferred." *Id.* (citing *Bryant* 289 F.3d at 1168). At bottom, plaintiff's arguments sound in state-law medical malpractice – and not EMTALA – for all of the reasons set out in *Baker*, 260 F.3d at 995. *See also Bryant,* 289 F.3d at 1166 (cleaned up) ("To restate our ruling in *Jackson,* we hold that a hospital does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition. An individual who receives substandard medical care may pursue medical malpractice remedies under state law." *Id.* at 1166 (cleaned up). Accordingly plaintiff fails to state an EMTALA claim against Southern Hills and the Court should dismiss it with prejudice.

## II. PLAINTIFF FAILS TO ALLEGE A DISABILITY DISCRIMINATION CLAIM AGAINST HOSPITAL DEFENDANT

The Hospital Defendants moved to dismiss plaintiff's purported disability discrimination claims under the Rehabilitation Act (29 U.S.C. § 794), Title III of the ADA (42 U.S.C. § 12182), and § 1557 of the ACA. *See* ECF No. 50 at pg. 10-11 for failing to plausibly state a claim because, principally, plaintiff never provides factual allegations to state a cognizable claim that she was denied any medical services "solely by reason of her disabilities." *See* ECF No. 50 at pg. 10-11[2]

---

[2] (citing *Bax v. Drs. Med. Ctr. Of Modesto, Inc.*, 52 F.4th 858, 866 (9th Cir. 2022) (Rehabilitation Act and ACA); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (ADA).

In her response brief, plaintiff argues that she has presented a disability discrimination claim because when she presented to Southern Hills and presented a notarized PAD on June 28-29, 2025, when she came in for acute chest paint, "[the] records show no notation, acknowledgement, or compliance, *see* ECF No. 55 at pg. 7-8. Plaintiff goes on to argue that she had a seizure disorder, PTSD, postictal cognitive impairment. *Id.* However, as Judge Dorsey noted in her ruling on plaintiff's motion for TRO, plaintiff "does not explain why she believes her condition is being misdiagnosed, nor does she explain how a misdiagnosis is a violation of … [the ACA and the ADA]," and that her MPOA was present but "excluded." *See* ECF No. 56 at pg. 5.

While Defendants recognize the differing legal standards between resolving a TRO and Rule 12(b)(6) motion, the same conclusion is warranted at the motion to dismiss stage on the pleadings only: plaintiff cites no case law and articulates no cognizable legal theory that failing to document in a medical record the existence of PAD violates the discrimination provision of the ACA, ADA, and Rehabilitation Act, nor does she explain what medical services that she was allegedly denied (or what her MPOA would have done in connection with those medical services) and that this conduct was "solely based on her disability" or why that action proximately caused injury to her. Moreover, plaintiff makes the argument in her response brief, see ECF No. 55 at 9, that she provided "Notice" to Sunrise Hospital's risk management of her disabilities, as somehow establishing a plausible basis of discrimination against separate Defendant Southern Hills. *See id.* This statement/argument does nothing to cure her pleading deficiencies identified above. The plausibility requirement to survive a motion to dismiss is therefore lacking as to the Hospital Defendants, warranting dismissal of the § 504 claim, ADA claim, and ACA claim.

### III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO CLAIM (COUNT VII).

In her response brief, plaintiff dedicates one page to explaining why she believes that she has pled a plausible RICO claim, and has failed to respond to a number of the Hospital Defendants'

arguments as to why her RICO claim fails. *See* ECF No. 55 at pg. 13. With regard to the arguments that she does make, the Court should reject them as implausible. First, plaintiff argues that the "DIFFUSE TBI WITH LOC STATUS UNKNOWN INI" entry in her medical record on June 28, 2025, despite a "normal CT and no documented LOC," is "wire fraud." *See id.* However, plaintiff has forfeited any attempt at explaining how that alleged medical record discrepancy is wire fraud because she provides no legal analysis on this issue –no attempt to show such conduct is considered wire fraud. Her cursory and conclusory response brief fails to state a claim.

Second, plaintiff alleges that there are multiple wire fraud crimes being committed because "each synchronization and display to the member of the [Anthem] portal is a new interstate wire transmission." ECF No. 55 at 13. The argument does not make legal sense, and the legal citation she provides, *see United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008), does not involve any of the type of arguments/allegations she is making about access to a patient portal. It is implausible to conclude that an alleged medical discrepancy in a patient portal constitutes federal wire fraud.

Moreover, and as argued in Defendants' Opening Motion, there are five elements for wire fraud and plaintiff has failed to plausibly allege *any of the elements,* let alone all of them to allow her claim to rise above the speculative level.[3] Simply put, she alleges an unknown Jane Doe nurse "falsely" put in the wrong diagnoses in her medical chart. Comparing those allegations with the elements of wire fraud (repeated in footnote 2) shows that plaintiff cannot plead a plausible RICO claim. Next, plaintiff argues there is an "associate-in-fact enterprise," but her factual allegations in the complaint are that allegedly Defendant HCA Healthcare Inc. and the Hospital Defendants

---

[3] (1) 'the defendant knowingly participated in or devised a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;'(2) 'the statements or representations ... were material;'(3) 'the defendant acted with the intent to defraud, that is, the intent to deceive and cheat;' and (4) 'the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.'" *See United States v. Fiore,* 779 F. Supp. 3d 1160, 1184 (D. Nev. 2025) (cleaned up)

have centralized functions and "shared policies, billing systems, EMR platforms." *See* ECF No. 55 at pg. 13. That argument fails to grapple with the legal standard for a RICO *enterprise, see footnote 2, supra,* for each of the five elements. Defendants raised this argument in its Opening Motion and plaintiff has failed, completely, to tie up her pleading with the legal standard.

Second, plaintiff has failed to plausibly plead "two or more predicate crimes." Plaintiff cited two statutes in her FAC, "healthcare fraud under 18 U.S.C. § 1347" and "wire fraud under 18 U.S.C. § 1343," yet plaintiff failed to respond to Defendants' argument that she has failed to plead a predicate act of federal health care fraud. *See* ECF No. 50 at p. 13. Accordingly, plaintiff has forfeited her opportunity on the merits to rely upon health care fraud as a predicate act. Next, plaintiff cannot plausibly allege that a RICO violation "proximately caused an injury" to her "business or property." *Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009). Indeed, she does not address this argument and therefore has forfeited the opportunity to do so. For all of the additional reasons set out in Defendants' Opening Motion and left unaddressed by plaintiff in her response brief, the Court should dismiss the RICO claim. *Ashcroft*, 556 U.S. at 678.

### IV. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A BATTERY AND FALSE IMPRISONMENT CLAIM.

Plaintiff argues in her response brief that she has adequately pled a state-law battery claim because "chemical restraints were administered June 28-29 without contemporaneous orders and outside consent scope," "no attending physician evaluated Plaintiff," and PAD agent wasn't consulted." *See* ECF No. 55 at pg. 10. While these are plaintiff's complaints, she makes no effort to demonstrate under governing law that any of these actions constitute a battery. Defendants pointed this out in their Opening Motion: Courts typically only allow consent issues to proceed as battery claims in "those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent

given is present." *See* ECF No. 50 at pg. 15-16 (quoting *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (2016)). Plaintiff cites no case law that administration of chemical restraints in the context of attempting to provide emergency medical treatment (for which plaintiff herself sought) constitutes a "battery" or "procedure". *Cf. Humboldt Gen. Hosp.*, 376 P.3d at 171.

Indeed, she argues that the chemical restraints were "outside consent scope," but the Supreme Court of Nevada has already rejected this argument. *See de Becker v. UHS of Delaware, Inc.*, 555 P.3d 1192, 1198 (Nev. 2024), *cert. denied sub nom*, *Becker v. UHS of Delaware, Inc.*, 145 S. Ct. 1064 (2025). In *de Becker,* the Supreme Court of Nevada stated that "we similarly conclude that the de Beckers' consent claim is a professional negligence claim rather than a battery claim." *Id.* The Court further explained that "Hal's consent to treatment was not completely lacking; instead, Hal consented to receive COVID-19 treatment from the doctors and Desert Springs by being admitted to receive constant medical attention. What Hal assertedly did not consent to was the administration of remdesivir." *Id.* Here, plaintiff's theory is that she consented to medical treatment upon admission to Southern Hills, but not to chemical restraints. But as *de Becker* explained, "we conclude that the de Beckers' claim is about whether the scope of Hal's consent was exceeded. Thus, it is a claim for professional negligence, and an expert affidavit is required." *Id.* Accordingly, plaintiff's battery claim is foreclosed by the above Nevada Supreme Court precedent. Additionally, so too is plaintiff's false imprisonment claim for the same reasons. While plaintiff argues that she was "physically restrained June 28-29 without proper orders," that is just another way of attempting to plead a battery claim and in this medical context, plaintiff is barred from doing so consistent with *de Becker* and its progeny (including *Humboldt Gen. Hosp.*, cited by both plaintiff and the Hospital Defendants). *See* ECF No. 55 at 10; ECF No. 50 at 16.

## V. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff argues in her response brief that she has plausibly alleged an IIED claim, but fails to distinguish the legal authority cited in Defendants' Opening Motion establishing that she cannot do so. *See, e.g.,* ECF No 50 at pg. 17-18 (citing *Waters v. United States*, Case No. 221CV01719-CDS-EJY, 2023 WL 2504543, at *2 (D. Nev. Mar. 14, 2023); *Olivero v. Lowe*, 995 P.2d 1023, 1025–26 (Nev. 2000)). "The Nevada Supreme Court urges that "[i]n determining whether such a claim sounds in ordinary or professional negligence, we 'must look to the gravamen or substantial point or essence of each claim rather than its form." *See Waters*, 2023 WL 2504543, at *3. Here, plaintiff's response argues, again, about the medical care she received – including allegedly failing to appreciate her oxygen saturation levels dropping into the 60's, staff "ignored MPOA's pleas; chemical restraints administered without justification; PAD not acknowledged" and that this experienced exceeds "all possible bounds of decency." ECF No. 55 at 11. Under *de Decker* and the other cases cites in this Reply, this is a re-packaged professional negligence claim that must be brought pursuant to NRS § 41A.071. Even if the Court rejects this argument, plaintiff's even when credited as true for this motion, fail to rise to the level of "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress[,] and (3) *See Waters*, 2023 WL 2504543, at *2.

## VI. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A "FRAUD/MEDICAL RECORD FALSIFICATION" CLAIM.

In plaintiff's response brief on this "claim," it is her position that there is a "false diagnosis" in her medical chart of "DIFFUSE TBI WITH LOC STATUS UKNOWN INI," *see* ECF No. 55 at 11, and that Southern Hills "imported 19 diagnoses without clinical evaluation," including past medical history. *Id.* None of these arguments constitute "fraud." Plaintiff appears to take issue with

the recording of certain medical records. Yet there is no cause of action that she invokes that federally or under Nevada state law recognizing a "fraud" claim for inaccurate medical records. The operative complaint is likewise devoid of any specific factual allegations about who committed the alleged "fraud" (versus mistake). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). "A party alleging fraud must "set forth *more* than the neutral facts necessary to identify the transaction." *Id.* As explained above, plaintiff's operative complaint and response brief fail to set out a legally cognizable claim against any of the Hospital Defendants. Moreover, with regard to Sunrise Hospital, plaintiff makes no argument in response to Hospital Defendants' motion to dismiss on this claim. *Compare* ECF No. 50 at pg. 19 (moving to dismiss), *with generally* ECF No. 55 (making no argument against Sunrise Hospital on this claim). Accordingly, plaintiff has forfeited her opportunity to do so and the Court should grant the motion to dismiss as to Sunrise Hospital for this additional reason.

## II. CONCLUSION

For the reasons set forth above, Defendants respectfully move this Honorable Court for an Order dismissing with Prejudice Plaintiff's First Amended Complaint and for any further relief the Court deems just.

DATED this 10th day of October, 2025.

HALL PRANGLE LLC

By: */s/ Michael E. Prangle*
MICHAEL E. PRANGLE, ESQ.
Nevada Bar No. 8619
ZACHARY J. THOMPSON, ESQ.
Nevada Bar No. 11001
1140 N. Town Center Dr., Ste. 350
Las Vegas, NV 89144
*Attorneys for Defendants*
*Sunrise Hospital &Medical Center, LLC; MountainView Hospital; and Southern Hills Hospital & Medical Center*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of October, 2025, I served a true and correct copy of the foregoing **DEFENDANTS SUNRISE HOSPITAL & MEDICAL CENTER LLC, MOUNTAINVIEW HOSPITAL, AND SOUTHERN HILLS HOSPITAL AND MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** as follows:

  X   United States District Court CM/ECF System;

\_\_\_\_\_  U.S. Mail, first class postage pre-paid to the following parties at their last known address;
\_\_\_\_\_  Receipt of Copy at their last known address:

JADE RILEY BURCH
222 Karen Ave., Unit 1207
Las Vegas, NV 89109
*Pro Se Plaintiff*

/s/ Emily Macaluso
An employee of HALL PRANGLE LLC

**HALL PRANGLE LLC**
1140 NORTH TOWN CENTER DRIVE, STE. 350
LAS VEGAS, NEVADA 89144
TELEPHONE: 702-889-6400   FACSIMILE: 702-384-6025