**EXHIBIT BP 2.0**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 2.0**

**Enterprise-Wide Liability Exposure & Litigation Framework**

**Re: HCA Healthcare, Inc.**

**Prepared by:** Jade Riley Burch

**Date:** November 24, 2025

**Case:** Jade Riley Burch v. HCA Healthcare, Inc., et al.

---

## EXECUTIVE SUMMARY

This blueprint provides the comprehensive framework for coordinated, multi-jurisdiction class action and RICO litigation against HCA Healthcare, Inc. ("HCA"). It demonstrates how systematic, fraudulent, and harmful protocols documented at HCA's Nevada facilities may represent enterprise-wide patterns of racketeering activity, replicable across HCA's 191-hospital, ~2,500-site network. Forensic analysis of the Nevada evidence provides strong indications of a systematic chemical restraint protocol, revealing a high pattern consistency in a multi-stage process that appears designed to suppress patient rights, conceal medical negligence, and fraudulently bill federal programs.

This framework is the operational template for nationwide discovery, liability theories, and damages calculations. Based on preliminary modeling, potential exposure could range from $6B–$40B+, depending on class scope, facility count, and future discovery. The evidence suggests a pattern of conduct consistent with a coordinated enterprise under 18 U.S.C. § 1962, presenting a significant threat to HCA's federal funding, regulatory standing, and corporate integrity. The litigation

detailed herein will be deployed immediately, using HCA's own internal records as the foundation for enterprise-wide civil liability.

## SECTION I: ENTERPRISE-WIDE VULNERABILITY MAPPING

**HCA Network Infrastructure Analysis**

| Component | Details | Class Action Relevance |
|---|---|---|
| **Hospital Count** | 191 hospitals & ~2,500 ambulatory sites across 20 states | Massive potential plaintiff pool |
| **Employee Base** | ~316,000 colleagues, including >99,000 RNs | Uniform training/policy implementation |
| **Annual Revenue** | $75.0B - $76.5B (2025 projection) | Deep pockets for damages |
| **Federal Funding** | ~$31.065 billion Medicare/Medicaid annually | Federal program violation exposure |
| **EHR System** | Centralized electronic health records | Uniform documentation patterns |
| **Corporate Structure** | Publicly traded (NYSE: HCA) | SEC disclosure obligations |

*Statistics compiled from HCA Healthcare's Q3 2025 earnings reports, the 2025 Impact Report, and 2024–2025 SEC filings.*

**Systematic Violation Categories & The Standardized Harm Protocol**

The predicate acts documented in Nevada are not isolated incidents but appear to be outcomes of a replicable, enterprise-wide protocol. Forensic analysis reveals a

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

**Standardized Harm Progression Model** consistently deployed across facilities to manage and discharge medically complex or complaining patients:

1. **Patient Reports or Displays Medical Instability:** The patient presents with a legitimate, acute medical issue (e.g., seizure, PE symptoms).

2. **Staff Classifies as Psych-Related or Somatic:** Medical symptoms are dismissed and re-labeled as behavioral or psychiatric to avoid complex medical workups.

3. **Sedation Administered (e.g., Ativan, B52 Cocktail):** Chemical restraints are deployed without medical necessity to silence the patient.

4. **Seizures or Decompensation Occur:** The patient's condition deteriorates post-sedation, which is ignored or undocumented.

5. **Documentation Suppressed or Falsified:** Medical records are manipulated to omit staff negligence and justify the chemical restraints.

6. **Patient Discharged in Altered/Unstable State:** The patient is prematurely discharged to minimize liability and remove them from the facility.

**This protocol directly generates the**
**following categories of class-wide violations:**

- **Category 1: Chemical Restraint Abuse**
  - **Nevada Evidence:** Dangerous Polypharmacy and Neurological Risk (MountainView); B52 Chemical Restraint Misuse (Sunrise); Pharmaceutical Misconduct and Black Box Drug Violations (Southern Hills).
  - **Enterprise Risk:** Standardized restraint protocols used as a tool for patient suppression, not medical necessity.

Burch v. HCA Healthcare et., al
CONFIDENTIAL LITIGATION WORK PRODUCT
National Class Action Blueprint 20

- **Class Potential:** All psychiatric/emergency admissions subjected to chemical sedation without proper consent or indication (Est. 1M+ annually).

**Category 2: Advance Directive & Patient Rights Violations**

- **Nevada Evidence:** Legally Binding PAD Ignored (Sunrise); Agent exclusion and PAD denial during physical restraints (Southern Hills).
- **Enterprise Risk:** Corporate policies systematically overriding patient rights and legally designated agents.
- **Class Potential:** All patients with advance directives whose designated agents were ignored or excluded (Est. 500,000+ annually).

- **Category 3: Systemic Documentation Fraud**
  - **Nevada Evidence:** Deliberate Omission of Seizure Records (MountainView); Falsified Medical Records to Justify Chemical Restraint (Sunrise); Spoliation/Missing Critical Docs & Restraint Orders (Southern Hills).
  - **Enterprise Risk:** Network-wide EHR manipulation to conceal negligence, justify fraudulent billing, and defeat legal claims.
  - **Class Potential:** All patients with billing discrepancies or whose records show evidence of falsification or omission (Est. 5M+ annually).

- **Category 4: Emergency Department Discrimination**

- Nevada Evidence: Discriminatory Use of Psychiatric History to Deny Emergency Care for PE (Sunrise, MountainView); False Psychiatric Labeling for Insurance Fraud (Southern Hills).
  - Enterprise Risk: Systematic bias in triage and emergency care protocols in violation of EMTALA, the ADA, and ACA §1557.
  - Class Potential: All patients with psychiatric histories denied appropriate medical screening in emergency settings, drawn from HCA's 9 million+ annual ER visits (Est. 2M+ annually).

- **Category 5: Coordinated Retaliation**
  - **Nevada Evidence:** Documented 48-hour retaliation timeline following legal notice; Enterprise-level coordination by Risk Management across facilities (Sunrise to Southern Hills).
  - **Enterprise Risk:** Corporate "difficult patient" protocols that constitute illegal retaliation against patients who exercise their legal rights.
  - **Class Potential:** All patients who filed formal complaints and subsequently experienced adverse actions (Est. 100,000+ annually).

## SECTION II: THE INTEGRATED NEVADA ENTERPRISE

### 1. The "Triangulated" Operational Footprint

Forensic mapping of Defendant's corporate infrastructure reveals that HCA does not operate as a passive holding company but as a coordinated, multi-node enterprise within the District of Nevada. The Enterprise maintains a deliberate,

bifurcated physical presence designed to segment liability while unifying revenue and labor control:

- **The Billing Node (Las Vegas):** Parallon Business Solutions, LLC
  - **Location:** 2300 West Sahara Ave, Suite 430, Las Vegas, NV 89102.
  - **Function:** Executes revenue cycle management, denial algorithms, and collections.
- **THE "RECRUITER" — HEALTHTRUST WORKFORCE SOLUTIONS, LLC (Enterprise Staffing, Coercion, and Personnel Deployment)**

HealthTrust Workforce Solutions, LLC ("HealthTrust") is a wholly-owned subsidiary of HCA Healthcare, Inc., operating as the centralized staffing and workforce-deployment arm of the enterprise. HealthTrust maintains a staffed office in Henderson, Nevada, where it recruits, trains, places, and manages healthcare personnel for HCA's Nevada hospitals, including registered nurses, allied health professionals, and specialized clinical staff.

HealthTrust exercises operational control over:

  - per diem staffing
  - travel nurse assignments
  - critical care, ER, telemetry, and behavioral health placements
  - personnel scheduling
  - wage incentives
  - payroll services
  - workforce discipline

o Training Repayment Agreement Provisions (TRAPs) used to restrain workforce mobility

HealthTrust's workforce performs the very clinical functions directly implicated in Plaintiff's allegations, including administration of sedatives, seizure-related care, physical restraints, and compliance with patient rights. HealthTrust's Nevada operations place it in continuous and systematic contact with this District, establishing personal jurisdiction and confirming its integration into the enterprise. HealthTrust is not an independent contractor. It is a controlled and coordinated operational arm of the HCA enterprise, designed to supply the personnel necessary to execute the clinical components of the enterprise-wide misconduct. Its activities complete the staffing link in the RICO chain between HCA's corporate directives and Parallon's financial exploitation.

- **The Clinical Node (Las Vegas Metro):** HCA Hospitals (Sunrise, Southern Hills, MountainView)
  - o **Function:** The physical sites of patient admission, chemical restraint, and medical coding initiation.
  - o

## 2. Evidence of Centralized Control (The "Privacy Policy" Nexus)

Plaintiff has identified direct evidence that HealthTrust Workforce Solutions is not an independent entity but a data-integrated arm of HCA Healthcare.

- **The Evidence:** The official Privacy Policy for HealthTrust Workforce Solutions explicitly directs data governance inquiries to the "HCA Healthcare Data Protection Officer" located at One Park Plaza, Nashville, TN 37203.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

- **Enterprise Significance:** This proves that HealthTrust's data, employee records, and compliance frameworks are managed directly by HCA's corporate headquarters. There is no "informational firewall"; the staffing arm and the parent company share the same data governance brain.

## 3. The AC Med Ownership Conduit (Financial and Structural Integration)

Plaintiff has identified AC Med, LLC, a Delaware holding company, as the sole member of Sunrise Hospital & Medical Center, LLC.

Corporate filings reveal the following ownership chain:

HCA Healthcare, Inc. → HCA Inc. → Healthtrust, Inc. – The Hospital Company → AC Med, LLC → Sunrise Hospital & Medical Center, LLC.

SEC filings confirm that AC Med, LLC serves as a Subsidiary Guarantor for HCA's senior secured notes, demonstrating that the Nevada hospital's holding company is used to collateralize and financially support HCA's national corporate debt structure.

This commingling of financial obligations, coupled with the vertically integrated ownership structure, eliminates any plausible claim of corporate separateness. AC Med functions as a financial conduit and liability shield, allowing HCA to extract revenue from Nevada facilities while insulating the Parent from direct liability. This discovery materially strengthens the enterprise analysis, proving that Sunrise Hospital is not an independent local entity but a leveraged asset within a national revenue extraction enterprise.

**4. The "Hub-and-Spoke" Liability Model**

This infrastructure confirms a classic RICO enterprise structure:

- **The Hub (Nashville):** Sets policy, admission quotas, and revenue targets.
- **The Spokes (Nevada):** Parallon (Billing) and HealthTrust (Staffing) execute these policies across multiple jurisdictions (Las Vegas and Henderson).
- **The Consequence:** HCA cannot claim "lack of jurisdiction" or "corporate separation" when it maintains multiple, specialized operational nodes within the state that report back to a single Nashville headquarters.

## SECTION III: NATIONWIDE LITIGATION METHODOLOGY

### Evidence Collection Framework

The Nevada discovery provides a proven template for targeted, efficient, and impactful evidence collection on a national scale.

- **Medical Records Acquisition (Template Request):** "Pursuant to 45 C.F.R. § 164.524, demand is made for complete and unredacted copies of: All nursing notes and physician orders; restraint and sedation documentation, including orders and flowsheets; incident reports and risk management communications; billing records with corresponding procedure codes; and complete electronic health record audit trails showing all access, modifications, and deletions."
- **Documentation Analysis Protocol:**
  1. **Missing Records Identification:** Cross-reference required federal/state documentation against records produced to identify spoliation (e.g., missing restraint orders).

2. **Billing Discrepancy Analysis:** Match procedures billed against medical records to identify fraud (e.g., billing for services not rendered).

3. **Timeline Correlation:** Map adverse events against patient complaints and legal notices to prove retaliation.

4. **Policy Violation Documentation:** Compare care provided against HCA's internal policies and federal regulations to establish breaches.

## Legal Claims Architecture

The action will be founded upon a matrix of interconnected federal claims, demonstrating a pattern of systemic, rather than incidental, misconduct. **A detailed Litigation Nexus Matrix has been prepared, mapping specific evidentiary exhibits to each element of the asserted federal claims, including predicate acts for the RICO enterprise theory.**

- **Federal Civil Rights Violations:**
  - **42 U.S.C. § 1983:** Deprivation of rights under color of law.
  - **42 U.S.C. § 1985(3):** Conspiracy to interfere with civil rights, evidenced by coordinated, multi-facility conduct.
  - **ACA § 1557 (42 U.S.C. § 18116) & Rehab Act § 504 (29 U.S.C. § 794):** Discrimination based on disability.
  - **ADA Title III (42 U.S.C. § 12182):** Discrimination in public accommodations.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

- **Healthcare Regulatory & Fraud Violations:**
  - ○ **EMTALA (42 U.S.C. § 1395dd):** Failure to screen, stabilize, or conduct a safe transfer.
  - ○ **Patient Rights (42 C.F.R. § 482.13):** Violations of federal conditions for Medicare participation.
  - ○ **Healthcare Fraud (18 U.S.C. § 1347):** Scheme to defraud a healthcare benefit program.

## <u>Reinforced Legal Precedent</u>

The legal theories underpinning this blueprint are grounded in established federal precedent. The application of RICO statutes to fraudulent healthcare enterprises and civil rights claims against private healthcare corporations is well-supported.

- ***Reves v. Ernst & Young*, 507 U.S. 170 (1993):** Establishes the "operation or management" test for RICO liability, allowing for claims against corporate directors and officers who participate in directing the enterprise's affairs, even without direct involvement in predicate acts.
- ***Boyle v. United States*, 556 U.S. 938 (2009):** Defines a RICO enterprise as a continuing unit that functions with a common purpose, a structure that can be proven through evidence of a shared pattern of conduct like the "Standardized Harm Protocol."
- ***West v. Atkins*, 487 U.S. 42 (1988):** Supports the argument that private medical providers contracting with the state (e.g., via Medicare/Medicaid) can act "under color of state law," creating liability under 42 U.S.C. § 1983 for civil rights violations.

Burch v. HCA Healthcare et., al
CONFIDENTIAL LITIGATION WORK PRODUCT
National Class Action Blueprint 20

## **The RICO Enterprise Liability Framework (18 U.S.C. § 1962(c)-(d))**

Forensic analysis suggests that the evidence is consistent with the structure and function of a coordinated enterprise that would satisfy the elements of 18 U.S.C. § 1962(c) if proven in discovery. The **Systematic Chemical Restraint Protocol** may serve as primary evidence of such an enterprise, demonstrating a highly consistent, multi-stage method of patient abuse and fraud across facilities.

- **The Alleged RICO Enterprise Protocol:**
    1. **Patient Vulnerability Identification:** Target patients who are medically complex or have filed complaints.
    2. **Psychiatric Reclassification:** Falsely re-label organic medical conditions as behavioral issues to justify intervention.
    3. **Chemical Incapacitation:** Deploy potent sedatives (e.g., Ativan, B52 cocktail) without medical necessity or consent.
    4. **Neurological Suppression & Memory Impairment:** Render the patient unable to self-advocate or recall events.
    5. **Documentation Destruction & Falsification:** Systematically omit or falsify records to conceal the protocol and create a fraudulent basis for billing.
    6. **Unsafe Discharge:** Eject the incapacitated patient to eliminate a witness and mitigate liability.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

### **Meeting the Elements of RICO:**

- o **Enterprise ( ✅ ):** HCA Healthcare, Inc., and its network of 191 hospitals and ~2,500 ambulatory sites of care operating across 20 states and the United Kingdom, directed by corporate-level actors (e.g., regional Risk Management).

- o **Pattern of Racketeering ( ✅ ):** The consistent deployment of the chemical restraint protocol across multiple facilities may constitute a pattern of racketeering activity.

- o **Predicate Acts ( ✅ ):** The protocol itself appears to constitute multiple predicate acts, including healthcare fraud (18 U.S.C. § 1347), mail/wire fraud related to billing, and violations of federal patient protection statutes, which can form the basis for a RICO claim.

- o **Interstate Commerce ( ✅ ):** HCA operates a multi-state hospital network, processes interstate payments, and is publicly traded, satisfying this element.

The Nevada evidence provides a strong evidentiary basis to investigate, through discovery, a coordinated enterprise pattern across HCA facilities.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

## SECTION IV: MULTI-JURISDICTION FILING STRATEGY

A phased, multi-front litigation assault is designed to maximize pressure, streamline discovery, and demonstrate the national scope of the enterprise.

### Tier 1: High-Impact Venues

| Jurisdiction | HCA Facilities | Strategic Advantage | Lead Case Potential |
|---|---|---|---|
| **Tennessee (M.D. Tenn.)** | 18 | Corporate headquarters venue | ✅ High - enterprise discovery |
| **Florida (M.D. Fla.)** | 50 | Largest facility concentration | ✅ High - pattern demonstration |
| **Texas (S.D. Tex.)** | 54 | Historically pro-plaintiff juries | ✅ High - damages potential |
| **Virginia (E.D. Va.)** | 14 | Federal contracting exposure | ✅ Medium - regulatory pressure |

### Filing Coordination Strategy

- **Wave 1: Foundation Cases (Months 1-3):** File in Tennessee (corporate discovery), Florida (pattern), Texas (damages), and Nevada (template case).
- **Wave 2: Amplification Cases (Months 4-6):** File in Virginia, California, and Georgia to demonstrate geographic breadth.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

- **Wave 3: Consolidation Phase (Months 7-12):** File motion for Multidistrict Litigation (MDL) for coordinated discovery, followed by bellwether trial selection.

## SECTION V: DISCOVERY & EVIDENCE COORDINATION

The initial Nevada-based discovery has already established a proven template for identifying enterprise-wide misconduct and will serve as the roadmap for national discovery.

**Enterprise-Wide Discovery Strategy**

- **Corporate Level Discovery (from HCA HQ, Nashville, TN):**
  1. **Corporate Policies & Procedures:** All versions of policies on patient rights, chemical restraints, advance directives, and complaint handling.
  2. **Training Materials & Records:** Curricula, competency assessments, and compliance reports related to the above policies.
  3. **Risk Management Communications:** Enterprise-level incident reports, legal threat assessments, and communications from regional risk managers like Cynthia Cook.
  4. **Financial & Billing Records:** Documentation of billing systems, revenue cycle management protocols, and data related to insurance reimbursement for sedated patients.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

- **Facility-Level Discovery (Replicated Nationally):**
    - ○ **Nursing & Physician Documentation:** Restraint logs, Medication Administration Records (MARs), physician orders, and discharge notes.
    - ○ **IT Systems & EHR Audit Trails:** Forensic analysis of metadata to prove record alteration, suppression, and fraudulent entries.

## SECTION VI: STRATEGIC EXPERT WITNESS FRAMEWORK

A panel of nationally recognized experts will be retained to deconstruct HCA's defense and establish the enterprise-wide nature of the Standardized Harm Protocol.

| Expert Archetype | Qualifications | Anticipated Testimony Focus |
| --- | --- | --- |
| **Healthcare Administration & Compliance Expert** | Former hospital CEO or Chief Compliance Officer from a rival system. | Testimony will focus on how HCA's corporate policies and training materials deviate from industry standards and federal regulations, thereby creating the conditions for the Standardized Harm Protocol. Will opine that the observed patterns are indicative of corporate directive, not isolated employee error. |
| **Forensic Psychiatrist & Chemical** | Board-certified psychiatrist with expertise in | Will testify that the use of B52 cocktails and other sedatives in the documented cases was not medically |

| Expert Archetype | Qualifications | Anticipated Testimony Focus |
|---|---|---|
| **Restraint Specialist** | pharmacology and hospital restraint protocols. | justified, constituted a dangerous deviation from the standard of care, and served a punitive, rather than therapeutic, purpose. |
| **EHR & Digital Forensics Expert** | Specialist in healthcare IT systems (e.g., MEDITECH) and metadata analysis. | Will provide expert analysis of EHR audit trails to prove systematic documentation falsification, identify coordinated patterns of record alteration post-adverse event, and demonstrate spoliation of evidence. |
| **RICO & Corporate Governance Expert** | Law professor or former federal prosecutor specializing in organized crime and corporate fraud. | Will opine on how HCA's corporate structure, communication channels, and pattern of conduct are consistent with the legal definition of a RICO enterprise under 18 U.S.C. § 1962. |

## SECTION VII: DAMAGES & FINANCIAL EXPOSURE

The blueprint's power lies in its ability to multiply HCA's exposure from a single case into an enterprise-ending cascade of liability through class action and RICO mechanisms. Based on preliminary modeling and outcomes in similar healthcare litigation, potential exposure could range significantly depending on class scope, facility count, and future discovery.

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**

**Class-Wide Damages Modeling**

- **Conservative Estimate:**
  - **Affected Patients:** 2 million annually
  - **Average Damages:** $1,000 per patient
  - **Potential Annual Exposure:** $2 billion
  - **Potential Multi-Year Liability: $6-8 billion**
- **Aggressive Estimate:**
  - **Affected Patients:** 5 million annually
  - **Average Damages:** $2,000 per patient
  - **Potential Annual Exposure:** $10 billion
  - **Potential Multi-Year Liability: $30-40 billion**

## RICO Enhancement

The RICO statute provides for treble (3x) damages and attorney's fees, creating a catastrophic financial risk.

- **Potential Conservative RICO Total: $18-24 billion**
- **Potential Aggressive RICO Total: $90-120 billion**

## SECTION VIII: DATA VISUALIZATION & FORENSIC APPENDICES

To supplement written filings, a series of powerful visual exhibits will be developed to make the patterns of misconduct undeniable and easily understood by judges, juries, and regulatory bodies. These will be prepared for use in motions, hearings, and trial.

Burch v. HCA Healthcare et., al
CONFIDENTIAL LITIGATION WORK PRODUCT
National Class Action Blueprint 20

- **Appendix A: The Standardized Harm Protocol Flowchart:** A visual diagram mapping the six-step protocol from patient admission to unsafe discharge, demonstrating the decision points where medical ethics and federal law were violated.

- **Appendix B: The 48-Hour Retaliation Timeline:** A graphic timeline correlating the exact date and time of legal notices sent to HCA with the subsequent adverse actions taken against the patient, visualizing the cause-and-effect relationship of the retaliation.

- **Appendix C: Enterprise Hot Spot Map:** A national map of HCA facilities, with data-driven heat maps illustrating reported hotspots for chemical restraint usage, patient complaints, and billing anomalies, providing a compelling visual argument for the enterprise-wide nature of the conduct.

- **Appendix D: EHR Forensic Analysis Report:** A summary of the digital forensics expert's findings, using screenshots and metadata callouts to visually demonstrate record falsification and spoliation.

- **Appendix E: The Parallon "Shell Game" Map** A structural diagram visualizing the corporate architecture discovered in Nevada: Top Tier: HCA Healthcare (Parent) & Parallon Enterprises (Holding). Connection: Direct line connecting Managers at One Park Plaza. Middle Tier (The Functional Nodes): Four parallel boxes for Business Solutions, Health Info, HealthTrust, and PTS Solutions. Bottom Tier (The Local Nexus): All lines converging on the 2300 West Sahara Ave (Regus) address and the SilverFlume Registration Date (Dec 2011). Caption: "Coordinated Liability Fracture: Defendants utilize simultaneous incorporation and virtual offices to segment the fraud lifecycle."

## SECTION IX: REGULATORY & CRIMINAL IMPLICATIONS

Civil litigation will run parallel to coordinated referrals to federal agencies, potentially triggering investigations that could cripple HCA's operations.

- **Department of Justice (DOJ):** Potential investigation for Healthcare Fraud (18 U.S.C. § 1347), Civil Rights Violations (18 U.S.C. § 242), and RICO Conspiracy (18 U.S.C. § 1962).
- **Centers for Medicare & Medicaid Services (CMS):** Investigation for violations of provider agreement conditions (42 C.F.R. § 482.13), leading to potential **program exclusion and termination of federal funding** enterprise-wide.
- **HHS - Office of Inspector General (OIG):** Civil monetary penalties, imposition of a Corporate Integrity Agreement, and exclusion of individual providers.
- **Congressional Oversight:** Referrals to the House Energy and Commerce and Senate HELP Committees, prompting public hearings, CEO testimony under oath, and legislative action.

## SECTION X: SEC & SHAREHOLDER ACCOUNTABILITY STRATEGY

As a publicly-traded entity (NYSE: HCA), the corporation is vulnerable to a parallel line of attack targeting its obligations to shareholders and financial markets.

- **Securities Fraud Exposure (Rule 10b-5):** The coordinated, enterprise-wide misconduct alleged herein constitutes a material risk to HCA's business

operations, revenue, and regulatory standing. Failure to disclose the existence and financial implications of this risk to investors in SEC filings (e.g., 10-K, 10-Q) could constitute securities fraud. A coordinated referral will be made to the SEC's Division of Enforcement.

- **Shareholder Derivative Actions:** The alleged conduct represents a breach of the fiduciary duties of care and loyalty by HCA's Board of Directors and executive officers. A strategy will be implemented to support shareholder derivative lawsuits, which seek to hold directors and officers personally liable for the financial and reputational harm caused to the corporation by their failure to halt illegal activity. This opens a direct line of attack on the personal liability of HCA's leadership.

## CONCLUSION: BLUEPRINT FOR LITIGATION

This document is an operational plan for litigation. The framework outlined herein details the inevitable, multi-front litigation and regulatory strategy against HCA Healthcare. The evidence of a coordinated enterprise is strongly indicated, and the Nevada case provides the template for its nationwide investigation. The implementation of this national class action and RICO framework will proceed, potentially triggering parallel federal regulatory and law enforcement investigations designed to dismantle the alleged enterprise, secure justice for its victims, and permanently alter the landscape of corporate healthcare accountability. The consequences for HCA—financial, regulatory, and potentially criminal—could be severe and unavoidable.

## **DECLARATION**

I, Jade Riley Burch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that this blueprint represents a comprehensive framework for nationwide class action and RICO litigation against HCA Healthcare, Inc., based upon systematic, fraudulent, and harmful protocols documented in its Nevada facilities and replicable across the enterprise. This blueprint is a litigation-planning document and does not assert factual allegations beyond those contained in the operative complaint. This Blueprint does not modify, amend, or supplement the factual allegations of the operative Complaint, and exists solely to organize, analyze, and present litigation strategy. This blueprint will be implemented immediately, utilizing HCA's own evidence as the foundation for enterprise-wide liability.

Executed this 25th day of November, 2025, in Las Vegas, Nevada.

/s/ Jade Riley Burch

**Jade Riley Burch**
*Pro Se Plaintiff*

**Burch v. HCA Healthcare et., al**
**CONFIDENTIAL LITIGATION WORK PRODUCT**
**National Class Action Blueprint 20**