Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Jade Riley Burch,

        Plaintiff.

vs.

HCA Healthcare, Inc., et al.,

        Defendants.

Case No.: 2:25-cv-01408-JAD-MDC

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Defendants' Opposition (ECF No. 76) avoids the merits entirely. Defendants do not identify a single incorrect citation, a single fabricated allegation, or a single factual inconsistency in the proposed Second Amended Complaint. Instead, they attack process, filing volume, and a mandatory AI disclosure they know was required by this Court's standing order.

The Ninth Circuit grants leave to amend with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). That is the controlling standard. Everything in Defendants' opposition must be measured against it, and none of it survives that measurement.

The proposed SAC is grounded in certified medical records, PAD documentation, and billing data Defendants themselves produced. Their opposition never disputes the substance of those documents. Defendants ask the Court to freeze this case on an outdated complaint while simultaneously arguing that the outdated complaint is deficient. That contradiction alone warrants granting leave to amend.

### I. DEFENDANTS MISSTATE THE BASIS FOR THE AI DISCLOSURE

Defendants treat Plaintiff's standing-order-required AI notation as evidence of unreliability. They know better. Magistrate Judge Couvillier's Standing Order requires disclosure of AI-assisted drafting. Plaintiff complied.

Defendants do not claim the SAC contains fabricated case citations, false legal standards, or synthetic facts. They do not identify a single pleading defect tied to the disclosure. Instead, they rely on innuendo, an argument federal courts have consistently rejected. **Rule 15 evaluates the content of a pleading, not the tool used to draft its language.** The facts underlying the SAC arise from certified medical records, billing data, PAD documentation, and the parties' own litigation productions. None of that was generated by artificial intelligence.

Defendants' conflation of drafting assistance with authorship is deliberate. It is designed to sidestep the real problem: they have no substantive challenge to the evidentiary foundation of the SAC.

**No AI system in existence takes a command and produces a cross-referenced billing discrepancy analysis drawn from certified medical records, maps a pre-litigation versus litigation production delta, traces a subsidiary billing pathway through Parallon Business**

**Solutions, identifies obsolete discriminatory diagnostic coding in a 2025 medical record, or constructs a 12-predicate-act RICO matrix from raw institutional data spanning multiple facilities and multiple years.** Those tasks require a human being who has read every record, understands the data architecture behind the documents, and knows what the discrepancies mean. Plaintiff did that work. Artificial intelligence assisted only with phrasing and structure, the same assistance attorneys receive from associates, paralegals, and legal research platforms every day.

Plaintiff disclosed what she was required to disclose. Defendants converted an act of compliance into a credibility attack. That says more about the weakness of their substantive opposition than it does about the integrity of the SAC. Defendants' own brief was prepared with the assistance of research platforms, legal templates, and associate labor. They are not required to disclose that. **Plaintiff was required to disclose her tools and did. The double standard embedded in this argument should not go unnoticed by the Court.**

There is one additional fact the Court should have before it. Magistrate Judge Couvillier's Standing Order, Section III, mandates that all filings include a certification immediately above the signature line disclosing whether or not artificial intelligence was used to prepare the filing. **The Standing Order states expressly that failure to include the certification may result in sanctions. Plaintiff's SAC includes the required certification. Defendants' opposition brief (ECF No. 76) does not.**

Defendants attacked Plaintiff for complying with a standing order requirement they themselves failed to satisfy in the very brief making that attack. **The Court should not overlook that asymmetry.**

## II. THE FILING COUNT ARGUMENT IS MISLEADING
## AND LEGALLY IRRELEVANT

Defendants' filing count is manufactured. **A filing count is not a legal standard.** A review of the actual docket exposes the manufactured nature of Defendants' count. Of the entries Defendants attribute to Plaintiff as evidence of misconduct:

**ECF No. 70** is the Joint Discovery Plan. Defendants filed it. They counted their own filing.

**ECF No. 71** is the Scheduling Order signed by Magistrate Judge Couvillier. The Court generated it. Defendants counted a judicial order as Plaintiff's misconduct.

**ECF No. 73** is the Order Denying ECF No. 62, also signed by Magistrate Judge Couvillier. Again, a court-issued order counted as Plaintiff's improper conduct.

**ECF Nos. 62, 63, and 67** are Plaintiff's Emergency Motion for Order to Show Cause re: Failure to Preserve Evidence, a corrective errata, and the reply in support. These filings were directed at Defendants' own preservation non-compliance. Plaintiff was required to bring that issue before the Court. Characterizing evidence-preservation enforcement as vexatious conduct is not a legal argument. It is an attempt to penalize Plaintiff for holding Defendants accountable.

**ECF No. 69** is the Notice of Completion of the Rule 26(f) Conference, a mandatory filing.

**ECF No. 65** is a notice of Defendants' own failure to disclose their insurance carrier in the Certificate of Interested Parties as required by Local Rule 7.1-1, a compliance deficiency that Plaintiff was obligated to bring to the Court's attention.

**ECF No. 75**, the errata Defendants separately characterize as evidence of misconduct, exists because of Defendants' own production format. Defendants produced the certified Southern Hills Hospital November 2023 records as 250 pages of non-searchable, image-based PDF files. Plaintiff was required to independently perform optical character recognition processing on the entire production before meaningful review and forensic comparison could be conducted. Only after completing that OCR processing did the documentary evidence identifying the direct roles of Nicole Mann, RN, and Jonathan Wirjo, DO, in the initiation and maintenance of Plaintiff's involuntary psychiatric detention become identifiable. That evidence was contained exclusively within administrative forms, legal hold documentation, and electronic order entries that Defendants' own production format had rendered inaccessible. Defendants produced inaccessible records, made an additional defendant's role discoverable only through independent processing of those records, and then cited the resulting corrective filing as proof of litigation misconduct. The Court should not reward that approach.

What remains after removing Defendants' own filing, two court orders, mandatory compliance filings, legitimate preservation enforcement, and a corrective errata necessitated by Defendants' own production format is not evidence of chaos. It is the ordinary activity of a plaintiff diligently prosecuting a complex case against defendants who have complicated that task at every turn.

Defendants cite no authority holding that a pro se litigant forfeits amendment rights by maintaining a complete and active record in complex multi-defendant litigation. The reference to Plaintiff's separate federal action against Navy Federal Credit Union is improper character evidence and has no place in a Rule 15 analysis. Each case stands on its own record.

Nothing in Defendants' brief establishes bad faith. It establishes only that Plaintiff has actively and diligently prosecuted a complex multi-facility case against four represented corporate defendants.

### III. DEFENDANTS' REQUEST TO DEFER RULING IS A PROCEDURAL BAR TO AMENDMENT IN DISGUISE

Defendants ask the Court to defer ruling on the motion for leave to amend until after ruling on motions to dismiss that have been fully briefed since October 10, 2025. That request, if granted, would weaponize Defendants' own briefing timeline as a mechanism to prevent Plaintiff from correcting the very deficiencies Defendants identified.

Rule 15 exists precisely to ensure that cases are decided on their merits rather than on the limitations of an outdated pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants' proposal inverts that purpose. The Court should reject it.

### IV. THE PROPOSED SAC IS NOT FUTILE

**Futility means a claim cannot be cured by any amendment. Defendants do not, and cannot, meet that standard.**

**A. The AI Disclosure Argument Is Legally Meaningless.**

Defendants cite no authority holding that AI-assisted drafting renders a complaint futile. No such authority exists. The argument fails as a matter of law.

**B. The RICO Claim Is Adequately Pled at the Amendment Stage.**

The proposed SAC alleges discrepancies between pre-litigation and litigation medical records, multiple interstate billing transmissions, Parallon Business Solutions' claim-routing role,

HealthTrust Workforce Solutions' staffing directives, and coordinated risk-management conduct directed across multiple facilities by HCA's corporate infrastructure.

Defendants dispute none of these factual allegations. Their opposition attacks only the legal framing, which is not the futility inquiry. Futility requires that the pleading be incurable by any additional facts. Where allegations are document-based, specifically identified, and drawn from the defendant's own productions, futility cannot be established.

**C. The Statute-of-Limitations Argument as to Dr. Alshaikh Fails on Four Independent Grounds.**

**First: Plaintiff Filed a Formal Preservation Notice Before the Limitations Period Expired.**

On October 17, 2025, Plaintiff filed a Notice of Preservation (ECF No. 60) expressly identifying the November 30 through December 4, 2023 Southern Hills encounter, notifying Defendants that Plaintiff intended to assert that incident as a claim in this action, and stating on the face of the filing that it was submitted to avoid any statute-of-limitations defense. Defendants received formal written notice of the claim within the limitations period, on the docket of this case, with specificity as to dates, facility, and legal theory. They cannot now claim prejudice or surprise. **Defendants had the exact notice Rule 15(c) requires: who, what incident, what dates, and that Plaintiff intended to assert the claim in this action.**

**Second: The Amendment Relates Back Under Rule 15(c)(1)(B).**

The original complaint alleged an enterprise-wide pattern of unlawful restraints, chemical sedation without consent, PAD violations, discriminatory diagnostic coding, and corporate-directed misconduct across multiple Southern Hills encounters. The November 2023 involuntary hold is part of that same pattern of conduct, by the same institutional defendant, under the same

policies, causing the same category of harm. Rule 15(c)(1)(B) asks whether the new claim arises from the same conduct, transaction, or occurrence as the original pleading. It does. The relation-back doctrine does not require that the specific date appear in the original complaint. It requires that the defendant be on notice of the factual and legal theory. That notice existed from the date this action was filed.

**Third: Defendants Cannot Invoke a Limitations Bar They Manufactured.**

Plaintiff could not have identified Dr. Alshaikh by name before Defendants produced the records establishing his role. His identity was embedded in documents Defendants controlled, and his name appears in certified litigation production records that were not available to Plaintiff before this case was filed. A defendant cannot withhold the information necessary to identify a responsible party, delay its production, and then invoke the resulting limitations gap as a shield. **Rule 15(c)(1)(C) was designed for exactly this circumstance: where the defendant's own control over identifying information prevented timely naming.**

**Fourth: The Limitations Period Was Tolled by Fraudulent Concealment.**

The 2023 records existed in one form in Plaintiff's patient portal and emerged in a materially different form during litigation production, with altered diagnoses, delayed physician signatures, and missing restraint documentation. Where a defendant conceals the facts underlying a claim, the limitations clock does not begin to run until the plaintiff discovers the concealment. Plaintiff discovered the discrepancy during this litigation. The statute was tolled accordingly. Defendants cannot benefit from their own concealment.

**Any one of these grounds independently defeats the limitations argument.**

Together, they are conclusive. A limitations defense as to one defendant on one count is not a basis to deny leave to amend the complaint in its entirety.

**D. The Remaining Statutory Claims Are Supported by Documented Institutional Conduct.**

Defendants' strategy throughout their opposition is transparent: recharacterize every federal claim as a disguised medical malpractice action. The motivation is equally transparent. Medical malpractice in Nevada requires expert testimony, carries a two-year limitations period, and operates under a legal framework that would eliminate Plaintiff's RICO, ADA, EMTALA, battery, and civil rights claims in a single stroke. If Defendants can convince this Court that Plaintiff merely disagrees with her doctors, they avoid the federal statutory framework entirely.

The record does not support that recharacterization. Consider what Defendants actually do with each physician:

Dr. Wright billed for 37 minutes of critical care that an eyewitness will testify was never performed, and a separate out-of-network entity submitted a professional claim for those same fabricated services. Defendants reframe this as a disagreement with documentation. Submitting a claim for services not rendered is not a documentation dispute. It is billing fraud.

Dr. Alshaikh authorized continued involuntary confinement while a notarized Psychiatric Advance Directive withdrawing consent sat in the record unacknowledged. Defendants reframe this as a disagreement with psychiatric treatment decisions. Confining a patient against a legally executed advance directive is not a treatment decision. It is a deprivation of liberty.

Dr. Yaghoobian failed to intervene during a documented period of sustained oxygen desaturation while a caregiver repeatedly warned staff. Defendants reframe this as a belief that

care was inadequate. Ignoring documented physiological deterioration over a caregiver's repeated warnings is not a clinical judgment call subject to malpractice framing. It is institutional indifference with documented consequences.

The SAC does not allege that Plaintiff's physicians made wrong clinical decisions. It alleges that specific institutional actors engaged in specific documented conduct — fraudulent billing, unlawful confinement, discriminatory coding, and evidence of coordinated concealment — that falls squarely within the federal statutory framework Plaintiff has invoked. Futility cannot be established where the claims rise and fall on factual disputes the Court is required to accept as true at this stage.

## V. DEFENDANTS' OWN BRIEF CONFIRMS THE SPOLIATION THEORY AND DOES NOT DEFEAT THE BATTERY CLAIM

**A. Defendants Concede the Record Discrepancies Exist.**

In opposing the RICO claim, Defendants describe Plaintiff's predicate acts as allegations of "discrepancies" between records received before litigation and records produced during litigation. ECF No. 76 at 10. Defendants do not deny those discrepancies exist. They offer no explanation for them. They argue only that Plaintiff cannot establish intent.

At the Rule 15 stage, Plaintiff is not required to prove intent. She is required to plead plausibility. When a defendant's own litigation production conflicts with its pre-litigation records, and the defendant offers no explanation for that conflict, the inference of intentional alteration is not speculative. **Defendants' concession of the discrepancy, coupled with their refusal to explain it, places the allegation squarely within Rule 12(b)(6) plausibility.** Their silence on the substance of the discrepancies is itself telling.

**B. The Battery Argument Acknowledges the PAD and Fails to Address Its Legal Effect.**

Defendants cite *Humboldt General Hospital v. Sixth Judicial District Court* for the proposition that medical battery requires performance of a procedure without the patient's consent. They simultaneously acknowledge that Plaintiff executed a Psychiatric Advance Directive withdrawing consent absent satisfaction of specific prerequisites.

Defendants do not dispute that the PAD existed, that it was notarized, that it was presented, or that it was not followed. Their sole response is that Plaintiff has "framed" the claim incorrectly. **Whether a properly executed PAD constitutes a legally operative withdrawal of consent under Nevada law is a question that cannot be resolved against Plaintiff at the amendment stage.** That is a merits argument. It is not a futility argument.

## VI. LOCAL RULE 15-1(a) COMPLIANCE

If the Court determines that the proposed SAC requires technical correction to comply with Local Rule 15-1(a), Plaintiff is prepared to file a consolidated corrected version immediately. Any such defect is curable and does not provide a basis to deny amendment.

## CONCLUSION

Defendants' opposition rests on three propositions: that Plaintiff's compliance with a standing order disclosure requirement is somehow disqualifying, that an active docket establishes vexatious conduct, and that the Court should rule on motions to dismiss an outdated complaint before permitting Plaintiff to correct it. None of these propositions has merit.

The opposition does not rebut the certified medical records. It does not rebut the billing discrepancies. It does not rebut the PAD documentation. It does not rebut the institutional

conduct the SAC documents across multiple facilities and multiple years. It does not identify a single factual error in the proposed pleading.

**Rule 15 was designed for cases exactly like this, where additional facts, documents, and context sharpen the issues before the Court.** Because justice requires that cases be decided on their merits, Plaintiff respectfully requests that the Court grant leave to file the Second Amended Complaint.

_____
I certify that Artificial Intelligence was used to prepare the foregoing document.

DATED: March 6th , 2026

Respectfully submitted,

/s/ Jade Riley Burch
**JADE RILEY BURCH**
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6th , 2026, I electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record registered to receive electronic notifications in this case, including:

Michael E. Prangle
Zachary J. Thompson
Hall Prangle, LLC
1140 N. Town Center Drive, Suite 350
Las Vegas, NV 89144

*Counsel for HCA Healthcare, Inc.;*
*Sunrise Hospital & Medical Center, LLC;*
*MountainView Hospital;*
*and Southern Hills Hospital & Medical Center*

/s/ Jade Riley Burch
**JADE RILEY BURCH**
Plaintiff, Pro Se