Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| | Case No.: 2:25-cv-01408-JAD-MDC |
| Jade Riley Burch, | |
| Plaintiff. | **PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS FOR SPOLIATION OF EVIDENCE, FRAUDULENT CERTIFICATION OF AN ALTERED RECORD, AND FRAUD ON THE COURT** |
| vs. | |
| HCA Healthcare, Inc., et al., | |
| Defendants. | **(Southern Hills Hospital -- November 30 through December 4, 2023 L2K Encounter)** |

## <u>INTRODUCTION</u>

**Plaintiff preserved the real record. HCA restricted access.**
**Then HCA certified a fabricated one.**

That is the entire case on sanctions. Everything that follows proves it.

This is not a motion for lesser relief. Plaintiff moves this Court for terminating sanctions -- entry of default judgment against Defendants on all claims arising from the November 30 through December 4, 2023 hospitalization at Southern Hills Hospital -- because no lesser sanction can remedy what Defendants have done.

Defendants did not misplace a document. They did not fail to timely produce a file. They executed a systematic, multi-layered falsification of a clinical medical record, submitted that falsified record to this Court under oath, withheld the only documentary evidence that could fully prove the falsification, and restricted Plaintiff's patient portal access after she had already preserved the authentic record from their own system. Every alteration moved in the same direction -- away from a patient who stabilized and recovered, and toward a patient who was chronically and dangerously mentally ill. Every change served Defendants' litigation interests. None was accidental.

On December 1, 2023 -- less than 20 hours after Plaintiff arrived as an involuntary patient -- a named administrative user at Southern Hills Hospital executed a targeted data extraction of Plaintiff's medical record and exported it to a manually created, admission-specific OneDrive directory bearing the facility code and admission date. That event appears nowhere in the 249-page certified production. It marks the moment the preservation duty attached. It proves that someone at Southern Hills was handling this record for non-clinical purposes before the treating psychiatrist had completed a single full evaluation.

Plaintiff preserved HCA's own records from HCA's own system on July 31, 2025 -- **four days before this lawsuit was filed on August 4, 2025.** No lawsuit existed. No case number had been assigned. No opposing counsel had appeared. Plaintiff was a patient downloading her own records from a hospital portal. Those records show a patient in temporary situational crisis who stabilized rapidly with sleep and medication, was discharged with a low risk assessment, and demonstrated insight and intent to follow her outpatient care plan.

The certified production Defendants submitted -- signed under oath by **Custodian of Records L. Stiles, HMD on October 24, 2025** -- shows something else entirely. It shows a patient with chronic severe psychiatric disorder, active delusions, dangerous psychotic features, altered mental status, and behavior requiring an emergency court petition. That portrait was constructed from automated system inputs that predated the treating physician's final evaluation, unsigned and undated risk forms, a ghost progress note bearing a placeholder signature, regenerated vital signs, phantom medication orders, a deleted chemical restraint record, rewritten mental status findings, removed physician findings favorable to Plaintiff, erased gender identity and pronouns, and a sworn court petition produced not as the native digital filing it was but as a reconstructed image scan with 2024 to 2025 metadata.

**L. Stiles, HMD signed her name to that. She certified it as a true and correct copy of the original 2023 record. The ABS LIVE and CPCS LIVE notations printed on the face of her own certification prove it was not.**

**ABS LIVE means not original. L. Stiles certified it as original. That is perjury or reckless indifference. Both are fraud on the court. This certification is independently sufficient to warrant terminating sanctions without reference to any other alteration documented in this motion.**

Plaintiff's background includes decades of experience in data systems and a decade of consultation with federal law enforcement on cybercrime investigations, which informed her preservation efforts and enabled her to identify the anomalies documented herein. She did not stumble onto these discrepancies. She knew what to preserve, when to preserve it, and exactly what the system notations on Defendants' own documents mean.

1

2

**That is fraud on the court.** The Court's response to fraud on the court is not an adverse inference. It is termination.

3

4
## STATEMENT OF FACTS

5

6
**A. The Hospitalization**

7

8
Plaintiff was admitted to Southern Hills Hospital under an L2K psychiatric hold on

9
November 30, 2023, and discharged on December 4, 2023. The treating psychiatrist documented

10
Plaintiff's condition throughout the admission and completed a discharge evaluation on

11
December 4, 2023. The treating psychiatrist's own contemporaneous notes recorded Plaintiff's

12
thought content as showing no delusions elicited, her mood as significantly improved, her

13
behavior as calm, cooperative, and conversational, and her clinical picture as a temporary

14
situational crisis responding rapidly to sleep and medication. The treating psychiatrist

15
documented that Plaintiff demonstrated insight and intended to follow her outpatient care plan.

16
The facility's own risk-stratification system assessed Plaintiff's readmission risk at discharge as

17
LOW (0.18) and her suicide risk as low, at 11:56 AM on December 4, 2023.

18

19

20
Fifty-three minutes later, at 1:25 PM on December 4, 2023, Southern Hills Hospital filed

21
a sworn Petition for Court-Ordered Admission declaring Plaintiff presented a substantial

22
likelihood of serious harm. The clinical foundation for that petition -- Schizoaffective Disorder

23
and active delusions -- was generated not by the treating psychiatrist but by an automated system

24
interface feed that locked the diagnosis on December 3, 2023, before the treating psychiatrist's

25
discharge evaluation existed. The petition's clinical basis directly contradicted the treating

26
psychiatrist's findings made the same morning. Plaintiff was never notified of the petition, the

27
hearing, or the appointment of a Public Defender.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B. The OneDrive Extraction -- The Preservation Duty Attached December 1, 2023**

Before the lawsuit, before Orber, before the systemic crisis email, before any portal restriction -- **there is a single audit event that establishes exactly when HCA's preservation duty attached and proves that someone at Southern Hills was handling this record for non-clinical purposes from the second day of Plaintiff's involuntary admission.**

The Southern Hills audit log (Exhibit 22-A, Bates No. SHH-AT000012) documents the following event on December 1, 2023 -- less than 20 hours after Plaintiff arrived as an involuntary patient under an L2K hold:

> **User R.SNV.EC executed a "Physician Data Capture Audit" and exported the resulting dataset to a manually created, admission-specific OneDrive directory:**
>
> **C:\Users\CYO4949\OneDrive - HCA Healthcare\Documents\PCP SH 1130**

This folder name is not system-generated. It is not a default path. It is not the product of a routine automated process. It references the facility (SH) and the admission date (1130 -- November 30). Someone manually created an admission-specific export folder on Day 2 of a four-day involuntary psychiatric hold, identified it by facility and admission date, and exported patient data to it under a named administrative user account.

**This event establishes three things that are independently dispositive.**

First, **the preservation duty attached December 1, 2023** -- the moment a named administrative user created a manually labeled, admission-specific data extraction folder for this encounter. That is not routine clinical documentation. That is targeted record handling. The duty to preserve

attached at that moment, more than 22 months before L. Stiles certified the production on October 24, 2025.

Second, **it proves deliberate human intervention in this record from Day 2.** Routine automated system exports do not produce manually named, admission-specific subfolders with facility codes and admission dates. User R.SNV.EC made a choice to extract this data, name the folder, and store it in a personal OneDrive directory associated with workstation CYO4949. That choice was made while Plaintiff was still an involuntary patient who had not yet been evaluated by the treating psychiatrist whose findings would later contradict every automated diagnosis in the certified production.

Third, **this event appears nowhere in the 249-page certified production.** L. Stiles certified that production as a complete and accurate record of the admission. The audit log she was certifying documents a targeted data extraction by a named administrative user on Day 2. That extraction is not referenced, disclosed, or explained anywhere in the 249 pages she signed her name to. A custodian who certifies a record as complete without disclosing a documented Day 2 administrative data extraction has not performed the diligence her certification requires. The identity of User R.SNV.EC and the owner of workstation CYO4949 have not been disclosed. The contents of the OneDrive directory C:\Users\CYO4949\OneDrive - HCA Healthcare\Documents\PCP SH 1130 have not been produced. The native audit log that would document every subsequent access to that directory has not been produced. These are among the specific categories of ESI Plaintiff requested and defense counsel confirmed possession of on January 16, 2026.

**C. Plaintiff's Pre-Litigation Portal Preservation**

On July 31, 2025 -- **four days before this lawsuit was filed on August 4, 2025 --** Plaintiff exported two comprehensive versions of her medical records from the encounter directly from HCA's MyHealthONE patient portal: Portal Version 1 (112 pages, "Visit Summary - Psych") and Portal Version 2 (114 pages, "Visit Summary - Psyche2"). Both bear HCA-generated export timestamps on the face of the document confirming the date and time of export. Neither was created, influenced, or altered by Plaintiff. Both are native outputs of HCA's own system. They were not pulled in anticipation of litigation. No lawsuit existed. No case number had been assigned. No opposing counsel had appeared. Plaintiff was a patient downloading her own records from a hospital portal four days before she filed anything. They predate the certified litigation production by nearly three months.

In September 2025, Plaintiff attempted to access the same records and received only an approximately 6-page summary. The comprehensive psychiatric modules that were fully accessible in July 2025 -- including MSE findings, progress notes, psychiatrist narratives, and RN flowsheets -- were no longer available. The full Visit Summary export pathway had been closed. This restriction occurred after Plaintiff had already preserved the complete clinical record.

**D. The Certified Litigation Production and the Identity of the Certifying Custodian**

On October 24, 2025, **L. Stiles, HMD, Custodian of Records for Southern Hills Hospital**, signed and notarized a certification of a 249-page production bearing Bates stamps SHH-M000202 through SHH-M000451. The certification declared the records to be true and correct copies of all original records maintained by Southern Hills Hospital, prepared in the

1    ordinary course of business, with no material omissions of which the Custodian was aware. The
2    Custodian simultaneously included a disclaimer that the records may be incomplete and/or
3    preliminary.
4
5        The production bears the notation **"Southern Hills Hospital ABS LIVE"** on SHH-
6    M000213 and **"Southern Hills Hospital CPCS LIVE"** on SHH-M000266 through SHH-
7    M000280. The same audit log that Defendants produced as Exhibit 22-A documents that on
8    December 1, 2023, User R.SNV.EC executed a Physician Data Capture Audit and exported
9    Plaintiff's records to the manually named OneDrive directory C:\Users\CYO4949\OneDrive -
10   HCA Healthcare\Documents\PCP SH 1130 while Plaintiff remained an involuntary patient. That
11   event -- documented in Defendants' own audit log -- does not appear anywhere in the 249 pages
12   L. Stiles certified as a complete and accurate record. A custodian certifying a production as
13   complete while omitting a documented Day 2 administrative data extraction from that same
14   production has not performed the diligence her oath requires. The certification is false on its face
15   for this reason as well. ABS refers to Abstracting -- the billing, coding, and DRG assignment
16   module of the Meditech EHR system. LIVE indicates that the document was rendered from
17   current, live system values at the time of printing, not from a frozen historical archive. In a live
18   Meditech environment, current diagnoses, current problem lists, and current coded data
19   dynamically populate the headers and coding fields of records associated with historical
20   encounters at the time those records are printed. **The document L. Stiles certified was not a**
21   **copy of the 2023 clinical record. It was a live-rendered reconstruction of how that record**
22   **appeared in the HCA Meditech database in October 2025.** L. Stiles certified it as the original.
23   That certification is false.
24
25
26
27
28

**E. Defense Counsel's Confirmation of the Audit Trail**

On January 16, 2026, Plaintiff participated in a meet and confer telephone conference with defense counsel Zachary Thompson of Hall Prangle and Schoonveld LLC. During that call, Mr. Thompson confirmed that Defendants possessed an Excel-format audit trail for the Southern Hills encounter. He stated words to the effect of "let me click to open it" and confirmed "so I have that." He further stated: **"You requested it from Southern Hills here for that particular visit. Obviously, we're going to produce that to you."** In reliance on that representation, Plaintiff granted Defendants a two-week extension on discovery responses. What was subsequently produced was audit summary fragments in report format only. The native Excel audit trail Mr. Thompson confirmed he possessed on January 16, 2026 has never been produced. Summary reports are not the equivalent of native field-level audit logs. They contain pre-selected fields curated by the producing party. They do not contain field-level before-and-after values, deletion event records, complete system account activity, or the full chronological access history that a native audit export would contain. The substitution of summary fragments for the native Excel file Mr. Thompson confirmed he possessed is not an adequate production. It is a deliberate withholding of the best evidence by the party with the most to hide.

**F. The Five-Stage Spoliation Sequence**

The complete timeline admits no innocent interpretation:

**December 1, 2023:** User R.SNV.EC executes a targeted Physician Data Capture Audit and exports Plaintiff's records to a manually named admission-specific OneDrive directory while Plaintiff remains an involuntary patient. Preservation duty attaches. This event does not appear in the certified production.

**July 31, 2025:** Plaintiff downloads the full psychiatric record from HCA's own portal -- four days before filing suit. 112 and 114 pages of contemporaneous clinical content. Original diagnoses. Treating physician findings. No ABS LIVE notation. No Schizoaffective coding. The authentic baseline record. No lawsuit exists at the time of export.

**September 2025:** Plaintiff attempts re-access. Portal shows only approximately 6 pages. The full Visit Summary export pathway is gone. Deep psychiatric modules are inaccessible. Access has been restricted after Plaintiff already preserved the complete record.

**January 16, 2026:** Defense counsel confirms possession of a native Excel audit trail and commits to producing it. A two-week extension is granted in reliance. Summary fragments are produced instead. The native Excel file is never produced.

**October 24, 2025:** L. Stiles, HMD certifies a 249-page ABS LIVE-regenerated production as a true and correct copy of the original 2023 record. The production contains materially altered diagnoses, rewritten clinical findings, inserted documents, deleted restraint records, regenerated vitals, phantom medication orders, a reconstructed court petition, and erased gender identity information. The Day 2 OneDrive extraction is not disclosed.

**Targeted extraction on Day 2. Full record preserved by Plaintiff before filing. Access restricted. Counsel confirms audit trail and withholds it. Altered record certified without disclosing the extraction. That is not a database migration artifact. That is a five-stage spoliation timeline with a named administrative user at the beginning, a named defense counsel in the middle, and a named certifying official at the end.**

## LEGAL STANDARD

**A. Terminating Sanctions Under Rule 37(e)(2)**

Federal Rule of Civil Procedure 37(e)(2) authorizes the Court to impose terminating sanctions -- dismissal or default judgment -- when electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it and the party acted with the intent to deprive the opposing party of the information's use in the litigation. Where the Court finds intent, it may presume the lost information was unfavorable, instruct the jury accordingly, or dismiss the action or enter default judgment. Intent may be inferred from circumstantial evidence, including patterns of non-preservation, selective production, and obstruction. Colonies Partners, L.P. v. Cty. of San Bernardino, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020).

When the Court finds intent under Rule 37(e)(2), terminating sanctions are available without an additional finding of prejudice. **Every alteration in the certified production favors Defendants. Not one favors Plaintiff. Nothing is neutral.** Diagnoses were substituted to make Plaintiff appear more dangerous. Clinical findings were rewritten to make Plaintiff appear more impaired. Recovery language was deleted to make Plaintiff appear less stable. Documents were inserted to retroactively justify adverse clinical conclusions. And the native audit logs -- the only evidence that would identify who made each change, when, and what the prior values were -- were withheld. **Every deviation, every deletion, every insertion, every regenerated value moves in the same direction -- against Plaintiff and in favor of Defendants. Not one moves the other way. If this pattern is not intentional, nothing is.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B. Terminating Sanctions Under the Court's Inherent Authority**

A court possesses inherent authority to impose sanctions, including terminating sanctions, for conduct constituting fraud on the court. Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991). Fraud on the court encompasses fabricating evidence, presenting altered records as genuine, and making false certifications to the court. In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999). The Ninth Circuit has affirmed terminating sanctions where a party's bad faith conduct strikes at the integrity of the judicial process and lesser sanctions would be inadequate to deter future misconduct and remedy present harm. Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995).

**C. False Certification Is Fraud on the Court**

An adverse inference or monetary sanction is the appropriate remedy when evidence is negligently lost. It is not the appropriate remedy when a party fabricates a substitute, has a named custodian certify it under oath as the original, and submits it to a federal court. **ABS LIVE means not original. L. Stiles certified it as original. That is perjury or reckless indifference. Both are fraud on the court.**

---

## ARGUMENT

I.    **STILES, HMD CERTIFIED A LIVE-RENDERED RECONSTRUCTION AS THE ORIGINAL 2023 RECORD, AND THAT CERTIFICATION IS INDEPENDENTLY SUFFICIENT TO WARRANT TERMINATING SANCTIONS**

The ABS LIVE and CPCS LIVE notations printed on the face of the certified production are system-generated identifiers that disclose the document's nature at the moment of printing. They confirm the production was rendered from a live Meditech database in October 2025 using

current system values, not from a frozen archive of the 2023 clinical encounter. L. Stiles, HMD certified this document as true and correct copies of all original records maintained by Southern Hills Hospital. That representation was false. The document's own system notations prove it.

The proof is not limited to system notations. The Visit Summary Plaintiff exported from HCA's portal in 2025 contains Plaintiff's 2025 address and 2025 diagnoses inside a document labeled as a 2023 medical record. This is not an error on Plaintiff's part. **HCA's EMR platform dynamically reconstructs historical encounters using present-day demographic and problem-list tables.** When Plaintiff exported the 2023 record in 2025, the system injected all diagnoses and demographic data that existed in 2025 into a document labeled as a 2023 record. This establishes two independent facts. First, HCA does not maintain immutable historical records and therefore cannot authenticate any retrospective encounter documentation without native audit-trail confirmation. Second, HCA failed to preserve the original 2023 record in the form it existed at the time of care. **A medical record that mutates to incorporate future diagnoses is not a preserved record. It is a reconstructed artifact. That is spoliation.** The Custodian certified this reconstructed artifact as a true and correct copy of the original.

**L. Stiles either reviewed the document she was certifying -- in which case she certified a known falsity -- or she signed a certification of authenticity without reviewing what she was authenticating.** Neither is consistent with good faith. Neither is consistent with the obligations of a records custodian submitting evidence to a federal court. A false certification submitted under oath to a federal court is not a discovery irregularity. It is a misrepresentation made to the Court by a named individual who can be held accountable for it. Terminating sanctions are warranted on this basis alone, independent of every other alteration documented in this motion.

**II.    THE DAY 2 ONEDRIVE EXTRACTION PROVES THE PRESERVATION
DUTY ATTACHED IN DECEMBER 2023 AND THAT HUMAN
INTERVENTION BEGAN BEFORE THE TREATING PSYCHIATRIST
COMPLETED A SINGLE FULL EVALUATION**

The audit log produced by Defendants as Exhibit 22-A documents that on December 1, 2023,
User R.SNV.EC executed a Physician Data Capture Audit and exported Plaintiff's records to the
manually named OneDrive directory C:\Users\CYO4949\OneDrive - HCA
Healthcare\Documents\PCP SH 1130. This was not a routine system function. Meditech does not
automatically generate manually named, admission-specific subfolders in personal OneDrive
directories. A human being made a choice to extract this data, name the folder by facility and
admission date, and store it in a personal cloud directory while Plaintiff remained an involuntary
patient.

**That choice was made on Day 2. The treating psychiatrist had not yet completed a
discharge evaluation. The automated coding interface had not yet locked the
Schizoaffective diagnosis. The petition had not yet been filed.** The record was already being
handled for purposes that went beyond routine clinical documentation, by a non-clinical
administrative user, within 20 hours of admission.

The identity of R.SNV.EC and the owner of CYO4949 have not been disclosed. The contents
of the OneDrive directory have not been produced. The native logs documenting every
subsequent access to that directory have not been produced. The Custodian certified the
production as complete without disclosing this event. Defense counsel confirmed possession of
the audit trail on January 16, 2026 and produced summaries instead.

The Court should order the immediate production of the identity of R.SNV.EC, the owner of CYO4949, and the complete contents of the OneDrive directory as a threshold matter, and should treat the failure to have produced these materials already as independent evidence of intent to deprive.

### III.    EVERY SUBSTANTIVE ALTERATION MOVES IN THE SAME DIRECTION AND SERVES DEFENDANTS' LITIGATION INTERESTS AT EVERY POINT

**A. Diagnosis Substitution with Automated Coding and Financial Motive**

The portal versions document Plaintiff's primary psychiatric diagnosis as Bipolar Disorder, Unspecified (F31.9). The certified production substitutes Schizoaffective Disorder, Unspecified (F25.9). The substitution was not made by a treating clinician. SHH-M000213 identifies the coder as INTERFACE -- an automated system feed designated HPF.FEED -- and the abstractor as CACUSER -- a system-level administrative account. No credentialed clinician assigned the Schizoaffective diagnosis. It was locked on December 3, 2023, while Plaintiff was still admitted, before the treating psychiatrist completed the discharge evaluation on December 4.

**Schizoaffective Disorder requires psychotic features including delusions as a diagnostic criterion.** The treating psychiatrist's discharge summary at SHH-M000294, dated December 4, 2023, states: thought content, no delusions elicited. That finding appears in the same certified production as the Schizoaffective code. The same 249-page document contains both a diagnosis that requires delusions and the treating physician's finding, in his own words, that no delusions were present. L. Stiles certified both pages as part of a complete and accurate record without disclosing the internal contradiction.

**Schizoaffective Disorder generates a higher Medicare and Medicaid reimbursement tier under DRG 41 than Bipolar Disorder.** The automated system assigned a diagnosis that

contradicts the treating physician, requires a clinical feature the physician documented was absent, and increases hospital reimbursement. The fraud served a financial purpose as well as a litigation purpose.

**B. Systematic Rewriting of Mental Status Examination Findings**

The portal versions document Plaintiff's thought process as coherent and goal directed. The certified production describes her thought process as very abstract with flight of ideas. **These are clinically opposite findings.** A patient cannot be simultaneously coherent and goal directed and exhibiting flight of ideas as documented by the same treating team during the same admission dates. The portal versions document Plaintiff's behavior as calm, cooperative, and conversational. The certified production substitutes abstract thinking with matrix references. The portal versions document the overall clinical picture as a temporary crisis responding rapidly to sleep and medication. The certified production substitutes chronic severe psychiatric disorder with psychotic features.

**C. Targeted Deletion of Physician Findings Favorable to Plaintiff**

The sentence **"Patient demonstrates insight and intends to follow outpatient care plan"** appears in the portal versions' discharge documentation and is absent from the certified production. This is not a formatting difference. It is the targeted removal of a treating physician's contemporaneous clinical finding. Its removal makes Plaintiff appear unstable and non-compliant at discharge. The discharge summary's notation that mood was significantly improved was simultaneously softened and risk language was subtly elevated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D. Erasure and Reassignment of the B52 Chemical Restraint Record**

The portal versions document the administration of **Haloperidol, Lorazepam, and Diphenhydramine** -- the **B52 chemical restraint combination** -- on November 30, 2023, at 16:21, twenty-one minutes after orders were placed. **The certified production at SHH-M000216 contains no administration documented on November 30.** The 16:21 timestamp is reassigned to triage documentation attributed to MANN, NICOLE, RN, rather than to medication administration. The restraint medications reappear in the certified production as PRN orders dated December 1, 2023, at 15:48 -- shifting the event approximately 23.5 hours forward and reclassifying it from a documented restraint administration to a routine PRN order. **HCA's own Policy COG.COG.001 prohibits PRN restraint orders.** The November 30 B52 administration has been erased from the certified record and its timestamp reassigned to a different clinical activity.

**E. Dictation Date Shift and 55-Day Unsigned Note**

A clinical note bearing a dictation date of November 30, 2023, at 5:02 PM in the portal versions shows a dictation date of December 2, 2023, at 10:29 in the certified production at SHH-M000212 -- a two-day discrepancy. The note was not electronically signed until January 26, 2024, at 10:48 -- **55 days after the revised dictation date.** No audit trail documenting access to or modification of the note during that 55-day window has been produced.

**F. The Post-Discharge Petition Was Filed on Fabricated Clinical Grounds and Produced as a Reconstructed Document**

A sworn Petition for Court-Ordered Admission was filed at 1:25 PM on December 4, 2023 -- **53 minutes after clinical discharge.** At 11:56 AM the same morning, the facility's own system assessed Plaintiff's readmission risk as LOW (0.18) and her suicide risk as low. The

petition was signed under penalty of perjury declaring Plaintiff presented a substantial likelihood of serious harm. The clinical foundation -- Schizoaffective Disorder and delusions -- was system-generated by HPF.FEED and directly contradicted by the treating psychiatrist's discharge findings made hours earlier. Plaintiff was never notified of the petition, the hearing, or the appointment of a Public Defender.

The petition was produced in discovery as a non-searchable image scan despite originating as a natively digital e-filed document. It exhibits font inconsistencies with the surrounding clinical forms, metadata characteristics consistent with a 2024 or 2025 document environment rather than a 2023 filing, and an absent electronic signature block normally present on natively filed court documents. **It is not a copy of a 2023 court filing. It is a post-hoc reconstruction submitted as one.**

**G. Three Inserted Documents With No Pre-Litigation Counterpart**

The certified production contains three documents entirely absent from both July 2025 portal exports. An undated, unsigned "Danger to Self / Others" risk assessment form insinuating ongoing danger to Plaintiff or others, bearing no authenticating information of any kind. A full Behavioral Health Social Worker psychosocial assessment appearing in the approximate Bates range SHH-M000230 through SHH-M000240, with date and time stamps that do not align with any contemporaneous clinical activity reflected in the portal versions. A psychiatry progress note dated December 3, 2023, that contradicts every earlier mental status finding, bears a system placeholder font in the signature block, and lacks a provider electronic signature timestamp. **None of these documents existed in the clinical record as Plaintiff preserved it on July 31, 2025. All three serve Defendants' litigation narrative. All three are inserted.**

**H. Regenerated Vital Signs and Phantom Medication Orders**

Vital signs entries in the certified production show systematic small-value shifts across multiple parameters -- pulse by 5 to 10 beats per minute, blood pressure by 5 to 15 mmHg, respiratory rate by 2 to 3 breaths per minute, and temperature rounding -- when compared to the same timestamped entries in the portal versions. **These shifts are the recognized signature of flowsheet data regenerated from a live ABS LIVE database print rather than exported from archived clinical entries.** The vitals displayed in the certified production are not guaranteed to reflect the values recorded at the time of care.

The medication reconciliation section of the certified production contains a PRN anxiolytic and a PRN antipsychotic absent from the portal versions, absent from the Medication Administration Record, and bearing no provider signature. They appear as if they were active orders during the admission. They were not.

**I. Gender Identity and Pronoun Erasure**

All portal versions document Plaintiff's gender identity as female and preferred pronouns as she/her. The certified production removes the pronoun field entirely, changes the gender identity field to inconsistent, and inserts the deprecated Transsexualism code (F64.0) -- a designation superseded by Gender Dysphoria in current clinical practice and used by no treating clinician in any version of the record. **The erasure is deliberate.** It is an independent basis for liability under Section 1557 of the Affordable Care Act, 42 U.S.C. Section 18116.

**IV.    DEFENDANTS WITHHELD THE ONLY EVIDENCE THAT COULD FULLY ESTABLISH WHAT THEY DID**

Native field-level EHR audit logs for this encounter would identify precisely who accessed the record, when, what fields were modified, what values were changed, and what system or user account performed each modification. They were not produced. Defendants produced only summary-format audit fragments (Exhibit 22-A). The following records also remain entirely unproduced: physician restraint orders; post-sedation monitoring documentation; signature event metadata for the 55-day gap; note creation and last-modified timestamps; human coder review records for automated diagnoses; clinical justification for the Schizoaffective coding; provider authentication records for the December 3 progress note; the original native PDF of the Petition for Court-Ordered Admission as e-filed; social worker assessment authentication records and provider credentials; authorship, date, and countersignature records for the Danger to Self / Others form; original archived vital signs flowsheet data from a non-ABS-LIVE source; medication reconciliation sign-off records for the phantom PRN orders; the identity of User R.SNV.EC; the identity of the owner of workstation CYO4949; and the complete contents of the OneDrive directory C:\Users\CYO4949\OneDrive - HCA Healthcare\Documents\PCP SH 1130.

**Defendants certified the altered production. Then they withheld the logs. Defense counsel confirmed possession of the native audit trail on January 16, 2026 and produced summaries instead. The certification substituted a false record for the truth. The log suppression eliminated the documentary trail that would prove the substitution in granular detail. Those acts together are not negligence. They are a coordinated strategy.**

## V.    THE FIVE-STAGE SEQUENCE ESTABLISHES INTENT AS A MATTER OF INFERENCE

Hospitals do not execute targeted admission-specific data extractions to personal OneDrive directories in the routine course of clinical care. Hospitals do not retroactively restrict patient portal access in the ordinary course of records administration. Defense counsel does not confirm possession of a native audit trail and then produce summaries instead by accident.

The sequence here is unambiguous. Targeted extraction on Day 2 of the admission by a named administrative user. Full psychiatric record accessible and preserved by Plaintiff before filing. Full Visit Summary pathway closed after preservation. Defense counsel confirms native audit trail and withholds it. Materially altered certified production submitted under oath.

Under Rule 37(e)(2), intent to deprive may be inferred from this sequence without direct evidence of a specific individual's subjective state. **The pattern -- targeted early extraction, restricted access after preservation, altered certification, withheld audit trail -- is the circumstantial signature of intent.** Combined with the substance of the alterations, all of which uniformly favor Defendants, the inference of intent is not merely available. It is compelled.

## VI.    NO LESSER SANCTION CAN REMEDY THIS CONDUCT

An adverse inference instruction asks the jury to consider that missing evidence was unfavorable to Defendants. The problem here is not missing evidence. The problem is that Defendants replaced the authentic evidence with a fabricated substitute and had a named custodian certify the substitute as genuine. An adverse inference instruction does not address that. It still permits Defendants to present the altered record, argue its contents, and benefit from every modification embedded in it.

Monetary sanctions do not restore the authentic clinical record. No monetary award reconstructs the original MSE findings, the original medication administration record, the original dictation timestamps, the original diagnoses, the deleted physician findings, the erased pronoun fields, the OneDrive extraction contents, or the authentic court petition.

Exclusion of the certified production eliminates the fraudulent document but leaves Defendants free to litigate without accountability for the fraud itself.

**Terminating sanctions are the only remedy that directly and proportionately responds to what Defendants did.** They chose to fabricate the record. They chose to certify the fabrication. They chose to withhold the proof. The appropriate and just consequence is that they lose the right to contest the claims that fabrication was designed to defeat.

**REQUESTED RELIEF**

Plaintiff respectfully requests that the Court:

1. Find that Defendants spoliated, altered, inserted, regenerated, and fraudulently certified the electronic medical records from Plaintiff's November 30 through December 4, 2023 hospitalization at Southern Hills Hospital.

2. Find that the certification executed by **L. Stiles, HMD on October 24, 2025**, was knowingly false, as demonstrated by the ABS LIVE and CPCS LIVE notations on the face of the certified document.

3. Find that Defendants' conduct constitutes fraud on the court within the meaning of Chambers v. NASCO, 501 U.S. 32 (1991), and the Court's inherent authority.

4. Find that Defendants acted with intent to deprive Plaintiff of the authentic clinical record within the meaning of Federal Rule of Civil Procedure 37(e)(2).

5. **Enter default judgment against Defendants** on all claims arising from the November 30 through December 4, 2023 Southern Hills Hospital encounter, including but not limited to all claims arising from the L2K hold, the B52 chemical restraint, the unauthorized Petition for Court-Ordered Admission, the fraudulent diagnostic coding, the alteration of protected health information, and the erasure of Plaintiff's gender identity and pronoun records.

6. In the alternative, if the Court declines to enter default judgment at this stage, order the following intermediate relief pending full evidentiary hearing:

   **(a)**. Immediate production within fourteen days at Defendants' expense of: all native EHR audit logs and field-level modification records for the Southern Hills Hospital Meditech instance for the period December 1, 2023 through October 24, 2025; the identity of User

R.SNV.EC; the identity of the owner of workstation CYO4949; the complete contents of

the OneDrive directory C:\Users\CYO4949\OneDrive - HCA

Healthcare\Documents\PCP SH 1130 including all files exported during the December 1,

2023 Physician Data Capture Audit and any subsequent access or modification events;

and all internal communications regarding the December 1, 2023 extraction;

**(b).** A finding for all purposes in this litigation that the pre-litigation portal versions

(Exhibits 22-1, 22-2, and 22-3) constitute the authentic record of the encounter and that

the certified production (SHH-M000202 through SHH-M000451) is excluded as a

fabricated document;

**(c).** An adverse inference instruction directing the jury that the authentic record was

favorable to Plaintiff on all claims and that the certified production was fabricated to

defeat those claims;

**(d).** A finding that the certification of L. Stiles, HMD is inadmissible and that she may be

called as a witness at trial to explain the discrepancy between her certification and the

ABS LIVE notations on the face of the document she certified;

**(e).** Monetary sanctions in an amount sufficient to fully compensate Plaintiff for all costs,

burdens, and litigation disadvantage attributable to Defendants' conduct; and

**(f).** Referral to the United States Attorney's Office for the District of Nevada for

investigation of potential criminal conduct, including obstruction of justice and violation

of 18 U.S.C. Section 1519 (destruction, alteration, or falsification of records in federal

investigations and bankruptcy).

## CONCLUSION

The evidence is not ambiguous and the conduct is not subtle. Plaintiff preserved Defendants' own records from Defendants' own system before this litigation began. Those records -- timestamped, system-generated, and unalterable by Plaintiff -- show a patient who stabilized, recovered, demonstrated insight, and was discharged with a low risk assessment. On Day 2 of that admission, before the treating psychiatrist completed a single full evaluation, a named administrative user executed a targeted data extraction and stored Plaintiff's records in a manually named OneDrive directory. That event was never disclosed. **L. Stiles, HMD then certified a 249-page live-rendered reconstruction that shows something fundamentally and irreconcilably different:** a patient with chronic psychotic disorder, active delusions, and dangerous behavior, supported by unsigned forms, ghost progress notes, deleted restraint records, reassigned timestamps, regenerated vital signs, phantom medication orders, and a reconstructed court petition with 2024 to 2025 metadata.

L. Stiles signed it. Defense counsel submitted it. Defense counsel confirmed possession of the native audit trail on January 16, 2026 and produced summaries instead. The native audit logs that would prove every modification in granular detail were withheld.

There is a name for submitting a fabricated document to a federal court under oath while withholding the evidence that would prove it is fabricated. That name is fraud on the court. This Court has the authority, the precedent, and the obligation to respond to that conduct with the full force of its sanctioning power. The integrity of these proceedings -- and of the federal judicial process itself -- requires it.

**Default judgment should be entered. Terminating sanctions should issue.**

I certify that Artificial Intelligence was used to prepare the foregoing document.

DATED: March 7th , 2026

Respectfully submitted,

/s/ Jade Riley Burch
**JADE RILEY BURCH**
Plaintiff, Pro Se

**Attachments Referenced Herein:**

| Exhibit | Description | Pages | Date |
|---------|-------------|-------|------|
| **22** | Four-Way Comparison and Modification Analysis -- Southern Hills Hospital Medical Records, November 30 through December 4, 2023; pre-litigation portal versions vs. certified litigation production | -- | March 6, 2026 |
| **22-1** | Portal Version 1 -- Visit Summary Psych; MyHealthONE export; export timestamp on face of document | 112 pages | July 31, 2025 |
| **22-2** | Portal Version 2 -- Visit Summary Psyche2; MyHealthONE export; export timestamp on face of document | 114 pages | July 31, 2025 |
| **22-3** | Portal Version 3 -- Minimal Visit Summary; MyHealthONE export; full Visit Summary pathway unavailable | Approximately 6 pages | September 2025 |
| **22-4** | Certified Litigation Production; Bates SHH-M000202 through SHH-M000451; certified by L. Stiles, HMD | 249 pages | Certified October 24, 2025 |
| **22-A** | Southern Hills Hospital Patient Audit Log; Bates No. SHH-AT000012; data range November 30, 2023 through December 4, 2023; documents December 1, 2023 Physician Data Capture Audit by User R.SNV.EC and export to C:\Users\CYO4949\OneDrive - HCA Healthcare\Documents\PCP SH 1130 | -- | Produced in discovery |
| **22-B** | Coding Summary Analysis -- SHH-M000213 Technical Notation Review | -- | -- |
| **22-C** | Portal Version Dynamic Data Injection Demonstration -- 2025 address and 2025 diagnoses appearing in document labeled as 2023 medical record; demonstrates live database reconstruction | -- | To be designated |
| **Declaration** | Declaration of Jade Riley Burch in Support of Motion for Terminating Sanctions -- January 16, 2026 meet and confer representations of defense counsel Zachary Thompson regarding native Excel audit trail | -- | March 6, 2026 |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 7th , 2026, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS FOR SPOLIATION OF EVIDENCE, FRAUDULENT CERTIFICATION OF AN ALTERED RECORD, AND FRAUD ON THE COURT** with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record registered to receive electronic notifications in this case, including:

> Michael E. Prangle
> Zachary J. Thompson
> Hall Prangle, LLC
> 1140 N. Town Center Drive, Suite 350
> Las Vegas, NV 89144
>
> *Counsel for HCA Healthcare, Inc.;*
> *Sunrise Hospital & Medical Center, LLC;*
> *MountainView Hospital;*
> *and Southern Hills Hospital & Medical Center*

/s/ Jade Riley Burch
**JADE RILEY BURCH**
Plaintiff, Pro Se