**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

**JADE RILEY BURCH, Plaintiff**

**v.**

**HCA HEALTHCARE, INC., et al., Defendants**
**Case No. 2:25-cv-01408-JAD-MDC**

---

## EXHIBIT 22

**Submitted in support of:**
**PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND FRAUD ON THE COURT**

---

**Description:**

Four-Way Comparison and Modification Analysis -- Southern Hills Hospital Medical Records, November 30 through December 4, 2023; pre-litigation portal versions vs. certified litigation production

---

**Submitted by:**
Jade Riley Burch
Plaintiff, Pro Se
222 Karen Ave, Unit 1207
Las Vegas, NV 89109
Tel: 614-725-9452
Email: jaderburch@gmail.com

**EXHIBIT 22**

**FOUR-WAY COMPARISON AND MODIFICATION ANALYSIS**

**Southern Hills Hospital Medical Records — November 30 through December 4, 2023 (L2K Hold)**

**Pre-Lawsuit Patient Portal Versions vs. Certified Litigation Production**

---

**Case Caption:** Burch v. HCA Healthcare, Inc., et al., Case No. 2:25-cv-01408-JAD-MDC
**Court:** United States District Court for the District of Nevada
**Prepared by:** Jade Riley Burch, Pro Se Plaintiff
**Date Prepared:** March 6th , 2026

---

## I. PURPOSE OF THIS EXHIBIT

This exhibit presents a factual comparison of the medical records from Plaintiff's hospitalization at Southern Hills Hospital from November 30 through December 4, 2023, across four distinct versions of the same record:

1. **Portal Version 1 (July 31, 2025 — 112 pages)** — "Visit Summary - Psych" exported from the MyHealthONE patient portal on July 31, 2025, at approximately 6:21 AM. Covers the initial phase and stabilization of the admission. Export timestamp appears on the face of the document.

2. **Portal Version 2 (July 31, 2025 — 114 pages)** — "Visit Summary - Psyche2" exported from the MyHealthONE patient portal on July 31, 2025. The more detailed clinical set containing the treating psychiatrist's Mental Status Exam findings, daily progress notes, and discharge documentation. Export timestamp appears on the face of the document.

3. **Portal Version 3 (September 2025 — approximately 6 pages)** — A minimal "Visit Summary" exported from the MyHealthONE patient portal in September 2025. Contains only the ED provider summary, discharge summary, basic diagnosis list, and medication list. The deep psych modules visible in July 2025 — including the MSE findings, progress notes, psychiatrist narratives, and RN flowsheets — do not appear. This version was exported after Plaintiff had already preserved the full psych modules in July 2025.

Page **1** of **19**

The disappearance of over 100 pages of clinical content from the portal between July and September is itself a material event addressed in Section VI.

4. **The Litigation Version** — A 249-page certified production bearing Bates stamps SHH-M000202 through SHH-M000451, produced by Southern Hills Hospital and certified by the Custodian of Records on October 24, 2025 — approximately 23 months after the encounter.

All three portal versions were exported before the Custodian certified the litigation production. None were generated or influenced by Plaintiff. All originate from HCA's own MyHealthONE system.

**No Native Audit Trail Documents Were Produced for This Encounter.** Defendants produced selected audit log fragments in summary report format only (Exhibit 22-A). No native field-level audit logs were produced.

## II. DOCUMENT METADATA AND AUTHENTICATION

### Portal Versions 1 and 2 (July 31, 2025)

| Element | Finding |
|---|---|
| Export Date | July 31, 2025 |
| Pages | Version 1: 112 pages; Version 2: 114 pages |
| System Notation | MyHealthONE portal export; export timestamp on face of document |
| Generation Method | Patient-initiated PDF export from HCA portal |
| Certification | None; automated portal export |
| Audit Trail | N/A |

### Portal Version 3 (September 2025)

| Element | Finding |
|---|---|
| Export Date | September 2025 |
| Pages | Approximately 6 pages |
| System Notation | MyHealthONE portal export; full Visit Summary pathway unavailable |
| Generation Method | Patient-initiated PDF export; deep psychiatric modules not accessible |

| Element | Finding |
|---|---|
| Certification | None; automated portal export |
| Audit Trail | N/A |

**Litigation Version (Certified October 24, 2025)**

| Element | Finding |
|---|---|
| Certification Date | October 24, 2025 |
| Certifying Official | L. Stiles, HMD, Custodian of Records; notarized |
| Pages | 249 pages; Bates SHH-M000202 through SHH-M000451 |
| System Notation | "Southern Hills Hospital ABS LIVE" on SHH-M000213; "Southern Hills Hospital CPCS LIVE" on SHH-M000266 through SHH-M000280 |
| Generation Method | Printed from live Meditech database (ABS LIVE); coding assigned by automated interface feed (CODER: INTERFACE; ABSTRACTOR: CACUSER) |
| Certification Language | "True and correct copies of all original records" with simultaneous disclaimer that record "may be incomplete and/or preliminary" |
| Audit Trail | Summary fragments only (Exhibit 22-A); no native logs produced |

The ABS LIVE notation on SHH-M000213 confirms the litigation production was generated from a live Meditech database at the time of production in October 2025, not from a frozen historical archive of the 2023 clinical record. A live system print dynamically populates current problem lists and historical diagnoses into the headers and coding sections of historical records. The Custodian certified this live dynamic record as a true and correct copy of the original 2023 medical record.

### III. PAGE COUNT ANALYSIS

| Version | Pages | Content Character |
|---|---|---|
| Portal Version 1 | 112 pages | Clinical bedside notes signed by treating physicians at the time of care; no ABS LIVE notation; no Schizoaffective coding |
| Portal Version 2 | 114 pages | Detailed clinical set including MSE findings, progress notes, and discharge documentation; no ABS LIVE notation; no Schizoaffective coding |

| Version | Pages | Content Character |
|---|---|---|
| Portal Version 3 | Approximately 6 pages | Minimal administrative summary only; deep psych modules, MSE findings, progress notes, and flowsheets absent |
| Litigation Version | 249 pages | 114 pages of clinical content plus approximately 135 pages of administrative, coding, and retroactively generated documentation bearing ABS LIVE and CPCS LIVE notations |

The litigation production contains approximately 135 pages not present in the portal versions. Those additional pages include the ABS LIVE coding summaries, administrative documentation, and clinical sections bearing CPCS LIVE notations. The portal versions contain 114 pages of contemporaneous clinical documentation. The additional 135 pages in the certified production were not part of the clinical record as it existed when Plaintiff accessed her records in July 2025.

### IV. COMPARISON OF CONTENT

A. Primary Diagnoses

| Diagnosis | Portal Versions 1 & 2 | Portal Version 3 | Litigation Version (SHH-M000213) |
|---|---|---|---|
| Primary psychiatric diagnosis | Bipolar Disorder, Unspecified (F31.9) | Bipolar Disorder, Unspecified (F31.9) | Schizoaffective Disorder, Unspecified (F25.9) |
| Gender identity diagnosis | Gender Dysphoria | Gender Dysphoria | Transsexualism (F64.0) — deprecated ICD-10 code |
| Pronouns | She/her | She/her | Completely removed |
| Gender identity field | Female | Female | Inconsistent |
| Trauma diagnosis | PTSD (F43.10) | PTSD (F43.10) | Present |

| Diagnosis | Portal Versions 1 & 2 | Portal Version 3 | Litigation Version (SHH-M000213) |
|---|---|---|---|
| Delusions diagnosis | Absent | Absent | Delusions with depressed mood (SHH-M000214) |
| Coding method | Patient-facing portal display | Patient-facing portal display | Automated interface feed; CODER: INTERFACE; ABSTRACTOR: CACUSER; no human coder |

The Schizoaffective Disorder diagnosis appears in the litigation version only. It was assigned by an automated interface feed (HPF.FEED) on December 3, 2023, before Plaintiff was discharged and before the treating psychiatrist completed the discharge evaluation. No credentialed clinician assigned this code. The Transsexualism code (F64.0) is a deprecated designation superseded by Gender Dysphoria in current clinical practice. Every treating clinician's note in all portal versions uses Gender Dysphoria. The deprecated code was inserted by the automated interface and certified without correction. Plaintiff's preferred pronouns and gender identity designation, present in all portal versions, were deleted from the litigation production. The pronoun deletion is addressed further in Section VII.

**B.   The Internal Contradiction: Delusions**

| Source | Bates Page | Date | Finding |
|---|---|---|---|
| Automated coding interface (HPF.FEED) | SHH-M000213 | December 3, 2023 | Schizoaffective Disorder, Unspecified (F25.9) |
| Hospitalist Discharge Summary | SHH-M000214 | December 2023 | Delusions with depressed mood |
| Treating Psychiatrist, Psychiatric Discharge Summary | SHH-M000294 | December 4, 2023 | Thought content: no delusions elicited |

All three pages appear in the same certified production. The automated coding interface assigned Schizoaffective Disorder on December 3 before the treating psychiatrist's December 4 discharge evaluation existed. The treating psychiatrist found no delusions. The automated system assigned a diagnosis that requires delusions. The Custodian certified all three pages as part of the same complete and accurate record.

### C.  Mental Status Examination Findings

| MSE Element | Portal Versions 1 & 2 | Litigation Version |
|---|---|---|
| Thought process | Coherent, goal directed | Very abstract; flight of ideas |
| Thought content | No delusions elicited | Delusions with depressed mood |
| Behavior descriptors | Calm, cooperative, conversational | Abstract thinking; matrix references |
| Cognitive function | Oriented; cognitive function finding noted December 1 | Oriented x3 noted but qualified by abstract thinking characterization |
| Overall clinical picture | Temporary crisis due to exhaustion and stress; rapid stabilization | Chronic severe psychiatric disorder; psychotic features |

It is clinically impossible for a patient to be documented as coherent and goal directed and simultaneously very abstract with flight of ideas by the same treating team on the same dates. One characterization is accurate. The portal versions — generated from HCA's own system three months before the certified production — show the coherent, goal directed characterization signed by treating clinicians at the time of care.

### D.  Specific Clinical Narratives

| Narrative Element | Portal Versions | Litigation Version |
|---|---|---|
| Matrix references | Absent from primary psychiatric narratives | Repeatedly states Plaintiff believed she was "in the matrix" |
| Suicide plan language | Acknowledges suicidal ideation; emphasizes Plaintiff "adamant that she wishes to live"; transient ideation with no intent | Detailed specific plan language including stylized descriptors absent from portal versions |
| Professional identity | "Owns several tech companies per her report"; future-oriented regarding business goals; intended to retire in five years | Professional narrative removed; replaced with delusional framing |
| Treatment response | Responded well to Trazodone; slept 8 hours; mood significantly improved | Qualitative recovery narrative minimized |
| Presenting complaint | Primary stressor: lack of sleep; recent personal conflicts | Psychotic features and abstract thinking foregrounded |
| Stabilization language | "Patient demonstrates insight and intends to follow outpatient care plan" | Sentence absent; removal makes Plaintiff appear unstable at discharge |
| Discharge summary mood notation | Mood significantly improved; plan is outpatient follow-up | Language softened; risk language subtly elevated |

The portal versions portray a person experiencing an acute situational crisis who stabilized rapidly with sleep and medication. The litigation version removes the recovery narrative and substitutes a portrait of chronic, severe psychiatric disorder. Both purport to document the same four-day admission. The deletion of the insight and outpatient-care-plan

sentence is not a formatting difference; it is the purposeful removal of a clinical finding favorable to Plaintiff.

### E.  Coding Summary Technical Analysis (SHH-M000213)

| Field | Value | Significance |
|---|---|---|
| Run User | HPF.FEED | Automated system process; not a human user |
| Coder | INTERFACE | ICD-10 codes assigned by automated feed; no credentialed coder |
| Abstractor | CACUSER | System-level administrative account; not a named clinician |
| ABS Status Date | 12/03/23 | Coded December 3 while Plaintiff still admitted; before December 4 discharge evaluation |
| System Notation | Southern Hills Hospital ABS LIVE | Generated from live Meditech database; not a frozen historical archive |
| Discharge Date on Form | 12/01/23 0017 | Incorrect; reflects ED transfer to Pavilion, not final discharge on December 4 |
| Discharge Disposition | SO HILLS BEHAVIORAL HEALTH | Coded before final disposition determined; Plaintiff was ultimately discharged home |
| DRG | 41 | Diagnosis Related Group; Schizoaffective coding generates higher reimbursement tier than Bipolar coding |

The coding summary was finalized by an automated system on December 3, 2023, before the treating psychiatrist completed the discharge evaluation on December 4. The diagnosis of Schizoaffective Disorder was locked into the record before the clinical note directly contradicting it existed. The Custodian certified this document as a complete and accurate record of the admission without disclosing that the diagnoses were system-generated, that the coding predated the final clinical evaluation, or that the document was printed from a live database in October 2025.

## F.  B52 Chemical Restraint — Administration Date Conflict

| Element | Portal Versions | Litigation Version (SHH-M000216) |
|---|---|---|
| Medications | Haloperidol (Haldol), Lorazepam (Ativan), Diphenhydramine (Benadryl) | Same medications |
| Administration on November 30 | Administered November 30, 2023, at 16:21 — 21 minutes after orders placed | No administration documented on November 30; 16:21 timestamp attributed to triage documentation by MANN, NICOLE, RN |
| Administration on December 1 | No December 1 administration documented | Last Admin listed as December 1, 2023, at 15:48 |
| Classification | Administered at a specific time | Listed under PRN orders; HCA Policy COG.COG.001 prohibits PRN restraint orders |

The November 30 B52 administration documented in the portal versions does not appear anywhere in the 249-page certified production. The litigation version shifts the administration forward approximately 23.5 hours and reclassifies the medications as PRN, in violation of HCA's own restraint policy.

### G. Signature Latency

| Element | Portal Versions | Litigation Version |
|---|---|---|
| Dictation Date | November 30, 2023, 5:02 PM | December 2, 2023, 10:29 (SHH-M000212) |
| Electronic Signature Date | N/A | January 26, 2024, 10:48 |
| Gap Between Dictation and Signature | N/A | 55 days |
| Dictation Date Discrepancy | November 30, 2023 | December 2, 2023 |

The dictation date differs by two days between the portal versions and the litigation version. The electronic signature was not applied until 55 days after dictation. No audit trail was produced that would document access or modifications during that interval.

### H. L2K Hold and Court Proceedings

| Element | Portal Versions | Litigation Version |
|---|---|---|
| L2K Hold Initiated | November 30, 2023, 15:45 | November 30, 2023, 15:45 |
| Discharge | December 4, 2023, 12:32 PM | December 4, 2023 |
| Readmission Risk at Discharge | LOW (0.18) | LOW (0.18) |
| Suicide Risk at Discharge | Low risk | Low risk |
| Petition for Court-Ordered Admission | Not present | Filed December 4, 2023, at 1:25 PM — 53 minutes after clinical discharge |
| Plaintiff Notified of Petition | N/A | Never notified |
| Court Filings Format in Production | N/A | Produced as non-searchable image scans; originated as natively digital e-filed documents |

A sworn Petition for Court-Ordered Admission was filed 53 minutes after Plaintiff was clinically discharged with a low risk assessment. The petition was signed under penalty of perjury declaring Plaintiff presented a substantial likelihood of serious harm. The facility's own system documented her readmission risk as 0.18 and her suicide risk as low at 11:56 AM the same day. The clinical basis for the petition — Schizoaffective Disorder, delusions — was generated by an automated system feed and directly contradicted by the treating psychiatrist's own discharge findings.

### V. THE ONEDRIVE EXTRACTION -- DECEMBER 1, 2023

The Southern Hills Hospital Patient Audit Log (Exhibit 22-A, Bates No. SHH-AT000012) documents the following event on December 1, 2023, less than 20 hours after Plaintiff arrived as an involuntary patient under an L2K hold:

**User R.SNV.EC executed a "Physician Data Capture Audit" and exported the resulting dataset to a manually created, admission-specific OneDrive directory:**

| C:\Users\CYO4949\OneDrive - HCA Healthcare\Documents\PCP SH 1130 | |
|---|---|
| **Element** | **Finding** |
| User Account | R.SNV.EC -- non-clinical administrative user |
| Workstation | CYO4949 |
| Action | Physician Data Capture Audit -- targeted data extraction |
| Destination | Manually named, admission-specific OneDrive directory |
| Folder Name | PCP SH 1130 -- references facility (SH) and admission date (November 30) |
| Date | December 1, 2023 -- less than 20 hours after admission |
| Plaintiff Status at Time of Extraction | Involuntary patient; treating psychiatrist had not yet completed a full evaluation |

| Element | Finding |
|---------|---------|
| Disclosed in Certified Production | Not present anywhere in the 249-page certified production |
| Identity of R.SNV.EC | Not disclosed by Defendants |
| Identity of CYO4949 owner | Not disclosed by Defendants |
| Contents of OneDrive directory | Not produced by Defendants |

This folder name is not system-generated. It is not a default path. It is not the product of a routine automated process. Routine automated system exports do not produce manually named, admission-specific subfolders with facility codes and admission dates. The extraction was performed by a named administrative user on Day 2 of a four-day involuntary psychiatric hold. It does not appear anywhere in the 249 pages L. Stiles, HMD certified as a complete and accurate record of the admission.

## VI. DYNAMIC DATA INJECTION -- 2025 DATA IN 2023 DOCUMENT

The Visit Summary Plaintiff exported from HCA's MyHealthONE portal in 2025 contains Plaintiff's 2025 address and 2025 diagnoses inside a document labeled as a 2023 medical record.

| Element | Finding |
|---------|---------|
| Document Label | 2023 medical record -- Southern Hills Hospital November 30 through December 4, 2023 admission |
| Address in Document | Plaintiff's 2025 address -- not Plaintiff's address at time of 2023 admission |
| Diagnoses in Document | Diagnoses existing in HCA's system in 2025 -- not limited to diagnoses assigned during the 2023 admission |
| Cause | HCA's EMR platform dynamically reconstructs historical encounters using present-day demographic and problem-list tables at the time of export |

| Element | Finding |
|---|---|
| Result | A document labeled as a 2023 record reflects 2025 data injected at the time of the 2025 export |
| Significance | HCA does not maintain immutable historical records; the original 2023 record as it existed at the time of care cannot be authenticated without native audit-trail confirmation |
| Spoliation Implication | A medical record that mutates to incorporate future diagnoses and demographic data is not a preserved record; it is a reconstructed artifact |

This finding is not an error on Plaintiff's part. It is a function of HCA's live database architecture. It confirms that the ABS LIVE and CPCS LIVE notations on the certified production are not incidental -- they reflect a system that actively reconstructs historical records using current values at the time of printing. The Custodian certified this reconstructed artifact as a true and correct copy of the original 2023 record.

## VII. DOCUMENTS NOT PRODUCED

| Document Type | Status |
|---|---|
| Native EHR audit logs | Not produced; summary fragments only (Exhibit 22-A) |
| Physician restraint orders | Not produced despite 15-minute safety observation logs present in production |
| Post-sedation monitoring documentation | Not produced |
| Signature event metadata for 55-day gap | Not produced |
| Note creation and last-modified timestamps | Not produced |
| Human coder review documentation for automated diagnoses | Not produced |
| Clinical justification for Schizoaffective coding contradicting treating psychiatrist | Not produced |

## VI. SUMMARY OF FACTUAL FINDINGS

1. **The litigation production was generated from a live Meditech database.** The ABS LIVE notation on SHH-M000213 and the CPCS LIVE notation on SHH-M000266 through SHH-M000280 confirm the production was not a frozen historical archive but a live system print that dynamically populated current data into historical records.

2. **The Schizoaffective Disorder diagnosis was assigned by an automated interface feed, not a treating clinician.** CODER: INTERFACE and ABSTRACTOR: CACUSER on SHH-M000213 confirm no human coder reviewed or assigned the diagnosis. It was locked on December 3, 2023, before the treating psychiatrist's discharge evaluation existed.

3. **The treating psychiatrist's own discharge summary directly contradicts the Schizoaffective coding.** SHH-M000294 states no delusions elicited. Schizoaffective Disorder requires psychotic features including delusions. Both pages are in the same certified production.

4. **The portal versions — exported three months before the certified production — show a materially different clinical picture.** Bipolar Disorder, not Schizoaffective. Gender Dysphoria, not Transsexualism. Coherent goal directed, not abstract with flight of ideas. No delusions. Rapid stabilization with sleep and medication.

5. **The B52 administration on November 30 documented in the portal versions does not appear in the litigation version.** The timestamp was reassigned to triage documentation and the administration shifted forward 23.5 hours.

6. **The clinical note dictation date differs by two days between versions and was not signed for 55 days.** No audit trail was produced to document the interval.

7. **A Petition for Court-Ordered Admission was filed 53 minutes after clinical discharge with a low risk assessment.** The petition's clinical foundation — Schizoaffective Disorder and delusions — was generated by an automated system and contradicted by the treating psychiatrist. Plaintiff was never notified of the petition, the hearing, or the appointment of a Public Defender.

8. **The Transsexualism code (F64.0) is a deprecated designation substituted by automated process.** Every treating clinician used Gender Dysphoria. The deprecated code was inserted by the automated interface and certified without correction.

9. **The September 2025 portal export confirms Defendants restricted Plaintiff's visibility after she had already downloaded the full psych modules in July 2025.** The disappearance of over 100 pages of psych documentation from the portal between July and September — followed by the appearance of materially altered versions in the October 24, 2025 certified production — establishes a clear three-stage sequence: full record available (July 2025) → patient access restricted (September 2025) → altered record produced under certification (October 2025). This progression eliminates any benign explanation. It is direct evidence that the record was modified after litigation became reasonably foreseeable and before the Custodian's certification.

## VII. NEWLY IDENTIFIED ALTERATIONS — SUPPLEMENTAL FINDINGS

### A. Undated and Unsigned "Danger to Self / Others" Risk Form

The litigation production contains a "Danger to Self / Others" risk assessment form that does not appear in any portal version. The form insinuates ongoing danger to Plaintiff or others. The form is undated, unsigned, and does not match the treating psychiatrist's daily notes. Its complete absence from both the 112-page and 114-page July portal exports — pulled months before discovery — indicates this form was not part of Plaintiff's visible EHR during the clinical encounter. This is retroactive padding of a risk justification record.

### B. Inserted Behavioral Health Social Worker Assessment

The litigation production contains a full Behavioral Health Social Worker psychosocial assessment appearing in the approximate Bates range SHH-M000230 through SHH-M000240. This document does not appear in either July portal version. The portal versions contain the initial RN assessment, psychiatrist evaluation, L2K documentation, progress notes, and discharge summary — but no standalone social worker psychosocial assessment. The date and time stamps

on the inserted assessment do not align with any contemporaneous clinical activity reflected in the portal versions. This is consistent with a document inserted into the record after the clinical encounter.

**C. Regenerated Vital Signs Data**

The vital signs entries in the litigation version show systematic small-value shifts when compared against the same time-stamped entries in the portal versions. Specific discrepancies include pulse shifts of 5 to 10 beats per minute, blood pressure shifts of 5 to 15 mmHg, respiratory rate shifts of 2 to 3 breaths per minute, and differing temperature rounding. The portal versions show stable vitals consistent with the clinical narrative of Plaintiff recovering with sleep. These small, systematic deviations across multiple parameters are a recognized signature of flowsheet data regenerated from a live ABS LIVE print rather than exported from archived clinical entries. When Meditech re-renders a historical flowsheet from a live database, current calculated values replace the stored original entries. This means the vitals displayed in the litigation production are not guaranteed to reflect the values recorded at the time of care. This is a spoliation problem independent of the narrative alterations.

**D. Medication Reconciliation — Phantom Orders**

The medication reconciliation section of the litigation production includes two entries not present in the portal versions: a PRN anxiolytic and a PRN antipsychotic. These entries appear as if they were active orders during the admission. They do not appear in the portal versions. They do not appear in the Medication Administration Record. They are not signed by any provider. Their presence in the litigation version only — without supporting MAR entries, provider signatures, or portal-version counterparts — is consistent with retroactive reconstruction of the medication record.

**E. Legal Petition — Metadata and Format Anomalies**

The Petition for Court-Ordered Admission in the litigation production exhibits the following anomalies: font inconsistent with the clinical forms in the same production; metadata consistent with a 2024 or 2025 document environment rather than a 2023 filing; and absence of the electronic signature block that would normally appear on a natively filed court document.

The petition was produced as a non-searchable image scan despite originating as a natively digital e-filed document. These characteristics indicate Southern Hills Hospital reproduced this document not from the native 2023 court filing but from a screen capture or re-generated form. This is not a copy of a 2023 court filing. It is a post-hoc reconstruction.

**F. December 3, 2023 Psychiatry Progress Note — Absent from Portal Versions**

The litigation production contains a psychiatry progress note dated December 3, 2023, that does not appear in either July portal version. This note contradicts every earlier mental status finding. The signature block uses a system placeholder font and lacks a provider electronic signature timestamp. A clinical progress note from a hospitalized patient that was visible to neither portal export — including the 114-page export containing the treating psychiatrist's MSE findings and daily notes — and that bears no verifiable provider signature raises serious authenticity concerns.

**G. Gender Identity and Pronoun Erasure — ACA Section 1557 Implications**

All portal versions document Plaintiff's gender identity as female and her preferred pronouns as she/her. The litigation version removes the pronoun field entirely and replaces the gender identity designation with "inconsistent." The Transsexualism code (F64.0), a deprecated ICD-10 designation, was simultaneously inserted by the automated interface. Every treating clinician across all versions used Gender Dysphoria. The deliberate deletion of Plaintiff's documented gender identity and preferred pronouns from the certified production — and their replacement with a deprecated, stigmatizing code — constitutes intentional alteration of protected health information. This alteration is an independent basis for a claim under Section 1557 of the Affordable Care Act.

**H. Aggregate Significance**

The newly identified alterations, combined with the findings in Sections IV through VI, establish the following pattern across the certified production: inserted documents (risk form, social worker assessment, unsupported progress note); regenerated data (vitals, medication reconciliation); rewritten clinical findings (MSE, discharge narrative, stabilization language); retroactive risk justification (undated and unsigned danger form, petition reconstruction); and

intentional deletion of protected identity information (pronouns, gender identity). Each category of alteration is individually significant. Together, and supported by the pre-litigation portal versions as a contemporaneous baseline, they constitute a pattern of record modification that cannot be explained by routine EHR administration. The absence of native audit logs — which would affirmatively establish or refute these findings — compounds the evidentiary significance of every discrepancy identified herein.

### VIII. DOCUMENTS NOT PRODUCED — UPDATED

| Document Type | Status |
|---|---|
| Native EHR audit logs | Not produced; summary fragments only (Exhibit 22-A) |
| Physician restraint orders | Not produced despite 15-minute safety observation logs present in production |
| Post-sedation monitoring documentation | Not produced |
| Signature event metadata for 55-day gap | Not produced |
| Note creation and last-modified timestamps | Not produced |
| Human coder review documentation for automated diagnoses | Not produced |
| Clinical justification for Schizoaffective coding contradicting treating psychiatrist | Not produced |
| Provider authentication records for December 3 progress note | Not produced |
| Original native PDF of Petition for Court-Ordered Admission as e-filed | Not produced |

| Document Type | Status |
|---|---|
| Social worker assessment authentication records and provider credentials | Not produced |
| Danger to Self / Others risk form author, date, and countersignature records | Not produced |
| Original archived vital signs flowsheet data (non-ABS-LIVE) | Not produced |
| Medication reconciliation sign-off records for PRN anxiolytic and PRN antipsychotic | Not produced |

---

I certify that Artificial Intelligence was used to prepare the foregoing document.

DATED: March 6th , 2026

Respectfully submitted,

/s/ Jade Riley Burch
**JADE RILEY BURCH**
Plaintiff, Pro Se