**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JADE RILEY BURCH, Plaintiff, Pro Se,

*vs.*

HCA HEALTHCARE, INC.; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC;
and DOES 1 through 25, Defendants.
**Case No.: 2:25-cv-01408-JAD-MDC**

# EXHIBIT 25
## SIDE-BY-SIDE COMPARISON AND MODIFICATION ANALYSIS

Sunrise Hospital Medical Records — April 17–22, 2025
*(Pulmonary Embolism Encounter)*

Pre-Lawsuit Patient Portal Version vs. Certified Litigation Production

**Prepared by:** Jade Riley Burch, Pro Se Plaintiff
**Date Prepared:** February 16, 2026
**Case:** Burch v. HCA Healthcare, Inc., et al., Case No. 2:25-cv-01408-JAD-MDC
**Court:** United States District Court for the District of Nevada

# VISUAL SUMMARY — THREE ANALYTICAL CHARTS

*Charts 1–3 present the core clinical, documentary, and systemic deficiencies identified in this exhibit. The detailed analysis supporting each finding follows in Sections I–IX.*

## CHART 1 — CLINICAL RED FLAGS vs. ACTIONS TAKEN

*Sunrise Hospital  |  April 17–22, 2025  |  Post-Surgical Pulmonary Embolism Encounter*

| Clinical Indicator | Documented at Sunrise | Standard PE Screening Action | Action Taken by Sunrise | Outcome |
|---|---|---|---|---|
| Major Surgery | Yes | Evaluate PE risk | None Documented | ↑ Risk Factor |
| Chest Pain | Yes | D-Dimer or CT Angiogram | None Documented | Unresolved |
| Tachycardia (≤103 bpm) | Yes | PE risk stratification / Wells Score | None Documented | Unresolved |
| Respiratory Distress | Yes | PE protocol evaluation | None Documented | Unresolved |
| $O_2$ Requirement (2L NC) | Yes | Investigate thromboembolism | None Documented | Unresolved |
| Hemoptysis (reported) | Specimen reportedly provided | Immediate PE workup | No Documentation | Unresolved |
| Post-Surgical Status | Yes | Wells Score / PERC Screening | None Documented | ↑ Risk Factor |
| Imaging Performed | Chest X-Ray Only | CT Angiogram if PE suspected | Not Performed | Inadequate |
| Final Diagnosis at Sunrise | Pneumonia / Dyspnea | — | Discharged | Incomplete |
| Actual Diagnosis (Day +9) | Acute PE – Right Lower Lobe | — | Summerlin Hospital | Confirmed |

**Key:   Orange = Missing/Deficient   Yellow = Insufficient/Unexplained   Blue = Present in Record**

## CHART 2 — DOCUMENT TIMELINE INTEGRITY REVIEW

*Sunrise Hospital Encounter — April 17–22, 2025 | Events Presented Chronologically*

| Event | Recorded Time | Document Source | Observed Issue / Note |
|---|---|---|---|
| **Facial surgery performed** | April 17, 2025 | Surgical record | Beginning of post-operative hospitalization |
| **Plaintiff reports symptoms** | April 17–22, 2025 | Clinical notes | Chest pain, tachycardia, respiratory distress documented |
| **Chest X-ray performed** | April 20, 2025 — 8:33 PM CDT | SH-M000100 | Imaging acquisition |
| **Radiology interpretation signed** | April 20, 2025 — 6:35 PM PDT (= 8:35 PM CDT) | SH-M000100 | Signed ~2 min after image acquisition. PACS audit log not produced. |
| **Provider Report dictated** | April 22, 2025 — 11:01 AM | Provider Report | Dictated day of discharge — 5 days after admission. Retrospective narrative risk. |
| **Plaintiff discharged** | April 22, 2025 | Discharge summary | Diagnosed: Pneumonia / Dyspnea. PE workup not performed. |
| **Hospital bill generated** | April 27, 2025 | Billing record | $799,833 bill — record treated as final 5 days post-discharge. Contradicts custodian disclaimer. |
| **Plaintiff presents to Summerlin** | April 30, 2025 — 9:19 PM | Summerlin ED record | Same symptoms as Sunrise encounter |
| **D-Dimer performed at Summerlin** | April 30, 2025 | Summerlin lab | 1.32 mcg/mL FEU — elevated (normal <0.50) |
| **CT Angiogram — PE confirmed** | May 1, 2025 — 5:19 AM | Exhibit C (Rodriguez) | Acute PE, right lower lobe — 9 days after Sunrise discharge |
| **Custodian certification** | July 7, 2025 | Certification letter | Certified 'Complete records' while simultaneously disclaiming completeness |

**Key:  Orange = Potential integrity concern    Yellow = Noteworthy / Unexplained    Blue = Present / Consistent**

## CHART 3 — EHR MISSING EVIDENCE MAP

*Sunrise Hospital Encounter — Hospital Systems Controlling Unproduced Evidence*

| Evidence Type | Hospital System Where Stored | Standard Contents | Status in Production |
|---|---|---|---|
| EHR Audit Trail | Epic / Cerner Audit Logs | User activity, order creation, edits, deletions, timestamps | Not Produced |
| Order Entry Logs (CPOE) | Computerized Physician Order Entry | Orders placed, modified, or cancelled | Not Produced |
| Lab Accession Logs | Laboratory Information System | Specimen receipt, processing, chain-of-custody | Not Produced |
| PACS Radiology Logs | Radiology PACS System | Image upload times, viewing times, interpretation timestamps | Not Produced |
| Continuous Telemetry Monitoring | Bedside Monitoring System | Heart rate, oxygen saturation, alarm events | Not Produced |
| PACU Monitoring Logs | Post-Anesthesia Care Unit System | Vital signs and recovery monitoring post-surgery | Not Produced |
| Differential Diagnosis Documentation | Physician Progress Notes | Diagnostic reasoning and rule-outs — PE considered? | Not Located |
| PE Risk Assessment / Wells Score | Clinical Decision Support / EHR | Standardized PE risk stratification | Not Located |
| Hemoptysis Specimen Records | Laboratory / Chain-of-Custody Log | Specimen collection, accession, handling, disposition | Not Located |
| Medication Administration Record Metadata | Pharmacy / MAR System | Time orders entered and administered | Partial Only |
| Respiratory Therapy Logs | Respiratory Charting Module | Oxygen administration, respiratory treatments documented | Not Located |
| Radiology Interpretation Metadata | PACS / EHR Signature Log | Actual image viewing time vs. signature timestamp | Not Produced |

**Key:**  **Orange = Not Produced by Defendants    Yellow = Partial Only**

*Note: Each system listed above is controlled by Defendants. These systems routinely retain the listed data as a standard function of hospital operations. Native system logs — not printed chart exports — contain this evidence.*

## I. PURPOSE OF THIS EXHIBIT

*The purpose of this exhibit is not to offer medical opinion but to identify objective discrepancies and missing documentation within Defendants' certified record production when compared to contemporaneous portal records and subsequent confirmed diagnosis.*

This exhibit presents a factual, side-by-side comparison of two versions of the medical records from Plaintiff's hospitalization at Sunrise Hospital from April 17 through April 22, 2025, supplemented by the subsequent diagnosis at Summerlin Hospital:

1. The Portal Version (Exhibit B) — Records accessed by Plaintiff through the HCA Healthcare patient portal (MyHealthONE), representing the clinical record as it existed at the time of access.
2. The Litigation Version — A 350-page certified production bearing Bates stamps SH-M000001 through SH-M000350, produced by Sunrise Hospital and certified by the Custodian of Records.
3. Summerlin Hospital Records (Exhibit C) — Records from Summerlin Hospital documenting the diagnosis of acute pulmonary embolism on May 1, 2025 — nine days after Plaintiff's discharge from Sunrise Hospital.
4. No Audit Trail Documents Were Produced for This Encounter. Defendants produced summary audit trail documents for the Southern Hills Hospital encounter but did not produce any audit trail documents for any Sunrise Hospital encounter.

## II. DOCUMENT METADATA AND AUTHENTICATION

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| **Source Identification** | Digital headers from MyHealthONE patient portal | Bates stamps SH-M000001 through SH-M000350; Certification of Medical Records |
| **Total Pages** | Segmented by report type | 350 pages |
| **Certification** | None; automated portal export | Certified by Custodian of Records. Checked "Complete records" with disclaimer noting possible incompleteness. |
| **Audit Trail Documents** | N/A | Not produced. Produced for Southern Hills Hospital encounter but not for any Sunrise Hospital encounter. |

## III. SIDE-BY-SIDE COMPARISON OF CONTENT

### A. Pulmonary Embolism Screening

| Element | Portal Version (Exhibit B) | Litigation Version | Summerlin Hospital (Exhibit C) |
|---|---|---|---|
| **Presenting Symptoms** | Chest pain, tachycardia, respiratory distress | Present in records | Chest pain, shortness of breath |
| **D-Dimer Test** | Not documented as performed | Not located across 350 pages | Performed: 1.32 mcg/mL FEU (elevated; normal <0.50 mcg/mL) |
| **CT Angiogram** | Not documented as performed | Not located across 350 pages | Performed: Confirmed acute pulmonary embolism — right lower lobe |

| Element | Portal Version (Exhibit B) | Litigation Version | Summerlin Hospital (Exhibit C) |
|---|---|---|---|
| **PE Protocol Initiation** | Not documented | Not located across 350 pages | PE diagnosed; anticoagulation therapy initiated |
| **PE Risk Factors** | Post-surgical; tachycardia; respiratory distress; nasal cannula 2L | Same risk factors documented | — |

Plaintiff underwent facial contouring surgery at Sunrise Hospital on April 17, 2025, and remained hospitalized through April 22, 2025. During the post-surgical hospitalization, Plaintiff developed chest pain, tachycardia, and respiratory distress. Major surgery is a recognized risk factor for pulmonary embolism. No pulmonary embolism diagnostic pathway documentation appears anywhere in the 350-page production, including D-Dimer testing, CT angiography, Wells scoring, or PERC screening.

Nine days after Plaintiff's discharge from Sunrise Hospital, Summerlin Hospital performed both a D-Dimer test (result: 1.32 mcg/mL FEU, elevated) and a CT Angiogram, which confirmed an acute pulmonary embolism in the right lower lobe. The PE was diagnosed on May 1, 2025, at 5:19 AM (Exhibit C, ED Clinical Summary, authenticated by Elena Rodriguez).

Without audit trail data for the Sunrise encounter, it cannot be determined whether a D-Dimer or CT Angiogram was ordered and subsequently cancelled, or whether one was never ordered.

### B. Clinical Characterization of Presenting Condition

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| **Admission Clinical Notes** | Acute respiratory distress with significant tachycardia | Present in records |
| **Provider Report Characterization** | — | Frames encounter as "Dyspnea, unspecified" and "Pneumonia" |
| **Provider Report Dictation Date** | — | Dictated April 22, 2025 at 11:01 AM — day of discharge, five days after admission |

The admission clinical notes document acute respiratory distress with significant tachycardia. The Provider Report in the litigation version characterizes the encounter as "Dyspnea, unspecified" and "Pneumonia." The Provider Report was dictated on April 22, 2025 — the day of discharge — five days after the April 17 admission. This creates a distinction between contemporaneous clinical documentation and a retrospective narrative prepared on the day of discharge.

### C. Vital Signs and Oxygen Requirements

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| **Heart Rate** | Tachycardia documented (heart rates up to 103 bpm) | Present in records |
| **Oxygen Requirement** | Nasal cannula at 2L documented | Present in records |
| **Continuous Monitoring Logs** | Not present in portal summary | Not located in litigation production |

### D. Chest X-Ray Findings and Diagnosis

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| Chest X-Ray (April 19, 2025) | "Moderate bilateral perihilar and left basilar airspace disease" | Present in records |
| Diagnosis Applied | Pneumonia | Pneumonia |
| PE Differential | Not documented as considered | Not located across 350 pages |

The chest X-ray findings were attributed to pneumonia and treated with antibiotics (Azithromycin, Ceftriaxone). Pulmonary embolism was not documented as part of the differential diagnosis despite overlapping symptom presentation.

### E. Discharge Status

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| Discharge Date | April 22, 2025 | April 22, 2025 |
| Discharge Diagnosis | — | "Dyspnea, unspecified" and "Pneumonia" |
| Actual Diagnosis (confirmed 9 days later) | — | Acute pulmonary embolism, right lower lobe (Summerlin Hospital, Exhibit C, May 1, 2025) |
| Ongoing Symptoms at Discharge | Respiratory symptoms documented | Characterized as stable |

### F. Radiology Interpretation Timestamp Conflict

| Event | Timestamp | Document | Observation |
|---|---|---|---|
| Portable Chest X-Ray Performed | April 20, 2025 — 8:33 PM CDT | SH-M000100 | Image acquisition |
| Radiology Interpretation Signed | April 20, 2025 — 6:35 PM PDT (= 8:35 PM CDT) | SH-M000100 | ~2 minutes after image acquired — requires upload, transmission, viewing, and formal interpretation. PACS audit log not produced. |

The portable chest X-ray was performed at 8:33 PM CDT. The clinical interpretation was electronically signed at 6:35 PM PDT (8:35 PM CDT) — approximately two minutes after the X-ray was taken. A signed clinical interpretation requires the image to be uploaded, transmitted, viewed, and formally interpreted. Radiology/PACS audit metadata — not produced — would document the actual sequence and timing of these events. This compressed interval is not explained by any produced PACS metadata.

### G. Hemoptysis Specimen

| Element | Detail |
|---|---|
| **Hemoptysis Reported** | Plaintiff reports that hemoptysis occurred and that nursing staff were notified during the hospitalization |
| **Specimen** | Plaintiff reports that a specimen was collected in a cup and provided to nursing staff for testing |
| **Documentation in Production** | No documentation of specimen collection, lab accession, chain-of-custody, or testing appears in the certified 350-page production |

Hemoptysis is a recognized clinical indicator for pulmonary embolism. Plaintiff reports that hemoptysis occurred and that a collected specimen was provided to nursing staff for testing. No documentation of specimen collection, laboratory order, lab accession, or record of the specimen's handling or disposition appears anywhere in the 350-page certified production.

### H. Vital Signs: Periodic vs. Continuous Monitoring

| Element | Portal Version (Exhibit B) | Litigation Version |
|---|---|---|
| **Reported Vital Sign Events** | Tachycardia and respiratory distress documented | Periodic vitals at set intervals present |
| **Continuous Monitoring Logs** | Not present in portal summary | Not located in litigation production |
| **PACU Monitoring Logs** | Not present in portal summary | Not located in litigation production |

The litigation production includes periodic vital signs taken at set intervals. Continuous monitoring logs and PACU monitoring logs were not located in the 350-page production. Plaintiff was a post-surgical patient for whom such monitoring is standard of care.

### I. Billing Finality vs. Certification Disclaimer

| Element | Date | Detail |
|---|---|---|
| **Bill Generated** | April 27, 2025 | $799,833.00 — generated five days after discharge, indicating the hospital considered the clinical record final for billing purposes |
| **Custodian Certification** | July 7, 2025 | Certified as "Complete records" with disclaimer: "due to the timing of this request it is possible that a portion of the medical record may be incomplete and/or preliminary at this time" |

The hospital generated a bill of $799,833.00 on April 27, 2025, five days after discharge — treating the clinical record as final. The Custodian of Records certified the production as "Complete records" on July 7, 2025, while simultaneously disclaiming completeness. The hospital's own billing conduct refutes its custodian's disclaimer.

## IV. MISSED OPPORTUNITY — DIFFERENTIAL FAILURE

Plaintiff was a post-surgical patient who developed chest pain, tachycardia, respiratory distress, oxygen dependency (nasal cannula at 2L), and reported hemoptysis during a five-day inpatient hospitalization following major surgery. The combination of post-operative status, tachycardia, respiratory distress, supplemental oxygen requirement, chest pain, and hemoptysis constitutes a clinical presentation in which pulmonary embolism is routinely considered in differential diagnosis.

No pulmonary embolism diagnostic pathway documentation appears anywhere in the 350-page production, including D-Dimer testing, CT angiography, Wells scoring, or PERC screening. Nine days after discharge, Summerlin Hospital — presented with the same symptoms — confirmed an acute pulmonary embolism in the right lower lobe. Anticoagulation therapy was initiated at Summerlin on May 1, 2025.

### What Summerlin Hospital Did That Sunrise Hospital Did Not

| Diagnostic Action | Sunrise Hospital (April 17–22, 2025) | Summerlin Hospital (April 30 – May 1, 2025) |
|---|---|---|
| **D-Dimer Test** | Not located in 350-page production | Performed: 1.32 mcg/mL FEU (elevated) |
| **CT Angiogram** | Not located in 350-page production | Performed: Confirmed acute PE, right lower lobe |
| **Anticoagulation Therapy** | No | Yes — May 1, 2025 |
| **Pulmonary Embolism Diagnosed** | No | Yes — May 1, 2025, 5:19 AM |

## V. FORENSIC SIGNIFICANCE

The following observations are noted from a records integrity perspective:

- Pulmonary embolism diagnosed on May 1, 2025 — nine days after a five-day post-operative admission at Sunrise Hospital during which Plaintiff presented with recognized PE risk factors and symptoms.
- No pulmonary embolism diagnostic pathway documentation located anywhere in the 350-page certified production, including D-Dimer testing, CT angiography, Wells scoring, or PERC screening.
- Plaintiff reports hemoptysis specimen collected and provided to nursing staff. No lab accession, order, chain-of-custody, or disposition record located in the production.
- Radiology interpretation electronically signed approximately two minutes after the chest X-ray was performed — a timeline requiring image upload, transmission, viewing, and formal interpretation.
- No audit trail documents produced for any Sunrise Hospital encounter, preventing verification of whether PE screening was ordered and cancelled, or never ordered.
- $799,833 billing finalized five days post-discharge contradicts the custodian's July 2025 disclaimer of potential incompleteness.

## VI. CERTIFICATION DEFICIENCY

The Custodian of Records certified the 350-page production as "Complete records" but simultaneously included the following disclaimer on Page 1:

> *"due to the timing of this request it is possible that a portion of the medical record may be incomplete and/or preliminary at this time."*

The certification simultaneously asserts completeness and disclaims completeness. A custodian certification that contradicts itself on its face raises a direct question regarding the reliability and admissibility of the certification under Fed. R. Evid. 902(11) and 28 U.S.C. § 1746.

## VII. DOCUMENTS NOT PRODUCED

| Document Type | Clinical Standard | Status in 350-Page Production |
|---|---|---|
| **D-Dimer Test** | Standard screening — chest pain, tachycardia, respiratory distress | Not Located |
| **CT Angiogram** | Standard diagnostic when clinical PE suspicion exists | Not Located |
| **PE Protocol Documentation** | Standard workflow for ruling out pulmonary embolism | Not Located |
| **PE Risk Assessment / Wells Score** | Standard risk stratification tool | Not Located |
| **Hemoptysis Specimen Documentation** | Specimen collection, lab order, accession, chain-of-custody, disposition | Not Located |
| **Continuous Monitoring Logs** | Standard for post-surgical patients with respiratory distress | Not Located |
| **PACU Monitoring Logs** | Standard for post-surgical patients | Not Located |
| **Radiology / PACS Audit Metadata** | Documents image upload, transmission, viewing, signature event logs | Not Produced |
| **Lab Accession Logs** | Documents receipt, processing, disposition of specimens collected | Not Produced |
| **EHR Audit Trail** | User activity, order creation/cancellation, edit history, timestamps | Not Produced |
| **Audit Trail Documents** | Produced for Southern Hills encounter; not produced for this encounter | Not Produced |

Without audit trail data, it cannot be determined whether PE screening tests were ordered and subsequently cancelled, or whether they were never ordered. The EHR Missing Evidence Map (Chart 3) identifies the specific hospital systems controlling each category of unproduced evidence.

## VIII. RECORD TIMELINE

| Date | Event |
|---|---|
| **April 17, 2025** | Plaintiff undergoes facial contouring surgery at Sunrise Hospital. Post-surgical hospitalization begins. |
| **April 17–22, 2025** | Five-day post-surgical hospitalization. Plaintiff develops chest pain, tachycardia, and respiratory distress. No D-Dimer, CT Angiogram, PE risk assessment, or Wells score located in the record. |
| **April 19, 2025** | Chest X-ray shows "moderate bilateral perihilar and left basilar airspace disease." Attributed to pneumonia. |
| **April 20, 2025 — 8:33 PM CDT** | Portable chest X-ray performed (SH-M000100). |
| **April 20, 2025 — 6:35 PM PDT (8:35 PM CDT)** | Clinical interpretation electronically signed by Dr. Galen Hewell — approximately two minutes after image acquisition. |
| **April 22, 2025 — 11:01 AM** | Provider Report dictated — five days after admission, on the day of discharge. Characterizes encounter as "Dyspnea, unspecified" and "Pneumonia." |
| **April 22, 2025** | Plaintiff discharged from Sunrise Hospital. PE workup not performed. |
| **April 27, 2025** | Sunrise Hospital generates bill of $799,833.00 — five days post-discharge. Record treated as final for billing purposes. |
| **April 30, 2025 — 9:19 PM** | Plaintiff presents to Summerlin Hospital with chest pain and shortness of breath. |
| **April 30, 2025** | Summerlin Hospital performs D-Dimer test: 1.32 mcg/mL FEU (elevated; normal <0.50 mcg/mL). |
| **May 1, 2025 — 5:19 AM** | CT Angiogram at Summerlin Hospital confirms acute pulmonary embolism — right lower lobe (Exhibit C, authenticated by Elena Rodriguez). Anticoagulation therapy initiated. |
| **July 7, 2025** | Custodian of Records certifies 350-page production as "Complete records" with disclaimer noting possible incompleteness — contradicting the hospital's own billing finality. |

## IX. SUMMARY OF FACTUAL FINDINGS

1. Plaintiff underwent facial contouring surgery on April 17, 2025, and developed chest pain, tachycardia, and respiratory distress during the five-day hospitalization. The PE symptoms developed while Plaintiff was already under Defendants' care.

2. No pulmonary embolism diagnostic pathway documentation appears anywhere in the 350-page certified production, including D-Dimer testing, CT angiography, Wells scoring, or PERC screening. These are standard tools for pulmonary embolism evaluation in patients presenting with Plaintiff's symptoms and risk factors.

3. Nine days after discharge from Sunrise, a non-HCA hospital diagnosed a pulmonary embolism. On May 1, 2025, Summerlin Hospital performed a D-Dimer test (result: 1.32 mcg/mL FEU, elevated) and a CT Angiogram confirming an acute pulmonary embolism in the right lower lobe (Exhibit C). Plaintiff presented to Summerlin with the same symptoms documented at Sunrise Hospital.

4. The chest X-ray findings were attributed to pneumonia without documented consideration of PE. The April 19 chest X-ray showed "moderate bilateral perihilar and left basilar airspace disease." Pulmonary embolism was not located as part of the differential diagnosis.

5. The Provider Report was dictated five days after admission, on the day of discharge. It characterizes the encounter as "Dyspnea, unspecified" and "Pneumonia," and was dictated on April 22, 2025 — five days after the April 17 admission.

6. The admission clinical notes and the Provider Report characterize the presenting condition differently. The admission notes document acute respiratory distress with significant tachycardia. The Provider Report, dictated five days later on the day of discharge, characterizes the encounter as "Dyspnea, unspecified" and "Pneumonia."

7. The certification simultaneously asserts and disclaims completeness. The Custodian of Records checked "Complete records" but included a disclaimer that "a portion of the medical record may be incomplete and/or preliminary at this time." This disclaimer is contradicted by the hospital's own billing conduct: a $799,833 bill was finalized five days post-discharge.

8. No audit trail documents were produced for this encounter. Defendants produced summary audit trail documents for the Southern Hills Hospital encounter but produced no audit trail documents for any Sunrise Hospital encounter. Without audit trail data, it cannot be determined whether PE screening was ordered and subsequently cancelled, or whether it was never ordered.

9. Plaintiff was hospitalized for five days and discharged with a diagnosis of pneumonia. The actual diagnosis — acute pulmonary embolism — was confirmed nine days later at a non-HCA facility.

Respectfully submitted,

Dated: March 16th , 2026

**/s/ Jade Riley Burch**
**JADE RILEY BURCH**