**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Jade Riley Burch,

     Plaintiff

v.

HCA Healthcare, Inc., et al.,

     Defendants

Case No.: 2:25-cv-01408-JAD-MDC

**Order Granting Leave to Amend, Denying Motion to Strike, and Resolving Motions to Dismiss**

[ECF Nos. 50, 51, 59, 74]

Jade Burch claims that three Las Vegas hospitals and their corporate parent, HCA Healthcare, Inc., violated federal and state law during a series of emergency-care visits and then retaliated after she complained through HCA Healthcare's risk-management channels. The hospital defendants and HCA Healthcare move to dismiss Burch's first amended complaint, with HCA Healthcare also contesting this court's personal jurisdiction over it. Burch moves for leave to file a second amended complaint that adds defendants, reorganizes her claims, and supplements with new factual detail drawn from medical-record and billing productions. She also moves to strike an exhibit that HCA Healthcare attached to its reply brief.

Because Federal Rule of Civil Procedure (FRCP) 15's liberal amendment standard and judicial economy favor testing the merits against the proposed operative pleading, I grant Burch leave to amend and deny as moot the hospital defendants' FRCP 12(b)(6) motion. But amendment does not moot HCA Healthcare's threshold jurisdictional challenge, so I evaluate that challenge against Burch's most developed jurisdictional allegations and dismiss HCA Healthcare for lack of personal jurisdiction. I also deny Burch's motion to strike HCA Healthcare's reply exhibit because the challenged Form 10-K excerpt fairly responds to her reliance on other portions of the same public filing.

**Background[1]**

Burch's claims arise from a series of emergency-room trips to HCA-affiliated hospitals that she alleges were mishandled because of her seizure disorder, cognitive limitations, and transgender status. She alleges that her seizure disorder, post-traumatic stress disorder, diabetes, and hypertension require careful medication management, recognition of postictal cognitive impairment, and adherence to advance directives when she cannot make medical decisions for herself.[2] To address those concerns, Burch executed a notarized psychiatric advance directive on June 6, 2025, designating Porscha Ryan as her medical decision-maker during periods of incapacity and providing instructions about medications, restraints, and communication needs.[3] According to Burch, the defendants repeatedly ignored those medical realities and safeguards during a series of hospital visits in 2025.

The first two encounters occurred at MountainView Hospital and Sunrise Hospital. Burch alleges that she arrived at MountainView in March 2025 by ambulance with chest pain, breathing difficulty, and seizures, but the hospital discharged her by rideshare two days later without stabilizing her neurological condition, assessing her capacity, or arranging a safe discharge plan.[4] The following month, Burch sought treatment at Sunrise Hospital for symptoms that she alleges warranted pulmonary-embolism screening, but Sunrise discharged her with a pneumonia diagnosis and without ruling out a pulmonary embolism.[5] Eight days later,

---

[1] These facts are taken from Burch's first-amended complaint (ECF No. 9) and are not intended as findings of fact.

[2] ECF No. 9 at ¶¶ 7, 15.

[3] *Id.* at ¶ 16.

[4] *Id.* at ¶¶ 17–20.

[5] *Id.* at ¶ 22–24.

Summerlin Hospital, a non-HCA facility, diagnosed her with a pulmonary embolism after performing testing that Sunrise had not.[6]  When Burch returned to Sunrise on May 29th after breakthrough seizures, staff allegedly treated her postictal condition as a behavioral problem and chemically restrained her without informed consent, medical necessity, or consultation with Ryan.[7]

After those episodes, Burch sent legal notices to Cinthya Cook, whom she identifies as a risk-management employee associated with HCA Healthcare.[8]  She alleges that she sent a pre-litigation demand letter on June 22nd, asserting violations of the Emergency Medical Treatment and Labor Act (EMTALA), disability discrimination, and unsafe discharges across HCA facilities, then she sent an email on June 26th threatening media escalation if the issues were not addressed within 48 hours.[9]  Burch claims that Cook acknowledged receipt of her correspondence and directed hospital staff to review Burch's case and medical history, which Burch characterizes as the beginning of an enterprise-wide response.[10]

Within 48 hours of her June 26, 2025, email, Burch was transported to Southern Hills where staff ignored her psychiatric advance directive, failed to contact Ryan until Ryan arrived independently, restrained her without required orders or monitoring documentation, and repeatedly sedated her when she attempted to communicate.[11]  Burch claims that she suffered 32

---

[6] *Id.* at ¶¶ 25–26.

[7] *Id.* at ¶¶ 27–29.

[8] *Id.* at ¶ 32.

[9] *Id.*

[10] *Id.* at ¶¶ 33–34.

[11] *Id.* at ¶¶ 35–39.

3

seizures over 48 hours and left with motor dysfunction requiring walker assistance.[12]  She characterizes this encounter as the culmination of disability- and gender-identity-based discrimination, alleging that defendants used false psychiatric labels and gender-based diagnostic assumptions associated with her transgender status, failed to recognize her gender identity, and escalated their response after she asserted rights protected by federal disability and anti-discrimination laws.[13]

On these facts, Burch brings claims under EMTALA, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, Title III of the Americans with Disabilities Act (ADA), Racketeer Influenced and Corrupt Organizations Act (RICO), and 42 U.S.C. § 1985(3), along with Nevada-law claims for battery, false imprisonment, intentional infliction of emotional distress, negligent hiring, and fraud or medical-record falsification.  The three hospital defendants—Sunrise, MountainView, and Southern Hills—move to dismiss the first amended complaint under FRCP 12(b)(6), arguing that Burch has not plausibly pled any federal or state claim and that her allegations are really medical-malpractice theories repackaged as federal civil-rights, EMTALA, RICO, and intentional-tort claims.[14]  HCA Healthcare separately moves to dismiss under FRCP 12(b)(2), arguing that this court lacks personal jurisdiction over it because it is a Delaware-and-Tennessee holding company with no employees, no Nevada business, and no role in Burch's care; or in the alternative, for failure to state a claim.[15]

---

[12] *Id.* at ¶ 39.

[13] *Id.* at ¶¶ 54, 59–61.

[14] ECF No. 50.

[15] ECF No. 51.

Burch opposes both motions in a single filing.[16] She defends the first amended complaint as a set of process-based federal claims, not a malpractice case, and argues that HCA Healthcare is subject to specific jurisdiction because its corporate policies, risk-management systems, electronic-health-record infrastructure, and billing systems caused foreseeable harm in Nevada through its hospital subsidiaries. She relies on HCA Healthcare's public filings—particularly its 2024 Form 10-K and a July 2025 Form 8-K press release—to argue that HCA Healthcare publicly describes itself as operating hundreds of hospitals while telling this court that it is merely a non-operating holding company. After HCA Healthcare replied with an additional page from its Form 10-K to rebut Burch's reliance on that public filing, Burch moved to strike the exhibit or, alternatively, for leave to file a sur-reply.[17]

While those motions were pending, Burch moved for leave to file a second amended complaint.[18] The proposed amended pleading adds new defendants, including revenue-cycle, staffing, physician, nursing, and risk-management actors; adds or refines several claims; and reorganizes her EMTALA, discrimination, retaliation, RICO, record-falsification, and billing theories around information that Burch says came from defendants' certified litigation productions and related review.

---

[16] ECF No. 55.

[17] ECF No. 58 at 3–4; ECF No. 58-1; ECF No. 59; ECF No. 61 at 2.

[18] ECF No. 74.

## Discussion

**A.    Burch is granted leave to amend, so the hospital defendants' motion to dismiss is denied as moot.**

> ### 1.    *Judicial economy favors deciding amendment before the hospital defendants' dismissal motion.*

Burch moves to file a second amended complaint before the deadline for amending pleadings.  Defendants oppose amendment and urge the court to deny or defer Burch's amendment motion until I decide the pending motions to dismiss, emphasizing that those motions have been fully briefed since October 2025; that Burch waited nearly five months after those motions were briefed to seek amendment; and that, in the meantime, she has filed notices, errata, emergency motions, and supplemental materials that have complicated the docket.[19]

Defendants have not shown that the pending motions to dismiss must be resolved before I consider Burch's timely motion for leave to amend.  Nor do they identify any authority requiring that result because Burch has filed additional notices, errata, or other docket entries while those motions have been pending.  And in these circumstances, judicial economy points the other way.  Because the proposed second amended complaint changes the operative pleading in material ways, it makes little sense to devote judicial resources to resolving an FRCP 12(b)(6) motion aimed at the first amended complaint if leave to amend would be considered then, too.

> ### 2.    *Defendants have not shown undue prejudice or a procedural defect that warrants denying leave.*

Defendants next argue that, even if I consider Burch's amendment motion first, leave should be denied because the proposed complaint would prejudice them, violates Local Rule 15-1, and is futile.  FRCP 15 directs that "the court should freely give leave when justice so

---

[19] ECF No. 76 at 2–4.

requires," and this policy should be applied with "extreme liberality."[20] Courts may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility.[21]

Prejudice carries the greatest weight in the leave-to-amend analysis,[22] and the defendants have not shown it. Burch moved for leave months before the scheduling order's amendment deadline, discovery does not close until December 18, 2026, and no trial date has yet been set. Defendants' prejudice argument is mostly that they already briefed motions to dismiss and now face a longer, more complicated complaint. But the need to respond to an amended complaint does not constitute undue prejudice in these circumstances.[23]

Nor have defendants shown that amendment is clearly futile. Futility is evaluated under the same standard that governs a motion to dismiss under FRCP 12(b)(6), so a proposed amended complaint must contain sufficient factual matter to state a plausible claim for relief.[24] But other courts have held that denial on futility grounds is generally disfavored[25] and have deferred sufficiency challenges if the merits arguments are better developed through a motion directed at the operative pleading.[26]

---

[20] *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

[21] *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cnty.,* 708 F.3d 1109, 1117 (9th Cir. 2013)

[22] *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

[23] *See DCD Programs*, 833 F.2d at 187–188 (finding no prejudice from amendment when discovery remained open and neither a trial date nor a pretrial conference had been scheduled).

[24] *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

[25] *See, e.g., Green Valley Corp. v. Caldo Oil Co.*, 2011 WL 1465883, at *6 (N.D. Cal. 2011) (pointing out that there is a "general preference against denying a motion for leave to amend based on futility").

[26] *See, e.g., Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *Steward v. CMRE Fin. Servs., Inc.*, 2015 WL 6123202, at *2 (D. Nev. Oct. 16, 2015); *GMAC Mortgage LLC v. Nev. Ass'n Servs., Inc.*, 2018 WL 487101, at *2 (D. Nev. Jan. 5, 2018).

Deferral of the hospital defendants' sufficiency challenge is appropriate here. The proposed second amended complaint differs significantly from the pleading that generated the pending dismissal motion. For example, defendants argued that the Southern Hills EMTALA claim fails because Burch was admitted to the hospital, so EMTALA's stabilization duty ended and any later discharge theory sounds only in malpractice.[27] But the proposed second amended complaint alleges that the "admission" was nominal only: no inpatient bed was assigned, Burch was never transferred from the emergency department to an inpatient unit, no inpatient attending orders were entered, and she remained under emergency-department-level management throughout the encounter.[28] The hospital defendants do not explain why those allegations fail to alter the EMTALA analysis. Instead, they assert generally that the proposed claims fail "for the same reasons" because there is "nothing new or different."[29]

The proposed amendments also bring in numerous defendants who are not currently parties to this case. Defendants devote much of their opposition to arguing that the new claims against Cook, Orber, Parallon, HealthTrust, and several physicians are legally deficient.[30] But those individuals and entities have not yet been served, appeared, or had an opportunity to assert their own defenses.[31] Given the number of new parties and allegations in the proposed second

---

[27] ECF No. 57 at 4.

[28] ECF No. 75 at 42.

[29] ECF No. 76 at 8.

[30] *Id.* at 4–12.

[31] Some courts have questioned the extent to which existing defendants may oppose amendment by asserting futility arguments on behalf of proposed defendants who are not yet parties. *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 380 (D.N.J. 2023) ("Many courts have . . . conclud[ed] that current parties do not have standing to oppose a motion to amend seeking to add new parties on the basis of futility of amendment."); *Pacesetter Consulting LLC v. Kaprelian*, 2019 WL 2603722, *2 (D. Ariz. 2019) ("Bassetti can only argue that proposed amended allegations against himself would be futile. His motion, however, asserts arguments on behalf of

amended complaint would add, I find that the sufficiency of the claims is better tested through a motion directed at the operative complaint.

That leaves defendants' Local Rule 15-1 procedural objection. They argue that Burch's errata violates the rule because it adds two proposed defendants after the motion for leave was filed, making the proposed amendment incomplete unless read together with multiple filings. But Burch asks that the second amended complaint attached to the errata be treated as the operative proposed pleading.[32] So granting leave only as to that corrected pleading cures the procedural concern that prompted defendants' objection. The corrected proposed pleading includes an exhibit list but does not appear to attach the referenced exhibits. So if Burch chooses to rely on exhibits, she must file them with the second amended complaint or remove references suggesting that they are attached.

I therefore grant leave only as to the corrected proposed second amended complaint attached to the errata, and Burch must file a standalone version that is complete in itself. No earlier proposed version will have any operative effect. Because the second amended complaint will supersede the first amended complaint, I deny the hospital defendants' motion to dismiss as moot and without prejudice to their ability to file a timely new motion to dismiss this amended pleading.

**B.    HCA Healthcare is dismissed for lack of personal jurisdiction.**

HCA Healthcare's motion also raises a threshold objection to this court's power to hale it into this forum. So I exercise my discretion to evaluate HCA Healthcare's jurisdictional

---

himself as well as on behalf of [two other entities]. His arguments as to futility on behalf of [those] entities are improper.").

[32] ECF No. 75 at 4.

9

challenge against the allegations in Burch's proposed second amended complaint, which contains her most developed theory for why this court may exercise personal jurisdiction over HCA.

The Fourteenth Amendment to the U.S. Constitution limits a forum state's power "to bind a nonresident defendant to a judgment of its courts."[33]  So a federal district court may exercise jurisdiction over a nonresident defendant only with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[34]  To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[35]  Because Nevada's long-arm statute reaches the constitutional zenith,[36] the question is whether jurisdiction "comports with the limits imposed by federal due process."[37]  FRCP 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.[38]

The law recognizes two categories of personal jurisdiction: general and specific.  General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state—contacts so pervasive that they "approximate" the defendant's "physical presence" in the forum.[39]  Because both parties concede that HCA Healthcare isn't subject to general jurisdiction in Nevada, I undertake only a specific-jurisdiction analysis.  Specific jurisdiction "focuses on the

---

[33] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[34] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[35] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[36] Nev. Rev. Stat. § 14.065.

[37] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[38] Fed. R. Civ. P. 12(b)(2).

[39] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

relationship among the defendant, the forum, and the litigation."[40]  For specific jurisdiction to attach, "[t]he plaintiff cannot be the only link between the defendant and the forum,"[41] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate" either.[42]

The Ninth Circuit applies a three-prong test to determine whether the court may exercise specific jurisdiction over an out-of-state defendant: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable."[43]  The plaintiff bears the burden of satisfying the first two prongs.[44]  But when a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."[45]  In deciding whether a plaintiff has met that burden, the court must accept as true the uncontroverted allegations in its complaint, but a plaintiff cannot rely on "bare allegations" alone.[46]  The court also may review affidavits or declarations submitted by either side,[47] and "conflicts between the parties over statements contained in affidavits must be resolved in the

---

[40] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[41] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[42] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[43] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *see also Schwarzenegger*, 374 F.3d at 802.

[44] *Schwarzenegger*, 374 F.3d at 802.

[45] *Id.*

[46] *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[47] *Id.*

plaintiff's favor."[48]  If the plaintiff satisfies the first two prongs, then the defendant must show a "compelling case that the exercise of jurisdiction would not be reasonable" in order to escape the exercise of jurisdiction.[49]

### 1.   *Burch's motion to strike HCA Healthcare's reply exhibit is denied.*

Before I turn to the merits, I first resolve Burch's motion to strike the Form 10-K excerpt that HCA Healthcare attached to its reply in support of its personal-jurisdiction motion.  Burch argues that the excerpt is improper new evidence because HCA Healthcare did not attach it to its opening motion and because it was not among the Form 10-K pages that she filed with her opposition.[50]  She asks me to strike it or, alternatively, to allow a short sur-reply with additional excerpts from the same filing.

I deny both requests.  District courts generally should not consider new evidence presented in a reply without first giving the non-movant an opportunity to respond.[51]  "Evidence is not new, however, if it is submitted in direct response to proof adduced in opposition to a motion."[52]  Burch relied on selected Form 10-K excerpts to contend that HCA Healthcare's public filings contradicted the declaration that the company submitted in its motion.  HCA Healthcare answered with another page from that same filing to explain the language that Burch cited.[53]  Because the exhibit responds to Burch's own use of the Form 10-K and does not introduce a new jurisdictional theory, neither striking it nor permitting a sur-reply is warranted.

---

[48] *Id.* at 800 (cleaned up).

[49] *Id.* at 802 (cleaned up).

[50] ECF No. 59 at 1–2.

[51] *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir. 1996).

[52] *Edwards v. Toys "R" Us,* 527 F. Supp. 2d 1197, 1205 n. 31 (C.D. Cal. 2007) (citing *Terrell v. Contra Costa County,* 232 F. Appx. 626, 629 n. 2 (9th Cir. 2007) (unpublished)).

[53] ECF No. 61 at 2–3.

### 2. Burch has not shown that HCA Healthcare purposefully directed suit-related conduct at Nevada.

To satisfy the first prong of specific jurisdiction, a plaintiff must show that the defendant (1) "committed an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant kn[ew was] likely to be suffered in the forum state."[54] Burch theorizes that HCA Healthcare "purposefully directed activities at Nevada by promulgating and enforcing corporate-wide policies through centralized risk management and compliance departments" that govern Sunrise, MountainView, and Southern Hills, including policies for psychiatric-advance-directive recognition, restraint practices, billing systems, and electronic-medical-record platforms.[55] Burch relies especially on the timing of the Southern Hills visit—within 48 hours of her final email to Cook—and Cook's alleged request that hospital staff review her case. She also points to Parallon, an HCA affiliate that she alleges performs billing and revenue-cycle functions for HCA facilities.[56] Read generously, these allegations appear to rest on the premise that HCA Healthcare's indirect ownership of the Nevada hospitals and alleged role in enterprise-wide operations permit the hospitals' Nevada contacts to be attributed to HCA Healthcare.

But a "parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes" unless the subsidiary is the parent's general

---

[54] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018). This lawsuit contains an array of claims. Because both parties only apply the purposeful-direction test, and I find that it largely sounds in tort, I do not address the purposeful-availment test.

[55] ECF No. 55 at 15–16.

[56] *Id.*; ECF No. 75 at 10–14.

agent or acts as the parent's alter ego.[57]  A corporation can be subject to personal jurisdiction in the forum if it "direct[s] its agents . . . to take action there."[58]  To satisfy the agency test, the plaintiff must show "that the subsidiary represents the parent corporation by performing services 'sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services.'"[59]  To satisfy the alter-ego test, the plaintiffs must show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice."[60]

Burch has not made that showing.  She relies on defendants' certificate of interested parties to argue that HCA Healthcare is the "100% indirect owner of each defendant hospital."[61]  That document identifies HCA Healthcare as a publicly traded parent company and traces the hospitals' ownership through several intervening entities.[62]  For Sunrise, it identifies a chain from Sunrise Hospital & Medical Center, LLC to AC Med, LLC, then Healthtrust, HCA Inc., and finally HCA Healthcare, and states that HCA Healthcare indirectly holds a greater-than-10% interest in Sunrise.[63]  For MountainView, it states that MountainView is owned 100% by Galen Holdco, which is owned 100% by Healthtrust; Healthtrust's sole shareholder is HCA Inc.; HCA Inc.'s sole shareholder is HCA Healthcare; and HCA Healthcare indirectly holds a greater-than-

---

[57] *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citations omitted).

[58] *Daimler AG*, 571 U.S. at 135 n.13.

[59] *Harris Rutsky*, 328 F.3d at 1135 (cleaned up).

[60] *Id.* at 1134 (cleaned up).

[61] ECF No. 75 at 11, 13.

[62] ECF No. 42 at 1–2.

[63] *Id.* at 2.

10% interest in MountainView.[64]  For Southern Hills, it states that Healthtrust owns 100% of Southern Hills Medical Center, HCA Inc. owns 100% of Healthtrust, and HCA Healthcare owns 100% of HCA Inc.[65]  So the certificate may support Burch's point that HCA Healthcare sits at the top of each hospital's ownership chain, but ownership alone is not purposeful direction under the law.[66]

HCA Healthcare's public filings do not fill that gap.  Burch treats the Form 10-K's references to "we," "our," "facilities," and "hospitals" as admissions that HCA Healthcare itself operates the Nevada hospitals or directs their policies.  But the excerpt explains that HCA Healthcare is a holding company whose affiliates own and operate hospitals and that the collective terms refer to HCA Healthcare and its affiliates unless context indicates otherwise.[67]  Read along with the certificate, the Form 10-K shows that HCA Healthcare is the public parent of a corporate family that includes hospital-operating affiliates.  That conclusion is consistent with the declaration of Edward Curvin, who serves as "Managing Director for Tax Research and Consulting" for HCA Healthcare.[68]  Curvin avers that HCA Healthcare is a non-operating holding company with no employees, does not conduct business in Nevada, and did not participate in, direct, or control Burch's care.[69]  The Form 10-K does not show who managed Burch's care, who handled her complaints, who wrote or enforced the challenged psychiatric-

---

[64] *Id.*

[65] *Id.*

[66] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

[67] ECF No. 58-1 at 2.

[68] ECF No. 51-1 at 1–2.

[69] *Id.* at ¶ 4.

15

advance-directive or restraint policies, who controlled Parallon's billing decisions, or who directed the treatment, discharge, records, or billing conduct at issue here.

So Burch's jurisdictional showing stops at affiliation, enterprise language, and alleged systemwide coordination. Those facts may describe the broader HCA corporate structure, but they do not show that Sunrise, MountainView, or Southern Hills performed hospital services as HCA Healthcare's agent, that HCA Healthcare would run Nevada emergency rooms itself if the individual hospitals did not, or that the entities failed to maintain separate corporate identities. Because Burch has not shown that HCA Healthcare purposefully directed suit-related conduct toward Nevada or that the Nevada hospitals' contacts may be attributed to it, she has not satisfied the first requirement for specific jurisdiction.[70]

### 3.    *Jurisdictional discovery is not warranted.*

Burch alternatively asks for jurisdictional discovery into HCA Healthcare's "Nevada-facing policy control, EMR/billing interfaces, and risk-management communications."[71] Jurisdictional discovery is appropriate if the plaintiff identifies controverted jurisdictional facts or establishes that a more satisfactory showing of those facts is necessary.[72] "But a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery."[73]

Neither basis is present here. First, Burch has not shown a material conflict in the jurisdictional evidence. She argues that Curvin's declaration is controverted because HCA

---

[70] Because she fails at the first step of the specific-jurisdiction analysis, I need not and do not reach the remaining prongs.

[71] ECF No. 55 at 14–15.

[72] *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

[73] *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023).

Healthcare's public filings say that "we operated" hospitals.[74]  But the same Form 10-K explains that HCA Healthcare is a holding company whose affiliates own and operate hospitals and that collective terms like "HCA," "we," "our," and "us" refer to HCA Healthcare and its affiliates unless context indicates otherwise.  So the public filing does not materially contradict Curvin's assertion that HCA Healthcare itself is a non-operating holding company, does not conduct business in Nevada, and did not participate in Burch's care.  At most, the filing confirms what the certificate of interested parties also shows: HCA Healthcare is the public parent of a corporate family that includes the Nevada hospitals.

Second, a more satisfactory showing of the known jurisdictional facts is not necessary. Burch already has the ownership structure and the public filings, and I accept those materials for present purposes.  While they show corporate affiliation, they do not show HCA Healthcare's own direction of the Nevada conduct, an agency relationship for the suit-related acts, or facts supporting an alter-ego theory of liability.  Discovery is not needed to clarify the ownership chain because the certificate already provides it.  And even accepting Burch's theory, the discovery she seeks will not establish personal jurisdiction over HCA Healthcare.[75]  Burch

---

[74] ECF No. 55 at 16, 19–21; ECF No. 59 at 2–4.

[75] The distinction is between discovery that would develop an already plausible attribution theory and discovery that would search for one. *See, e.g. CMB Infrastructure Group IX, LP v. Cobra Energy Inv. Fin., Inc.*, 572 F. Supp. 3d 950, 965–66 (D. Nev. 2021) (permitting limited jurisdictional discovery because Santander's subsidiary owned a stake in a Nevada project, participated in its board, allegedly failed to make required disclosures, gave another defendant its proxy, and later sold its project interest); *Harris Rutsky*, 328 F.3d at 1135–36 (remanding for jurisdictional discovery because the record showed 100% ownership, shared officers, shared offices, shared staff, and some evidence that the parent acted beyond investor oversight); *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 652–53 (9th Cir. 2010) (holding that limited alter-ego discovery was warranted because the plaintiff identified specific transactions that, if supported, could establish jurisdiction).  *But see Boschetto*,539 F.3d at 1020 (affirming denial of jurisdictional discovery because the request rested on little more than a hunch).

assumes that evidence of centralized policies, shared electronic-record systems, integrated billing functions, or corporate risk-management oversight would show that HCA Healthcare is responsible for the Nevada hospitals' conduct. But that premise is unsound. A parent corporation may own subsidiaries, establish enterprise-wide policies, receive reports from affiliates, and describe the enterprise collectively in public filings without becoming subject to personal jurisdiction wherever those subsidiaries operate.[76]

So this is not a case in which discovery is needed to resolve controverted jurisdictional facts or to make a more satisfactory showing of facts already pointing toward jurisdiction. It is a request to search through affiliate systems in the hope that a parent-company contact will appear. Because that is not enough, I deny Burch's request for jurisdictional discovery, and I grant HCA Healthcare's motion to dismiss it for lack of personal jurisdiction.

## Conclusion

IT IS THEREFORE ORDERED that Burch's motion for leave to file a second amended complaint **[ECF No. 74] is GRANTED**. Burch must file the corrected proposed second amended complaint attached to her notice of errata [ECF No. 75] as a standalone docket entry by June 19, 2026.

---

[76] *See Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980); *see also HDT Bio Corp. v. Emcure Pharms., Ltd.*, 704 F. Supp. 3d 1175, 1192 (W.D. Wash. 2023) ("Since the Ninth Circuit's decision in *Kramer Motors*, courts have consistently held that a parent entity may have 'general executive responsibility for the operation of' its subsidiary, 'review and approve its major policy decisions,' and 'work closely with executives of' the subsidiary without the subsidiary becoming an 'agent' 'so as to make the parent subject to jurisdiction solely through the subsidiary's presence in the United States.'" (cleaned up)).

IT IS FURTHER ORDERED that the hospital defendants' motion to dismiss **[ECF No. 50] is DENIED** as moot and without prejudice to their ability to file a motion to dismiss the second amended complaint.

IT IS FURTHER ORDERED that HCA Healthcare's motion to dismiss **[ECF No. 51] is GRANTED**.  The claims against HCA Healthcare are dismissed for want of personal jurisdiction, and the **Clerk of Court is directed to TERMINATE HCA Healthcare, Inc.** as a party to this case.  Burch's second amended complaint may not contain claims against HCA Healthcare, Inc.

IT IS FURTHER ORDERED that Burch's motion to strike or for leave to file a sur-reply **[ECF No. 59] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
June 8, 2026